**INDEX OF EXHIBITS**

<u>United States v. Jose Elias Camacho-Melendez</u>

08cr0724-WQH

<u>Page</u>

*Reporter's Partial Transcript of the Proceedings* (Instructions), January 11, 2007 (Exhibit A)  . 1

*Reporters Transcript of Proceedings* (Voir Dire), January 11, 2007 (Exhibit B) . . . . . . . . . . . . 33

Order, October 11, 2007 (Exhibit C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101

# EXHIBIT A

1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF CALIFORNIA

3

4

5
  IN RE:  THE IMPANELMENT              )
6                                      )
  OF GRAND JURY PANELS 07-1 AND        )
7                                      )
  07-2                                 )
8                                      )
                                       )
9  _____)

10

11        BEFORE THE HONORABLE LARRY ALAN BURNS

12            UNITED STATES DISTRICT JUDGE

13

14     REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

15           WEDNESDAY, JANUARY 11, 2007

16

17

18

19

20

21
  COURT REPORTER:              EVA OEMICK
22                             OFFICIAL COURT REPORTER
                               UNITED STATES COURTHOUSE
23                             940 FRONT STREET, STE. 2190
                               SAN DIEGO, CA 92101
24                             TEL: (619) 615-3103

25

1

2

1    SAN DIEGO, CALIFORNIA-WEDNESDAY, JANUARY 11, 2007-9:30 A.M.

2         THE COURT:  LADIES AND GENTLEMEN, YOU HAVE BEEN

3    SELECTED TO SIT ON THE GRAND JURY.  IF YOU'LL STAND AND RAISE

4    YOUR RIGHT HAND, PLEASE.

5         MR. HAMRICK:  DO YOU, AND EACH OF YOU, SOLEMNLY

6    SWEAR OR AFFIRM THAT YOU SHALL DILIGENTLY INQUIRE INTO AND

7    MAKE TRUE PRESENTMENT OR INDICTMENT OF ALL MATTERS AND THINGS

8    AS SHALL BE GIVEN TO YOU IN CHARGE OR OTHERWISE COME TO YOUR

9    KNOWLEDGE TOUCHING YOUR GRAND JURY SERVICE; TO KEEP SECRET THE

10   COUNSEL OF THE UNITED STATES, YOUR FELLOWS AND YOURSELVES; NOT

11   TO PRESENT OR INDICT ANY PERSON THROUGH HATRED, MALICE OR ILL

12   WILL; NOR LEAVE ANY PERSON UNREPRESENTED OR UNINDICTED THROUGH

13   FEAR, FAVOR, OR AFFECTION, NOR FOR ANY REWARD, OR HOPE OR

14   PROMISE THEREOF; BUT IN ALL YOUR PRESENTMENTS AND INDICTMENTS

15   TO PRESENT THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE

16   TRUTH, TO THE BEST OF YOUR SKILL AND UNDERSTANDING?

17         IF SO, ANSWER, "I DO."

18         (ALL GRAND JURORS ANSWER AFFIRMATIVELY)

19         THE COURT:  ALL JURORS HAVE TAKEN THE OATH AND

20   ANSWERED AFFIRMATIVELY.

21         IF YOU'LL HAVE A SEAT.  WE ARE NEARLY COMPLETED WITH

22   THIS PROCESS.

23         I AM OBLIGATED BY THE CONVENTION OF THE COURT AND

24   THE LAW OF THE UNITED STATES TO GIVE YOU A FURTHER CHARGE

25   REGARDING YOUR RESPONSIBILITY AS GRAND JURORS.  THIS WILL

PDF created with pdfFactory trial version www.pdffactory.com

3

1   APPLY NOT ONLY TO THOSE WHO HAVE BEEN SWORN, BUT THE REST OF

2   YOU WHOSE NAMES HAVE NOT YET BEEN CALLED, YOU ARE GOING TO BE

3   PUT IN RESERVE FOR US.

4        AND IF DISABILITIES OCCUR -- I DON'T MEAN IN A

5   PHYSICAL SENSE, BUT PEOPLE MOVE OR SITUATIONS COME UP WHERE

6   SOME OF THE FOLKS THAT HAVE BEEN SWORN IN TODAY ARE RELIEVED,

7   YOU WILL BE CALLED AS REPLACEMENT GRAND JURORS.  SO THESE

8   INSTRUCTIONS APPLY TO ALL WHO ARE ASSEMBLED HERE TODAY.

9        NOW THAT YOU HAVE BEEN IMPANELED AND SWORN AS A

10  GRAND JURY, IT'S THE COURT'S RESPONSIBILITY TO INSTRUCT YOU ON

11  THE LAW WHICH GOVERNS YOUR ACTIONS AND YOUR DELIBERATIONS AS

12  GRAND JURORS.

13       THE FRAMERS OF OUR FEDERAL CONSTITUTION DETERMINED

14  AND DEEMED THE GRAND JURY SO IMPORTANT TO THE ADMINISTRATION

15  OF JUSTICE THAT THEY INCLUDED A PROVISION FOR THE GRAND JURY

16  IN OUR BILL OF RIGHTS.

17       AS I SAID BEFORE, THE 5TH AMENDMENT TO THE UNITED

18  STATES CONSTITUTION PROVIDES, IN PART, THAT NO PERSON SHALL BE

19  HELD TO ANSWER FOR A CAPITAL OR OTHERWISE INFAMOUS CRIME

20  WITHOUT ACTION BY THE GRAND JURY.

21       WHAT THAT MEANS IN A VERY REAL SENSE IS YOU'RE THE

22  BUFFER BETWEEN THE GOVERNMENT'S POWER TO CHARGE SOMEONE WITH A

23  CRIME AND THAT CASE GOING FORWARD OR NOT GOING FORWARD.

24       THE FUNCTION OF THE GRAND JURY, IN FEDERAL COURT AT

25  LEAST, IS TO DETERMINE PROBABLE CAUSE.  THAT'S THE SIMPLE

PDF created with pdfFactory trial version www.pdffactory.com

4

1    FORMULATION THAT I MENTIONED TO A NUMBER OF YOU DURING THE

2    JURY SELECTION PROCESS.  PROBABLE CAUSE IS JUST AN ANALYSIS OF

3    WHETHER A CRIME WAS COMMITTED AND THERE'S A REASONABLE BASIS

4    TO BELIEVE THAT AND WHETHER A CERTAIN PERSON IS ASSOCIATED

5    WITH THE COMMISSION OF THAT CRIME, COMMITTED IT OR HELPED

6    COMMIT IT.

7         IF THE ANSWER IS YES, THEN AS GRAND JURORS YOUR

8    FUNCTION IS TO FIND THAT THE PROBABLE CAUSE IS THERE, THAT THE

9    CASE HAS BEEN SUBSTANTIATED, AND IT SHOULD MOVE FORWARD.  IF

10   CONSCIENTIOUSLY, AFTER LISTENING TO THE EVIDENCE, YOU SAY "NO,

11   I CAN'T FORM A REASONABLE BELIEF EITHER THAT A CRIME WAS

12   COMMITTED OR THAT THIS PERSON HAS ANYTHING TO DO WITH IT, THEN

13   YOUR OBLIGATION, OF COURSE, WOULD BE TO DECLINE TO INDICT, TO

14   TURN THE CASE AWAY AND NOT HAVE IT GO FORWARD.

15        A GRAND JURY CONSISTS OF 23 MEMBERS OF THE COMMUNITY

16   DRAWN AT RANDOM.  I'VE USED THE TERM "INFAMOUS CRIME."  AN

17   INFAMOUS CRIME, UNDER OUR LAW, REFERS TO A SERIOUS CRIME WHICH

18   CAN BE PUNISHED BY IMPRISONMENT BY MORE THAN ONE YEAR.  THE

19   PROSECUTORS WILL PRESENT FELONY CASES TO THE GRAND JURY.

20   MISDEMEANORS, UNDER FEDERAL LAW, THEY HAVE DISCRETION TO

21   CHARGE ON THEIR OWN.  AND THEY'RE NOT -- THOSE CHARGES --

22   MISDEMEANORS AREN'T ENTITLED TO PRESENTMENT BEFORE A GRAND

23   JURY.

24        BUT ANY CASE THAT CARRIES A PENALTY OF A YEAR OR

25   MORE MUST BE PRESENTED TO -- ACTUALLY, MORE THAN A YEAR.  A

COMPUTER-AIDED TRANSCRIPTION

4

PDF created with pdfFactory trial version www.pdffactory.com

5

1    YEAR AND A DAY OR LONGER MUST BE PRESENTED TO A GRAND JURY.

2         THE PURPOSE OF THE GRAND JURY, AS I MENTIONED, IS TO

3    DETERMINE WHETHER THERE'S SUFFICIENT EVIDENCE TO JUSTIFY A

4    FORMAL ACCUSATION AGAINST A PERSON.

5         IF LAW ENFORCEMENT OFFICIALS -- AND I DON'T MEAN

6    THIS IN A DISPARAGING WAY.  BUT IF LAW ENFORCEMENT OFFICIALS,

7    INCLUDING AGENTS AS WELL AS THE FOLKS THAT STAFF THE U.S.

8    ATTORNEY'S OFFICE, WERE NOT REQUIRED TO SUBMIT CHARGES TO AN

9    IMPARTIAL GRAND JURY TO DETERMINE WHETHER THE EVIDENCE WAS

10   SUFFICIENT, THEN OFFICIALS IN OUR COUNTRY WOULD BE FREE TO

11   ARREST AND BRING ANYONE TO TRIAL NO MATTER HOW LITTLE EVIDENCE

12   EXISTED TO SUPPORT THE CHARGE.  WE DON'T WANT THAT.  WE DON'T

13   WANT THAT.

14        WE WANT THE BURDEN OF THE TRIAL TO BE JUSTIFIED BY

15   SUBSTANTIAL EVIDENCE, EVIDENCE THAT CONVINCES YOU OF PROBABLE

16   CAUSE TO BELIEVE THAT A CRIME PROBABLY OCCURRED AND THE PERSON

17   IS PROBABLY RESPONSIBLE.

18        NOW, AGAIN, I MAKE THE DISTINCTION YOU DON'T HAVE TO

19   VOTE ON ULTIMATE OUTCOMES.  THAT'S NOT UP TO YOU.  YOU CAN BE

20   ASSURED THAT IN EACH CASE, YOU INDICT THE PERSON WHO WILL BE

21   ENTITLED TO A FULL SET OF RIGHTS AND THAT THERE WILL BE A JURY

22   TRIAL IF THE PERSON ELECTS ONE.  THE JURY WILL HAVE TO PASS ON

23   THE ACCUSATION ONCE AGAIN USING A MUCH HIGHER STANDARD OF

24   PROOF, PROOF BEYOND A REASONABLE DOUBT.

25        AS MEMBERS OF THE GRAND JURY, YOU, IN A VERY REAL

PDF created with pdfFactory trial version www.pdffactory.com

6

1    SENSE, STAND BETWEEN THE GOVERNMENT AND THE ACCUSED.  IT'S

2    YOUR DUTY TO SEE THAT INDICTMENTS ARE RETURNED ONLY AGAINST

3    THOSE WHOM YOU FIND PROBABLE CAUSE TO BELIEVE ARE GUILTY AND

4    TO SEE TO IT THAT THE INNOCENT ARE NOT COMPELLED TO GO TO

5    TRIAL OR EVEN COMPELLED TO FACE AN ACCUSATION.

6         IF A MEMBER OF THE GRAND JURY IS RELATED BY BLOOD OR

7    MARRIAGE OR KNOWS OR SOCIALIZES TO SUCH AN EXTENT AS TO FIND

8    HIMSELF OR HERSELF IN A BIASED STATE OF MIND AS TO THE PERSON

9    UNDER INVESTIGATION OR ALTERNATIVELY YOU SHOULD FIND YOURSELF

10   BIASED FOR ANY REASON, THEN THAT PERSON SHOULD NOT PARTICIPATE

11   IN THE INVESTIGATION UNDER QUESTION OR RETURN THE

12   INDICTMENT.

13        ONE OF OUR GRAND JURORS, MS. GARFIELD, HAS RELATIVES

14   THAT -- OBVIOUSLY, MS. GARFIELD, IF YOUR SON OR YOUR HUSBAND

15   WAS EVER CALLED IN FRONT OF THE GRAND JURY, THAT WOULD BE A

16   CASE WHERE YOU WOULD SAY, "THIS IS JUST TOO CLOSE.  I'M GOING

17   TO RECUSE MYSELF FROM THIS PARTICULAR CASE.  NO ONE WOULD

18   IMAGINE THAT I COULD BE ABSOLUTELY IMPARTIAL WHEN IT COMES TO

19   MY OWN BLOOD RELATIVES."

20        SO THOSE ARE THE KINDS OF SITUATIONS THAT I REFER TO

21   WHEN I TALK ABOUT EXCUSING YOURSELF FROM A PARTICULAR GRAND

22   JURY DELIBERATION.  IF THAT HAPPENS, YOU SHOULD INDICATE TO

23   THE FOREPERSON OF THE GRAND JURY, WITHOUT GOING INTO DETAIL,

24   FOR WHATEVER REASON, THAT YOU WANT TO BE EXCUSED FROM GRAND

25   JURY DELIBERATIONS ON A PARTICULAR CASE OR CONSIDERATION OF A

PDF created with pdfFactory trial version www.pdffactory.com

7

1  PARTICULAR MATTER IN WHICH YOU FEEL YOU'RE BIASED OR YOU MAY

2  HAVE A CONFLICT.

3       THIS DOES NOT MEAN THAT IF YOU HAVE AN OPPORTUNITY,

4  YOU SHOULD NOT PARTICIPATE IN AN INVESTIGATION.  HOWEVER, IT

5  DOES MEAN THAT IF YOU HAVE A FIXED STATE OF MIND BEFORE YOU

6  HEAR EVIDENCE EITHER ON THE BASIS OF FRIENDSHIP OR BECAUSE YOU

7  HATE SOMEBODY OR HAVE SIMILAR MOTIVATION, THEN YOU SHOULD STEP

8  ASIDE AND NOT PARTICIPATE IN THAT PARTICULAR GRAND JURY

9  INVESTIGATION AND IN VOTING ON THE PROPOSED INDICTMENT.  THIS

10 IS WHAT I MEANT WHEN I TALKED TO YOU ABOUT BEING FAIR-MINDED.

11      ALTHOUGH THE GRAND JURY HAS EXTENSIVE POWERS,

12 THEY'RE LIMITED IN SOME IMPORTANT RESPECTS.

13      FIRST, THESE ARE THE LIMITATIONS ON YOUR SERVICE:

14 YOU CAN ONLY INVESTIGATE CONDUCT THAT VIOLATES THE FEDERAL

15 CRIMINAL LAWS.  THAT'S YOUR CHARGE AS FEDERAL GRAND JURORS, TO

16 LOOK AT VIOLATIONS OR SUSPECTED VIOLATIONS OF FEDERAL CRIMINAL

17 LAW.

18      YOU ARE A FEDERAL GRAND JURY, AND CRIMINAL ACTIVITY

19 WHICH VIOLATES STATE LAW, THE LAWS OF THE STATE OF CALIFORNIA,

20 IS OUTSIDE OF YOUR INQUIRY.  IT MAY HAPPEN AND FREQUENTLY DOES

21 HAPPEN THAT SOME OF THE CONDUCT THAT'S UNDER INVESTIGATION BY

22 THE FEDERAL GRAND JURY ALSO VIOLATES STATE LAW.  AND THIS IS

23 FINE.  THAT'S PROPER.  BUT THERE ALWAYS HAS TO BE SOME FEDERAL

24 CONNECTION TO WHAT IS UNDER INVESTIGATION OR YOU HAVE NO

25 JURISDICTION.

PDF created with pdfFactory trial version www.pdffactory.com

8

1        THERE'S ALSO A GEOGRAPHIC LIMITATION ON THE SCOPE OF

2   YOUR INQUIRIES AND THE EXERCISE OF YOUR POWERS.  YOU MAY

3   INQUIRE ONLY INTO FEDERAL OFFENSES COMMITTED IN OUR FEDERAL

4   DISTRICT, WHICH INCLUDES SAN DIEGO AND IMPERIAL COUNTIES; THAT

5   IS, THE SOUTHERN DISTRICT OF CALIFORNIA.

6        YOU MAY HAVE CASES THAT IMPLICATE ACTIVITIES IN

7   OTHER AREAS, OTHER DISTRICTS, AND THERE MAY BE SOME EVIDENCE

8   OF CRIMINAL ACTIVITY IN CONJUNCTION WITH WHAT GOES ON HERE

9   THAT'S ALSO HAPPENING ELSEWHERE.  THERE ALWAYS HAS TO BE A

10  CONNECTION TO OUR DISTRICT.

11       THROUGHOUT THE UNITED STATES, WE HAVE 93 DISTRICTS

12  NOW.  THE STATES ARE CUT UP LIKE PIECES OF PIE, AND EACH

13  DISTRICT IS SEPARATELY DENOMINATED, AND EACH DISTRICT HAS

14  RESPONSIBILITY FOR THEIR OWN COUNTIES AND GEOGRAPHY.  AND YOU,

15  TOO, ARE BOUND BY THAT LIMITATION.

16       I'VE GONE OVER THIS WITH A COUPLE OF PEOPLE.  YOU

17  UNDERSTOOD FROM THE QUESTIONS AND ANSWERS THAT A COUPLE OF

18  PEOPLE WERE EXCUSED, I THINK THREE IN THIS CASE, BECAUSE THEY

19  COULD NOT ADHERE TO THE PRINCIPLE THAT I'M ABOUT TO TELL YOU.

20       BUT IT'S NOT FOR YOU TO JUDGE THE WISDOM OF THE

21  CRIMINAL LAWS ENACTED BY CONGRESS; THAT IS, WHETHER OR NOT

22  THERE SHOULD BE A FEDERAL LAW OR SHOULD NOT BE A FEDERAL LAW

23  DESIGNATING CERTAIN ACTIVITY IS CRIMINAL IS NOT UP TO YOU.

24  THAT'S A JUDGMENT THAT CONGRESS MAKES.

25       AND IF YOU DISAGREE WITH THAT JUDGMENT MADE BY

PDF created with pdfFactory trial version www.pdffactory.com

9

1    CONGRESS, THEN YOUR OPTION IS NOT TO SAY "WELL, I'M GOING TO

2    VOTE AGAINST INDICTING EVEN THOUGH I THINK THAT THE EVIDENCE

3    IS SUFFICIENT" OR "I'M GOING TO VOTE IN FAVOR OF EVEN THOUGH

4    THE EVIDENCE MAY BE INSUFFICIENT."  INSTEAD, YOUR OBLIGATION

5    IS TO CONTACT YOUR CONGRESSMAN OR ADVOCATE FOR A CHANGE IN THE

6    LAWS, BUT NOT TO BRING YOUR PERSONAL DEFINITION OF WHAT THE

7    LAW OUGHT TO BE AND TRY TO IMPOSE THAT THROUGH APPLYING IT IN

8    A GRAND JURY SETTING.

9            FURTHERMORE, WHEN YOU'RE DECIDING WHETHER TO INDICT

10   OR NOT TO INDICT, YOU SHOULDN'T BE CONCERNED WITH PUNISHMENT

11   THAT ATTACHES TO THE CHARGE.  I THINK I ALSO ALLUDED TO THIS

12   IN THE CONVERSATION WITH ONE GENTLEMAN.  JUDGES ALONE

13   DETERMINE PUNISHMENT.  WE TELL TRIAL JURIES IN CRIMINAL CASES

14   THAT THEY'RE NOT TO BE CONCERNED WITH THE MATTER OF PUNISHMENT

15   EITHER.  YOUR OBLIGATION AT THE END OF THE DAY IS TO MAKE A

16   BUSINESS-LIKE DECISION ON FACTS AND APPLY THOSE FACTS TO THE

17   LAW AS IT'S EXPLAINED AND READ TO YOU.

18           THE CASES WHICH YOU'LL APPEAR WILL COME BEFORE YOU

19   IN VARIOUS WAYS.  FREQUENTLY, PEOPLE ARE ARRESTED DURING OR

20   SHORTLY AFTER THE COMMISSION OF AN ALLEGED CRIME.  AND THEN

21   THEY'RE TAKEN BEFORE A MAGISTRATE JUDGE, WHO HOLDS A

22   PRELIMINARY HEARING TO DETERMINE WHETHER INITIALLY THERE'S

23   PROBABLE CAUSE TO BELIEVE A PERSON'S COMMITTED A CRIME.

24           ONCE THE MAGISTRATE JUDGE FINDS PROBABLE CAUSE, HE

25   OR SHE WILL DIRECT THAT THE ACCUSED PERSON BE HELD FOR ACTION

PDF created with pdfFactory trial version www.pdffactory.com

1   BY THE GRAND JURY.  REMEMBER, UNDER OUR SYSTEM AND THE 5TH

2   AMENDMENT, TRIALS OF SERIOUS AND INFAMOUS CRIMES CAN ONLY

3   PROCEED WITH GRAND JURY ACTION.  SO THE DETERMINATION OF THE

4   MAGISTRATE JUDGE IS JUST TO HOLD THE PERSON UNTIL THE GRAND

5   JURY CAN ACT.  IT TAKES YOUR ACTION AS A GRAND JURY BEFORE THE

6   CASE CAN FORMALLY GO FORWARD.  IT'S AT THAT POINT THAT YOU'LL

7   BE CALLED UPON TO CONSIDER WHETHER AN INDICTMENT SHOULD BE

8   RETURNED IN A GIVEN CASE.

9        OTHER CASES MAY BE BROUGHT TO YOU BY THE UNITED

10  STATES ATTORNEY OR AN ASSISTANT UNITED STATES ATTORNEY BEFORE

11  AN ARREST IS MADE.  BUT DURING THE COURSE OF AN INVESTIGATION

12  OR AFTER AN INVESTIGATION HAS BEEN CONDUCTED, THERE'S TWO WAYS

13  THAT CASES GENERALLY ENTER THE CRIMINAL JUSTICE PROCESS:  THE

14  REACTIVE OFFENSES WHERE, AS THE NAME IMPLIES, THE POLICE REACT

15  TO A CRIME AND ARREST SOMEBODY.  AND THOSE CASES WILL THEN BE

16  SUBMITTED TO YOU AFTER MUCH OF THE FACTS ARE KNOWN.  AND THEN

17  THERE'S PROACTIVE CASES, CASES WHERE MAYBE THERE'S A SUSPICION

18  OR A HUNCH OF WRONGDOING.  THE FBI MAY BE CALLED UPON TO

19  INVESTIGATE OR SOME OTHER FEDERAL AGENCY, AND THEY MAY NEED

20  THE ASSISTANCE OF THE GRAND JURY IN FACILITATING THAT

21  INVESTIGATION.

22        THE GRAND JURY HAS BROAD INVESTIGATORY POWERS.  YOU

23  HAVE THE POWER TO ISSUE SUBPOENAS, FOR EXAMPLE, FOR RECORDS OR

24  FOR PEOPLE TO APPEAR.  SOMETIMES IT HAPPENS THAT PEOPLE SAY "I

25  DON'T HAVE TO TALK TO YOU" TO THE FBI, AND THEY REFUSE TO TALK

PDF created with pdfFactory trial version www.pdffactory.com

11

1    TO THE AUTHORITIES.  UNDER THOSE CIRCUMSTANCES, ON OCCASION,

2    THE FBI MAY GO TO THE U.S. ATTORNEY AND SAY, "LOOK, YOU NEED

3    TO FIND OUT WHAT HAPPENED HERE.  SUMMON THIS PERSON IN FRONT

4    OF THE GRAND JURY."  SO IT MAY BE THAT YOU'RE CALLED UPON TO

5    EVALUATE WHETHER A CRIME OCCURRED AND WHETHER THERE OUGHT TO

6    BE AN INDICTMENT.  YOU, IN A VERY REAL SENSE, ARE PART OF THE

7    INVESTIGATION.

8         IT MAY HAPPEN THAT DURING THE COURSE OF AN

9    INVESTIGATION INTO ONE CRIME, IT TURNS OUT THAT THERE IS

10   EVIDENCE OF A DIFFERENT CRIME THAT SURFACES.  YOU, AS GRAND

11   JURORS, HAVE A RIGHT TO PURSUE THE NEW CRIME THAT YOU

12   INVESTIGATE, EVEN CALLING NEW WITNESSES AND SEEKING OTHER

13   DOCUMENTS OR PAPERS OR EVIDENCE BE SUBPOENAED.

14        NOW, IN THAT REGARD, THERE'S A CLOSE ASSOCIATION

15   BETWEEN THE GRAND JURY AND THE U.S. ATTORNEY'S OFFICE AND THE

16   INVESTIGATIVE AGENCIES OF THE FEDERAL GOVERNMENT.  UNLIKE THE

17   U.S. ATTORNEY'S OFFICE OR THOSE INVESTIGATIVE AGENCIES, THE

18   GRAND JURY DOESN'T HAVE ANY POWER TO EMPLOY INVESTIGATORS OR

19   TO EXPEND FEDERAL FUNDS FOR INVESTIGATIVE PURPOSES.

20        INSTEAD, YOU MUST GO BACK TO THE U.S. ATTORNEY AND

21   ASK THAT THOSE THINGS BE DONE.  YOU'LL WORK CLOSELY WITH THE

22   U.S. ATTORNEY'S OFFICE IN YOUR INVESTIGATION OF CASES.  IF ONE

23   OR MORE GRAND JURORS WANT TO HEAR ADDITIONAL EVIDENCE ON A

24   CASE OR THINK THAT SOME ASPECT OF THE CASE OUGHT TO BE

25   PURSUED, YOU MAY MAKE THAT REQUEST TO THE U.S. ATTORNEY.

11

PDF created with pdfFactory trial version www.pdffactory.com

12

1          IF THE U.S. ATTORNEY REFUSES TO ASSIST YOU OR IF YOU

2     BELIEVE THAT THE U.S. ATTORNEY IS NOT ACTING IMPARTIALLY, THEN

3     YOU CAN TAKE THE MATTER UP WITH ME.  I'M THE ASSIGNED JURY

4     JUDGE, AND I WILL BE THE LIAISON WITH THE GRAND JURIES.

5          YOU CAN USE YOUR POWER TO INVESTIGATE EVEN OVER THE

6     ACTIVE OPPOSITION OF THE UNITED STATES ATTORNEY.  IF THE

7     MAJORITY OF YOU ON THE GRAND JURY THINK THAT A SUBJECT OUGHT

8     TO BE PURSUED AND THE U.S. ATTORNEY THINKS NOT, THEN YOUR

9     DECISION TRUMPS, AND YOU HAVE THE RIGHT TO HAVE THAT

10    INVESTIGATION PURSUED IF YOU BELIEVE IT'S NECESSARY TO DO SO

11    IN THE INTEREST OF JUSTICE.

12          I MENTION THESE THINGS TO YOU AS A THEORETICAL

13    POSSIBILITY.  THE TRUTH OF THE MATTER IS IN MY EXPERIENCE HERE

14    IN THE OVER 20 YEARS IN THIS COURT, THAT KIND OF TENSION DOES

15    NOT EXIST ON A REGULAR BASIS, THAT I CAN RECALL, BETWEEN THE

16    U.S. ATTORNEY AND GRAND JURIES.  THEY GENERALLY WORK TOGETHER.

17    THE U.S. ATTORNEY IS GENERALLY DEFERENTIAL TO THE GRAND JURY

18    AND WHAT THE GRAND JURY WANTS.

19          IT'S IMPORTANT TO KEEP IN MIND THAT YOU WILL AND DO

20    HAVE AN INVESTIGATORY FUNCTION AND THAT THAT FUNCTION IS

21    PARAMOUNT TO EVEN WHAT THE U.S. ATTORNEY MAY WANT YOU TO DO.

22          IF YOU, AS I SAID, BELIEVE THAT AN INVESTIGATION

23    OUGHT TO GO INTO OTHER AREAS BOTH IN TERMS OF SUBJECT MATTER,

24    BEING A FEDERAL CRIME, AND GEOGRAPHICALLY, THEN YOU AS A GROUP

25    CAN MAKE THAT DETERMINATION AND DIRECT THE INVESTIGATION THAT

PDF created with pdfFactory trial version www.pdffactory.com

13

1    WAY.

2         SINCE THE UNITED STATES ATTORNEY HAS THE DUTY OF

3    PROSECUTING PERSONS CHARGED WITH THE COMMISSION OF FEDERAL

4    CRIMES, SHE OR ONE OF HER ASSISTANTS -- BY THE WAY, THE U.S.

5    ATTORNEY IN OUR DISTRICT IS MS. CAROL LAM -- SHE OR ONE OF HER

6    ASSISTANTS WILL PRESENT THE MATTERS WHICH THE GOVERNMENT HAS

7    DESIRES TO HAVE YOU CONSIDER.  THE ATTORNEY WILL EDUCATE YOU

8    ON THE LAW THAT APPLIES BY READING THE LAW TO YOU OR POINTING

9    IT OUT, THE LAW THAT THE GOVERNMENT BELIEVES WAS VIOLATED.

10   THE ATTORNEY WILL SUBPOENA FOR TESTIMONY BEFORE YOU SUCH

11   WITNESSES AS THE LAWYER THINKS ARE IMPORTANT AND NECESSARY TO

12   ESTABLISH PROBABLE CAUSE AND ALLOW YOU TO DO YOUR FUNCTION,

13   AND ALSO ANY OTHER WITNESSES THAT YOU MAY REQUEST THE ATTORNEY

14   TO CALL IN RELATION TO THE SUBJECT MATTER UNDER INVESTIGATION.

15         REMEMBER THAT THE DIFFERENCE BETWEEN THE GRAND JURY

16   FUNCTION AND THAT OF THE TRIAL JURY IS THAT YOU ARE NOT

17   PRESIDING IN A FULL-BLOWN TRIAL.  IN MOST OF THE CASES THAT

18   YOU APPEAR, THE LAWYER FOR THE GOVERNMENT IS NOT GOING TO

19   BRING IN EVERYBODY THAT MIGHT BE BROUGHT IN AT THE TIME OF

20   TRIAL; THAT IS, EVERYBODY THAT HAS SOME RELEVANT EVIDENCE TO

21   OFFER.  THEY'RE NOT GOING TO BRING IN EVERYONE WHO CONCEIVABLY

22   COULD SAY SOMETHING THAT MIGHT BEAR ON THE OUTCOME.  THEY'RE

23   PROBABLY GOING TO BRING IN A LIMITED NUMBER OF WITNESSES JUST

24   TO ESTABLISH PROBABLE CAUSE.  OFTENTIMES, THEY PRESENT A

25   SKELETON CASE.  IT'S EFFICIENT.  IT'S ALL THAT'S NECESSARY.

PDF created with pdfFactory trial version www.pdffactory.com

14

1    IT SAVES TIME AND RESOURCES.

2         WHEN YOU ARE PRESENTED WITH A CASE, IT WILL TAKE 16

3    OF YOUR NUMBER OUT OF THE 23, 16 MEMBERS OF THE GRAND JURY OUT

4    OF THE 23, TO CONSTITUTE A QUORUM.  YOU CAN'T DO BUSINESS

5    UNLESS THERE'S AT LEAST 16 MEMBERS OF THE GRAND JURY PRESENT

6    FOR THE TRANSACTION OF ANY BUSINESS.  IF FEWER THAN 16 GRAND

7    JURORS ARE PRESENT EVEN FOR A MOMENT, THEN THE PROCEEDINGS OF

8    THE GRAND JURY MUST STOP.  YOU CAN NEVER OPERATE WITHOUT A

9    QUORUM OF AT LEAST 16 MEMBERS PRESENT.

10        NOW, THE EVIDENCE THAT YOU WILL HEAR NORMALLY WILL

11   CONSIST OF TESTIMONY OF WITNESSES AND WRITTEN DOCUMENTS.  YOU

12   MAY GET PHOTOGRAPHS.  THE WITNESSES WILL APPEAR IN FRONT OF

13   YOU SEPARATELY.  WHEN A WITNESS FIRST APPEARS BEFORE YOU, THE

14   GRAND JURY FOREPERSON WILL ADMINISTER AN OATH.  THE PERSON

15   MUST SWEAR OR AFFIRM TO TELL THE TRUTH.  AND AFTER THAT'S BEEN

16   ACCOMPLISHED, THE WITNESS WILL BE QUESTIONED.

17        ORDINARILY, THE U.S. ATTORNEY PRESIDING AT THE --

18   REPRESENTING THE U.S. GOVERNMENT AT THE GRAND JURY SESSION

19   WILL ASK THE QUESTIONS FIRST.  THEN THE FOREPERSON OF THE

20   GRAND JURY MAY ASK QUESTIONS, AND OTHER MEMBERS OF THE GRAND

21   JURY MAY ASK QUESTIONS, ALSO.

22        I USED TO APPEAR IN FRONT OF THE GRAND JURY.  I'LL

23   TELL YOU WHAT I WOULD DO IS FREQUENTLY I'D ASK THE QUESTIONS,

24   AND THEN I'D SEND THE WITNESS OUT AND ASK THE GRAND JURORS IF

25   THERE WERE ANY QUESTIONS THEY WANTED ME TO ASK.  AND THE

PDF created with pdfFactory trial version www.pdffactory.com

15

1  REASON I DID THAT IS THAT I HAD THE LEGAL TRAINING TO KNOW

2  WHAT WAS RELEVANT AND WHAT MIGHT BE PREJUDICIAL TO THE

3  DETERMINATION OF WHETHER THERE WAS PROBABLE CAUSE.

4        A LOT OF TIMES PEOPLE WILL SAY, "WELL, HAS THIS

5  PERSON EVER DONE IT BEFORE?"  AND WHILE THAT MAY BE A RELEVANT

6  QUESTION, ON THE ISSUE OF PROBABLE CAUSE, IT HAS TO BE

7  ASSESSED ON A CASE-BY-CASE BASIS.  IN OTHER WORDS, THE

8  EVIDENCE OF THIS OCCASION OF CRIME THAT'S ALLEGED MUST BE

9  ADEQUATE WITHOUT REGARD TO WHAT THE PERSON HAS DONE IN THE

10  PAST.  I WOULDN'T WANT THAT QUESTION ANSWERED UNTIL AFTER THE

11  GRAND JURY HAD MADE A DETERMINATION OF WHETHER THERE WAS

12  ENOUGH EVIDENCE.

13        SO WHEN I APPEARED IN FRONT OF THE GRAND JURY, I'D

14  TELL THEM "YOU'LL GET YOUR QUESTION ANSWERED, BUT I'D LIKE YOU

15  TO VOTE ON THE INDICTMENT FIRST.  I'D LIKE YOU TO DETERMINE

16  WHETHER THERE'S ENOUGH EVIDENCE BASED ON WHAT'S BEEN

17  PRESENTED, AND THEN WE'LL ANSWER IT."  I DIDN'T WANT TO

18  PREJUDICE THE GRAND JURY.  THERE MAY BE SIMILAR CONCERNS THAT

19  COME UP.  NOW, THE PRACTICES VARY AMONG THE ASSISTANT U.S.

20  ATTORNEYS THAT WILL APPEAR IN FRONT OF YOU.

21        ON OTHER OCCASIONS WHEN I DIDN'T THINK THERE WAS ANY

22  RISK THAT MIGHT PREJUDICE THE PROCESS, I WOULD ALLOW THE GRAND

23  JURY TO FOLLOW UP THEMSELVES AND ASK QUESTIONS.  A LOT OF

24  TIMES, THE FOLLOW-UPS ARE FACTUAL ON DETAILED MATTERS.  THAT

25  PRACTICE WILL VARY DEPENDING ON WHO IS REPRESENTING THE UNITED

PDF created with pdfFactory trial version www.pdffactory.com

1    STATES AND PRESENTING THE CASE TO YOU.  THE POINT IS YOU HAVE

2    THE RIGHT TO ASK ADDITIONAL QUESTIONS OR TO ASK THAT THOSE

3    QUESTIONS BE PUT TO THE WITNESS.

4          IN THE EVENT A WITNESS DOESN'T SPEAK OR UNDERSTAND

5    ENGLISH, THEN ANOTHER PERSON WILL BE BROUGHT INTO THE ROOM.

6    OBVIOUSLY, THAT WOULD BE AN INTERPRETER TO ALLOW YOU TO

7    UNDERSTAND THE ANSWERS.  WHEN WITNESSES DO APPEAR IN FRONT OF

8    THE GRAND JURY, THEY SHOULD BE TREATED COURTEOUSLY.  QUESTIONS

9    SHOULD BE PUT TO THEM IN AN ORDERLY FASHION.  THE QUESTIONS

10   SHOULD NOT BE HOSTILE.

11         IF YOU HAVE ANY DOUBT WHETHER IT'S PROPER TO ASK A

12   PARTICULAR QUESTION, THEN YOU CAN ASK THE U.S. ATTORNEY WHO'S

13   ASSISTING IN THE INVESTIGATION FOR ADVICE ON THE MATTER.  YOU

14   ALONE AS GRAND JURORS DECIDE HOW MANY WITNESSES YOU WANT TO

15   HEAR.  WITNESSES CAN BE SUBPOENAED FROM ANYWHERE IN THE

16   COUNTRY.  YOU HAVE NATIONAL JURISDICTION.

17         HOWEVER, PERSONS SHOULD NOT ORDINARILY BE SUBJECTED

18   TO DISRUPTION OF THEIR DAILY LIVES UNLESS THERE'S GOOD REASON.

19   THEY SHOULDN'T BE HARASSED OR ANNOYED OR INCONVENIENCED.

20   THAT'S NOT THE PURPOSE OF THE GRAND JURY HEARING, NOR SHOULD

21   PUBLIC FUNDS BE EXPENDED TO BRING WITNESSES UNLESS YOU BELIEVE

22   THAT THE WITNESSES CAN PROVIDE MEANINGFUL, RELEVANT EVIDENCE

23   WHICH WILL ASSIST IN YOUR DETERMINATIONS AND YOUR

24   INVESTIGATION.

25         ALL WITNESSES WHO ARE CALLED IN FRONT OF THE GRAND

PDF created with pdfFactory trial version www.pdffactory.com

17

1    JURY HAVE CERTAIN RIGHTS.  THESE INCLUDE, AMONG OTHERS, THE

2    RIGHT TO REFUSE TO ANSWER QUESTIONS ON THE GROUNDS THAT THE

3    ANSWER TO A QUESTION MIGHT INCRIMINATE THEM AND THE RIGHT TO

4    KNOW THAT ANYTHING THEY SAY MIGHT BE USED AGAINST THEM.

5         THE U.S. ATTORNEYS ARE CHARGED WITH THE OBLIGATION,

6    WHEN THEY'RE AWARE OF IT, OF ADVISING PEOPLE OF THIS RIGHT

7    BEFORE THEY QUESTION THEM.  BUT BEAR THAT IN MIND.

8         IF A WITNESS DOES EXERCISE THE RIGHT AGAINST

9    SELF-INCRIMINATION, THEN THE GRAND JURY SHOULD NOT HOLD THAT

10   AS ANY PREJUDICE OR BIAS AGAINST THAT WITNESS.  IT CAN PLAY NO

11   PART IN THE RETURN OF AN INDICTMENT AGAINST THE WITNESS.  IN

12   OTHER WORDS, THE MERE EXERCISE OF THE PRIVILEGE AGAINST

13   SELF-INCRIMINATION, WHICH ALL OF US HAVE AS UNITED STATES

14   RESIDENTS, SHOULD NOT FACTOR INTO YOUR DETERMINATION OF

15   WHETHER THERE'S PROBABLE CAUSE TO GO FORWARD IN THIS CASE.

16   YOU MUST RESPECT THAT DETERMINATION BY THE PERSON AND NOT USE

17   IT AGAINST THEM.

18        IT'S AN UNCOMMON SITUATION THAT YOU'LL FACE WHEN

19   SOMEBODY DOES CLAIM THE PRIVILEGE AGAINST SELF-INCRIMINATION.

20   THAT'S BECAUSE USUALLY AT THE TIME A PERSON IS SUBPOENAED, IF

21   THERE'S A PROSPECT THAT THEY'RE GOING TO CLAIM THE PRIVILEGE,

22   THE U.S. ATTORNEY IS PUT ON NOTICE OF THAT BEFOREHAND EITHER

23   BY THE PERSON HIMSELF OR HERSELF OR MAYBE A LAWYER

24   REPRESENTING THE PERSON.

25        IN MY EXPERIENCE, MOST OF THE TIME THE U.S. ATTORNEY

PDF created with pdfFactory trial version www.pdffactory.com

18

1    WILL NOT THEN CALL THE PERSON IN FRONT OF YOU BECAUSE IT WOULD

2    BE TO NO EFFECT TO CALL THEM AND HAVE THEM ASSERT THEIR 5TH

3    AMENDMENT PRIVILEGE.  BUT IT SOMETIMES DOES COME UP.  IT

4    SOMETIMES HAPPENS.  SOMETIMES THERE'S A QUESTION OF WHETHER

5    THE PERSON HAS A BONA FIDE PRIVILEGE AGAINST

6    SELF-INCRIMINATION.  THAT'S A MATTER FOR THE COURT TO

7    DETERMINE IN ANCILLARY PROCEEDINGS.  OR THE U.S. ATTORNEY MAY

8    BE UNAWARE OF A PERSON'S INCLINATION TO ASSERT THE 5TH.  SO IT

9    MAY COME UP IN FRONT OF YOU.  IT DOESN'T ALWAYS COME UP.

10          AS I MENTIONED TO YOU IN MY PRELIMINARY REMARKS,

11   WITNESSES ARE NOT PERMITTED TO HAVE A LAWYER WITH THEM IN THE

12   GRAND JURY ROOM.  THE LAW DOESN'T PERMIT A WITNESS SUMMONED

13   BEFORE THE GRAND JURY TO BRING THE LAWYER WITH THEM, ALTHOUGH

14   WITNESSES DO HAVE A RIGHT TO CONFER WITH THEIR LAWYERS DURING

15   THE COURSE OF GRAND JURY INVESTIGATION PROVIDED THE CONFERENCE

16   OCCURS OUTSIDE THE GRAND JURY ROOM.

17          YOU MAY FACE A SITUATION WHERE A WITNESS SAYS "I'D

18   LIKE TO TALK TO MY LAWYER BEFORE I ANSWER THAT QUESTION," IN

19   WHICH CASE THE PERSON WOULD LEAVE THE ROOM, CONSULT WITH THE

20   LAWYER, AND THEN COME BACK INTO THE ROOM WHERE FURTHER ACTION

21   WOULD TAKE PLACE.

22          APPEARANCES BEFORE A GRAND JURY SOMETIMES PRESENT

23   COMPLEX LEGAL PROBLEMS THAT REQUIRE THE ASSISTANCE OF LAWYERS.

24   YOU'RE NOT TO DRAW ANY ADVERSE INFERENCE IF A WITNESS DOES ASK

25   TO LEAVE THE ROOM TO SPEAK TO HIS LAWYER OR HER LAWYER AND

PDF created with pdfFactory trial version www.pdffactory.com

19

1   THEN LEAVES FOR THAT PURPOSE.

2          ORDINARILY, NEITHER THE ACCUSED OR ANY WITNESS ON

3   THE ACCUSED'S BEHALF WILL TESTIFY IN THE GRAND JURY SESSION.

4   BUT UPON THE REQUEST OF AN ACCUSED, PREFERABLY IN WRITING, YOU

5   MAY AFFORD THE ACCUSED AN OPPORTUNITY TO APPEAR IN FRONT OF

6   YOU.

7          AS I'VE SAID, THESE PROCEEDINGS TEND TO BE ONE-SIDED

8   NECESSARILY.  THE PROSECUTOR IS ASKING YOU TO RETURN AN

9   INDICTMENT TO A CRIMINAL CHARGE, AND THEY'LL MUSTER THE

10  EVIDENCE THAT THEY HAVE THAT THEY BELIEVE SUPPORTS PROBABLE

11  CAUSE AND PRESENT THAT TO YOU.  BECAUSE IT'S NOT A FULL-BLOWN

12  TRIAL, YOU'RE LIKELY IN MOST CASES NOT TO HEAR THE OTHER SIDE

13  OF THE STORY, IF THERE IS ANOTHER SIDE TO THE STORY.  THERE'S

14  NO PROVISION OF LAW THAT ALLOWS AN ACCUSED, FOR EXAMPLE, TO

15  CONTEST THE MATTER IN FRONT OF THE GRAND JURY.

16         IT MAY HAPPEN, AS I SAID, THAT AN ACCUSED MAY ASK TO

17  APPEAR IN FRONT OF YOU.  BECAUSE THE APPEARANCE OF SOMEONE

18  ACCUSED OF A CRIME MAY RAISE COMPLICATED LEGAL PROBLEMS, YOU

19  SHOULD SEEK THE U.S. ATTORNEY'S ADVICE AND COUNSEL, IF

20  NECESSARY, AND THAT OF THE COURT BEFORE ALLOWING THAT.

21         BEFORE ANY ACCUSED PERSON IS ALLOWED TO TESTIFY,

22  THEY MUST BE ADVISED OF THEIR RIGHTS, AND YOU SHOULD BE

23  COMPLETELY SATISFIED THAT THEY UNDERSTAND WHAT THEY'RE DOING.

24         YOU'RE NOT REQUIRED TO SUMMON WITNESSES WHICH AN

25  ACCUSED PERSON MAY WANT YOU TO HAVE EXAMINED UNLESS PROBABLE

PDF created with pdfFactory trial version www.pdffactory.com

1    CAUSE FOR AN INDICTMENT MAY BE EXPLAINED AWAY BY THE TESTIMONY

2    OF THOSE WITNESSES.

3          NOW, AGAIN, THIS EMPHASIZES THE DIFFERENCE BETWEEN

4    THE FUNCTION OF THE GRAND JURY AND THE TRIAL JURY.  YOU'RE ALL

5    ABOUT PROBABLE CAUSE.  IF YOU THINK THAT THERE'S EVIDENCE OUT

6    THERE THAT MIGHT CAUSE YOU TO SAY "WELL, I DON'T THINK

7    PROBABLE CAUSE EXISTS," THEN IT'S INCUMBENT UPON YOU TO HEAR

8    THAT EVIDENCE AS WELL.  AS I TOLD YOU, IN MOST INSTANCES, THE

9    U.S. ATTORNEYS ARE DUTY-BOUND TO PRESENT EVIDENCE THAT CUTS

10   AGAINST WHAT THEY MAY BE ASKING YOU TO DO IF THEY'RE AWARE OF

11   THAT EVIDENCE.

12          THE DETERMINATION OF WHETHER A WITNESS IS TELLING

13   THE TRUTH IS SOMETHING FOR YOU TO DECIDE.  NEITHER THE COURT

14   NOR THE PROSECUTORS NOR ANY OFFICERS OF THE COURT MAY MAKE

15   THAT DETERMINATION FOR YOU.  IT'S THE EXCLUSIVE PROVINCE OF

16   GRAND JURORS TO DETERMINE WHO IS CREDIBLE AND WHO MAY NOT BE.

17          FINALLY, LET ME TELL YOU THIS:  THERE'S ANOTHER

18   DIFFERENCE BETWEEN OUR GRAND JURY PROCEDURE HERE AND

19   PROCEDURES YOU MAY BE FAMILIAR WITH HAVING SERVED ON STATE

20   TRIAL JURIES OR FEDERAL TRIAL JURIES OR EVEN ON THE STATE

21   GRAND JURY; HEARSAY TESTIMONY, THAT IS, TESTIMONY AS TO FACTS

22   NOT PERSONALLY KNOWN BY THE WITNESS, BUT WHICH THE WITNESS HAS

23   BEEN TOLD OR RELATED BY OTHER PERSONS MAY BE DEEMED BY YOU

24   PERSUASIVE AND MAY PROVIDE A BASIS FOR RETURNING AN INDICTMENT

25   AGAINST AN ACCUSED.

PDF created with pdfFactory trial version www.pdffactory.com

1          WHAT I MEAN BY THAT IS IF IT'S A FULL-BLOWN TRIAL

2     WHERE THE RULES OF EVIDENCE APPLY -- AND ALL OF US ARE

3     FAMILIAR WITH THIS TERM "HEARSAY EVIDENCE."  GENERALLY, IT

4     FORBIDS SOMEBODY FROM REPEATING WHAT SOMEONE ELSE TOLD THEM

5     OUTSIDE OF COURT.  OH, THERE'S A MILLION EXCEPTIONS TO THE

6     HEARSAY RULE, BUT THAT'S THE GIST OF THE RULE.

7          USUALLY, WE INSIST ON THE SPEAKER OF THE WORDS TO

8     COME IN SO THAT WE CAN KNOW THE CONTEXT OF IT.  THAT RULE

9     DOESN'T APPLY IN THE GRAND JURY CONTEXT.  BECAUSE IT'S A

10    PRELIMINARY PROCEEDING, BECAUSE ULTIMATELY GUILT OR INNOCENCE

11    IS NOT BEING DETERMINED, THE EVIDENTIARY STANDARDS ARE

12    RELAXED.  THE PROSECUTORS ARE ENTITLED TO PUT ON HEARSAY

13    EVIDENCE.

14         HOW DOES THAT PLAY OUT IN REAL LIFE?  WELL, YOU'RE

15    GOING TO BE HEARING A LOT OF BORDER TYPE CASES.  IT DOESN'T

16    MAKE SENSE, IT'S NOT EFFICIENT, IT'S NOT COST-EFFECTIVE TO

17    PULL ALL OF OUR BORDER GUARDS OFF THE BORDER TO COME UP AND

18    TESTIFY.  WHO IS LEFT GUARDING THE BORDER, THEN?

19         WHAT THEY'VE DONE IN THE BORDER CASES IN PARTICULAR

20    IF THEY USUALLY HAVE A SUMMARY WITNESS; A WITNESS FROM, FOR

21    EXAMPLE, BORDER PATROL OR CUSTOMS WHO WILL TALK TO THE PEOPLE

22    OR READ THE REPORTS OF THE PEOPLE WHO ACTUALLY MADE THE

23    ARREST.  THAT PERSON WILL COME IN AND TESTIFY ABOUT WHAT

24    HAPPENED.  THE PERSON WON'T HAVE FIRST-HAND KNOWLEDGE, BUT

25    THEY'LL BE RELIABLY INFORMED BY THE PERSON WITH FIRST-HAND

PDF created with pdfFactory trial version www.pdffactory.com

22

1    KNOWLEDGE OF WHAT OCCURRED, AND THEY'LL BE THE WITNESS BEFORE

2    THE GRAND JURY.

3         YOU SHOULD EXPECT AND COUNT ON THE FACT THAT YOU'RE

4    GOING TO HEAR EVIDENCE IN THE FORM OF HEARSAY THAT WOULD NOT

5    BE ADMISSIBLE IF THE CASE GOES FORWARD TO TRIAL, BUT IS

6    ADMISSIBLE AT THE GRAND JURY STAGE.

7         AFTER YOU'VE HEARD ALL OF THE EVIDENCE THAT THE U.S.

8    ATTORNEY INTENDS TO PRESENT OR THAT YOU WANT TO HEAR IN A

9    PARTICULAR MATTER, YOU'RE THEN CHARGED WITH THE OBLIGATION OF

10   DELIBERATING TO DETERMINE WHETHER THE ACCUSED PERSON OUGHT TO

11   BE INDICTED.  NO ONE OTHER THAN YOUR OWN MEMBERS, THE MEMBERS

12   OF THE GRAND JURY, IS TO BE PRESENT IN THE GRAND JURY ROOM

13   WHILE YOU'RE DELIBERATING.

14        WHAT THAT MEANS IS THE COURT REPORTER, THE ASSISTANT

15   U.S. ATTORNEY, ANYONE ELSE, THE INTERPRETER WHO MAY HAVE BEEN

16   PRESENT TO INTERPRET FOR A WITNESS, MUST GO OUT OF THE ROOM,

17   AND THE PROCEEDING MUST GO FORWARD WITH ONLY GRAND JURORS

18   PRESENT DURING THE DELIBERATION AND VOTING ON AN INDICTMENT.

19        YOU HEARD ME EXPLAIN EARLIER THAT AT VARIOUS TIMES

20   DURING THE PRESENTATION OF MATTERS BEFORE YOU, OTHER PEOPLE

21   MAY BE PRESENT IN THE GRAND JURY.  THIS IS PERFECTLY

22   ACCEPTABLE.  THE RULE THAT I HAVE JUST READ TO YOU ABOUT YOUR

23   PRESENCE ALONE IN THE GRAND JURY ROOM APPLIES ONLY DURING

24   DELIBERATION AND VOTING ON INDICTMENTS.

25        TO RETURN AN INDICTMENT CHARGING SOMEONE WITH AN

PDF created with pdfFactory trial version www.pdffactory.com

23

1    OFFENSE, IT'S NOT NECESSARY, AS I MENTIONED MANY TIMES, THAT

2    YOU FIND PROOF BEYOND A REASONABLE DOUBT.  THAT'S THE TRIAL

3    STANDARD, NOT THE GRAND JURY STANDARD.  YOUR TASK IS TO

4    DETERMINE WHETHER THE GOVERNMENT'S EVIDENCE, AS PRESENTED TO

5    YOU, IS SUFFICIENT TO CONCLUDE THAT THERE'S PROBABLE CAUSE TO

6    BELIEVE THAT THE ACCUSED IS GUILTY OF THE PROPOSED OR CHARGED

7    OFFENSE.

8            I EXPLAINED TO YOU WHAT THAT STANDARD MEANS.  LET

9    ME, AT THE RISK OF BORING YOU, TELL YOU ONE MORE TIME.

10           PROBABLE CAUSE MEANS THAT YOU HAVE AN HONESTLY HELD

11   CONSCIENTIOUS BELIEF AND THAT THE BELIEF IS REASONABLE THAT A

12   FEDERAL CRIME WAS COMMITTED AND THAT THE PERSON TO BE INDICTED

13   WAS SOMEHOW ASSOCIATED WITH THE COMMISSION OF THAT CRIME.

14   EITHER THEY COMMITTED IT THEMSELVES OR THEY HELPED SOMEONE

15   COMMIT IT OR THEY WERE PART OF A CONSPIRACY, AN ILLEGAL

16   AGREEMENT, TO COMMIT THAT CRIME.

17           TO PUT IT ANOTHER WAY, YOU SHOULD VOTE TO INDICT

18   WHEN THE EVIDENCE PRESENTED TO YOU IS SUFFICIENTLY STRONG TO

19   WARRANT A REASONABLE PERSON TO BELIEVE THAT THE ACCUSED IS

20   PROBABLY GUILTY OF THE OFFENSE WHICH IS PROPOSED.

21           EACH GRAND JUROR HAS THE RIGHT TO EXPRESS VIEWS ON

22   THE MATTER UNDER CONSIDERATION.  AND ONLY AFTER ALL GRAND

23   JURORS HAVE BEEN GIVEN A FULL OPPORTUNITY TO BE HEARD SHOULD

24   YOU VOTE ON THE MATTER BEFORE YOU.  YOU MAY DECIDE AFTER

25   DELIBERATION AMONG YOURSELVES THAT YOU NEED MORE EVIDENCE,

PDF created with pdfFactory trial version www.pdffactory.com

24

1    THAT MORE EVIDENCE SHOULD BE CONSIDERED BEFORE A VOTE IS

2    TAKEN.  IN SUCH CASES, THE U.S ATTORNEY OR THE ASSISTANT U.S.

3    ATTORNEY CAN BE DIRECTED TO SUBPOENA ADDITIONAL DOCUMENTS OR

4    WITNESSES FOR YOU TO CONSIDER IN ORDER TO MAKE YOUR

5    DETERMINATION.

6         WHEN YOU'VE DECIDED TO VOTE, THE FOREPERSON SHOULD

7    KEEP A RECORD OF THE VOTE.  THAT RECORD SHOULD BE FILED WITH

8    THE CLERK OF THE COURT.  THE RECORD DOESN'T INCLUDE THE NAMES

9    OF THE JURORS OR HOW THEY VOTED, BUT ONLY THE NUMBER OF VOTES

10   FOR THE INDICTMENT.  SO IT'S AN ANONYMOUS VOTE.  YOU'LL KNOW

11   AMONG YOURSELVES WHO VOTED WHICH WAY, BUT THAT INFORMATION

12   DOES NOT GET CAPTURED OR RECORDED, JUST THE NUMBER OF PEOPLE

13   VOTING FOR INDICTMENT.

14        IF 12 OR MORE MEMBERS OF THE GRAND JURY AFTER

15   DELIBERATION BELIEVE THAT AN INDICTMENT IS WARRANTED, THEN

16   YOU'LL REQUEST THE UNITED STATES ATTORNEY TO PREPARE A FORMAL

17   WRITTEN INDICTMENT IF ONE'S NOT ALREADY BEEN PREPARED AND

18   PRESENTED TO YOU.  IN MY EXPERIENCE, MOST OF THE TIME THE U.S.

19   ATTORNEY WILL SHOW UP WITH THE WITNESSES AND WILL HAVE THE

20   PROPOSED INDICTMENT WITH THEM.  SO YOU'LL HAVE THAT TO

21   CONSIDER.  YOU'LL KNOW EXACTLY WHAT THE PROPOSED CHARGES ARE.

22        THE INDICTMENT WILL SET FORTH THE DATE AND THE PLACE

23   OF THE ALLEGED OFFENSE AND THE CIRCUMSTANCES THAT THE U.S.

24   ATTORNEY BELIEVES MAKES THE CONDUCT CRIMINAL.  IT WILL

25   IDENTIFY THE CRIMINAL STATUTES THAT HAVE ALLEGEDLY BEEN

PDF created with pdfFactory trial version www.pdffactory.com

25

1    VIOLATED.

2         THE FOREPERSON, UPON THE GRAND JURY VOTING TO RETURN

3    THE INDICTMENT, WILL THEN ENDORSE OR SIGN THE INDICTMENT,

4    WHAT'S CALLED A TRUE BILL OF INDICTMENT.  THERE'S A SPACE

5    PROVIDED BY THE WORD -- OR FOLLOWED BY THE WORD "FOREPERSON."

6    THE FOREPERSON IS TO SIGN THE INDICTMENT IF THE GRAND JURY

7    BELIEVES THAT THERE'S PROBABLE CAUSE.  A TRUE BILL SIGNIFIES

8    THAT 12 OR MORE GRAND JURORS HAVE AGREED THAT THE CASE OUGHT

9    TO GO FORWARD WITH PROBABLE CAUSE TO BELIEVE THAT THE PERSON

10   PROPOSED FOR THE CHARGE IS GUILTY OF THE CRIME.

11        IT'S THE DUTY OF THE FOREPERSON TO ENDORSE OR SIGN

12   EVERY INDICTMENT VOTED ON BY AT LEAST 12 MEMBERS EVEN IF THE

13   FOREPERSON HAS VOTED AGAINST RETURNING THE INDICTMENT.  SO IF

14   YOU'VE BEEN DESIGNATED A FOREPERSON OR AN ASSISTANT

15   FOREPERSON, EVEN IF YOU VOTED THE OTHER WAY OR YOU'RE

16   OUT-VOTED, IF THERE'S AT LEAST 12 WHO VOTED FOR THE

17   INDICTMENT, THEN YOU MUST SIGN THE INDICTMENT.

18        IF YOU WERE THE 12 MEMBERS OF THE GRAND JURY WHO

19   VOTED IN FAVOR OF THE INDICTMENT, THEN THE FOREPERSON WILL

20   ENDORSE THE INDICTMENT WITH THESE WORDS:  "NOT A TRUE BILL."

21   THEY'LL RETURN IT TO THE COURT.  THE COURT WILL IMPOUND IT.

22        THE INDICTMENTS WHICH HAVE BEEN ENDORSED AS A TRUE

23   BILL ARE PRESENTED EITHER TO ONE OF OUR MAGISTRATE JUDGES OR

24   TO A DISTRICT JUDGE IN OPEN COURT BY YOUR FOREPERSON AT THE

25   CONCLUSION OF EACH SESSION OF THE GRAND JURY.  THIS IS THE

PDF created with pdfFactory trial version www.pdffactory.com

26

1   PROCEDURE THAT YOU HEARD ME ALLUDE TO.  IN THE ABSENCE OF THE

2   FOREPERSON, THE DEPUTY FOREPERSON SHALL PERFORM ALL THE

3   FUNCTIONS AND DUTIES OF THE FOREPERSON.

4        LET ME EMPHASIZE AGAIN IT'S EXTREMELY IMPORTANT FOR

5   THOSE OF YOU WHO ARE GRAND JURORS TO REALIZE THAT UNDER OUR

6   CONSTITUTION, THE GRAND JURY IS AN INDEPENDENT BODY.  IT'S

7   INDEPENDENT OF THE UNITED STATES ATTORNEY.  IT'S NOT AN ARM OR

8   AN AGENT OF FEDERAL BUREAU OF INVESTIGATION OF THE DRUG

9   ENFORCEMENT ADMINISTRATION, THE IRS, OR ANY OTHER GOVERNMENT

10  AGENCY CHARGED WITH PROSECUTING THE CRIME.

11        I USED THE CHARACTERIZATION EARLIER THAT YOU STAND

12  AS A BUFFER BETWEEN OUR GOVERNMENT'S ABILITY TO ACCUSE SOMEONE

13  OF A CRIME AND THEN PUTTING THAT PERSON THROUGH THE BURDEN OF

14  STANDING TRIAL.  YOU ACT AS AN INDEPENDENT BODY OF CITIZENS.

15        IN RECENT YEARS, THERE HAS BEEN CRITICISM OF THE

16  INSTITUTION OF THE GRAND JURY.  THE CRITICISM GENERALLY IS THE

17  GRAND JURY ACTS AS RUBBER STAMPS AND APPROVES PROSECUTIONS

18  THAT ARE BROUGHT BY THE GOVERNMENT WITHOUT THOUGHT.

19        INTERESTINGLY ENOUGH, IN MY DISCUSSION WITH

20  PROSPECTIVE GRAND JURORS, WE HAD ONE FELLOW WHO SAID, "YEAH,

21  THAT'S THE WAY I THINK IT OUGHT TO BE."  WELL, THAT'S NOT THE

22  WAY IT IS.  AS A PRACTICAL MATTER, YOU WILL WORK CLOSELY WITH

23  GOVERNMENT LAWYERS.  THE U.S. ATTORNEY AND THE ASSISTANT U.S.

24  ATTORNEYS WILL PROVIDE YOU WITH IMPORTANT SERVICES AND HELP

25  YOU FIND YOUR WAY WHEN YOU'RE CONFRONTED WITH COMPLEX LEGAL

PDF created with pdfFactory trial version www.pdffactory.com

1   MATTERS.  IT'S ENTIRELY PROPER THAT YOU SHOULD RECEIVE THE

2   ASSISTANCE FROM THE GOVERNMENT LAWYERS.

3        BUT AT THE END OF THE DAY, THE DECISION ABOUT

4   WHETHER A CASE GOES FORWARD AND AN INDICTMENT SHOULD BE

5   RETURNED IS YOURS AND YOURS ALONE.  IF PAST EXPERIENCE IS ANY

6   INDICATION OF WHAT TO EXPECT IN THE FUTURE, THEN YOU CAN

7   EXPECT THAT THE U.S. ATTORNEYS THAT WILL APPEAR IN FRONT OF

8   YOU WILL BE CANDID, THEY'LL BE HONEST, THAT THEY'LL ACT IN

9   GOOD FAITH IN ALL MATTERS PRESENTED TO YOU.

10       HOWEVER, AS I SAID, ULTIMATELY YOU HAVE TO DEPEND ON

11   YOUR INDEPENDENT JUDGMENT IN MAKING THE DECISION THAT YOU ARE

12   CHARGED WITH MAKING AS GRAND JURORS.  YOU'RE NOT AN ARM OF THE

13   U.S. ATTORNEY'S OFFICE.  YOU'RE NOT AN ARM OF ANY GOVERNMENT

14   AGENCY.  THE GOVERNMENT'S LAWYERS ARE PROSECUTORS, AND YOU'RE

15   NOT.

16       IF THE FACTS SUGGEST TO YOU THAT YOU SHOULD NOT

17   INDICT, THEN YOU SHOULD NOT DO SO EVEN IN THE FACE OF

18   OPPOSITION OR STATEMENTS OR ARGUMENTS FROM ONE OF THE

19   ASSISTANT UNITED STATES ATTORNEYS.  YOU SHOULD NOT SURRENDER

20   AN HONESTLY OR CONSCIOUSLY HELD BELIEF WITHOUT THE WEIGHT OF

21   THE EVIDENCE AND SIMPLY DEFER TO THE U.S. ATTORNEY.  THAT'S

22   YOUR DECISION TO MAKE.

23       JUST AS YOU MUST MAINTAIN YOUR INDEPENDENCE IN YOUR

24   DEALINGS WITH GOVERNMENT LAWYERS, YOUR DEALINGS WITH THE COURT

25   MUST BE ON A FORMAL BASIS, ALSO.  IF YOU HAVE A QUESTION FOR

PDF created with pdfFactory trial version www.pdffactory.com

28

1    THE COURT OR A DESIRE TO MAKE A PRESENTMENT OR A RETURN OF AN

2    INDICTMENT TO THE COURT, THEN YOU MAY CONTACT ME THROUGH MY

3    CLERK.  YOU'LL BE ABLE TO ASSEMBLE IN THE COURTROOM OFTENTIMES

4    FOR THESE PURPOSES.

5           LET ME TELL YOU ALSO THAT EACH GRAND JUROR IS

6    DIRECTED TO REPORT IMMEDIATELY TO THE COURT ANY ATTEMPT BY

7    ANYBODY UNDER ANY PRETENSE WHATSOEVER TO ADDRESS YOU OR

8    CONTACT YOU FOR THE PURPOSE OF TRYING TO GAIN INFORMATION

9    ABOUT WHAT'S GOING ON IN FRONT OF THE GRAND JURY.  THAT SHOULD

10   NOT HAPPEN.  IF IT DOES HAPPEN, I SHOULD BE INFORMED OF THAT

11   IMMEDIATELY BY ANY OF YOU, COLLECTIVELY OR INDIVIDUALLY.  IF

12   ANY PERSON CONTACTS YOU OR ATTEMPTS TO INFLUENCE YOU IN ANY

13   MANNER IN CARRYING OUT YOUR DUTIES AS A GRAND JUROR, LET ME

14   KNOW ABOUT IT.

15          LET ME TALK A LITTLE BIT MORE ABOUT THE OBLIGATION

16   OF SECRECY, WHICH I'VE MENTIONED AND ALLUDED TO.  AS I TOLD

17   YOU BEFORE, THE HALLMARK OF THE GRAND JURY, PARTICULARLY OUR

18   FEDERAL GRAND JURY, IS THAT IT OPERATES SECRETLY.  IT OPERATES

19   IN SECRECY, AND ITS PROCEEDINGS ARE ENTIRELY SECRET.

20          YOUR PROCEEDINGS AS GRAND JURORS ARE ALWAYS SECRET,

21   AND THEY MUST REMAIN SECRET PERMANENTLY UNLESS AND UNTIL THE

22   COURT DETERMINES OTHERWISE.  YOU CAN'T RELATE TO YOUR FAMILY,

23   THE NEWS MEDIA, TELEVISION REPORTERS, OR TO ANYONE WHAT

24   HAPPENED IN FRONT OF THE GRAND JURY.  IN FACT, TO DO SO IS TO

25   COMMIT A CRIMINAL OFFENSE.  YOU COULD BE HELD CRIMINALLY

PDF created with pdfFactory trial version www.pdffactory.com

29

1    LIABLE FOR REVEALING WHAT OCCURRED IN FRONT OF THE GRAND JURY.

2         THERE ARE SEVERAL IMPORTANT REASONS WHY WE DEMAND

3    SECRECY IN THE INSTITUTION OF THE GRAND JURY.  FIRST -- AND I

4    MENTIONED THIS, AND THIS IS OBVIOUS -- THE PREMATURE

5    DISCLOSURE OF INFORMATION THAT THE GRAND JURY IS ACTING ON

6    COULD VERY WELL FRUSTRATE THE ENDS OF JUSTICE IN PARTICULAR

7    CASES.  IT MIGHT GIVE AN OPPORTUNITY FOR SOMEONE WHO'S ACCUSED

8    OF A CRIME TO ESCAPE OR BECOME A FUGITIVE OR TO DESTROY

9    EVIDENCE THAT MIGHT OTHERWISE BE UNCOVERED LATER ON.  YOU

10   DON'T WANT TO DO THAT.

11        IN THE COURSE OF AN INVESTIGATION, IT'S ABSOLUTELY

12   IMPERATIVE THAT THE INVESTIGATION AND THE FACTS OF THE

13   INVESTIGATION REMAIN SECRET, AND YOU SHOULD KEEP THAT FOREMOST

14   IN YOUR MIND.  ALSO, IF THE TESTIMONY OF A WITNESS IS

15   DISCLOSED, THE WITNESS MAY BE SUBJECT TO INTIMIDATION OR

16   SOMETIMES RETALIATION OR BODILY INJURY BEFORE THE WITNESS IS

17   ABLE TO TESTIFY.  IT IS SOMETHING THAT THE LAW ENFORCEMENT --

18   IT'S SOMETIMES THE CASE THAT LAW ENFORCEMENT WILL TELL A

19   WITNESS WHO IS COOPERATING WITH AN INVESTIGATION THAT THEIR

20   SECRECY IS GUARANTEED.  IT SOMETIMES TAKES THAT KIND OF

21   ASSURANCE FROM THE POLICE OR LAW ENFORCEMENT AGENTS TO GET A

22   WITNESS TO TELL WHAT THEY KNOW.  AND THAT GUARANTEE CAN ONLY

23   BE SECURED IF YOU MAINTAIN THE OBLIGATION OF SECRECY.

24        THE GRAND JURY IS FORBIDDEN BY LAW FROM DISCLOSING

25   ANY INFORMATION ABOUT THE GRAND JURY PROCESS WHATSOEVER.  IT'S

PDF created with pdfFactory trial version www.pdffactory.com

1    ON THE BASIS SOMETIMES OF REPRESENTATIONS LIKE THAT RELUCTANT

2    WITNESSES DO COME FORWARD.  AGAIN, IT UNDERSCORES THE

3    IMPORTANCE OF SECRECY.

4         AS I'VE ALSO MENTIONED, THE REQUIREMENT OF SECRECY

5    PROTECTS INNOCENT PEOPLE WHO MAY HAVE COME UNDER

6    INVESTIGATION, BUT WHO ARE CLEARED BY THE ACTIONS OF THE GRAND

7    JURY.  IT'S A TERRIBLE THING TO BE IMPROPERLY ACCUSED OF A

8    CRIME.  IT'S LIKE A SCARLET LETTER THAT PEOPLE SOMETIMES WEAR

9    FOREVER.  IT'S WORSE IF THE CRIME OR THE ACCUSATION NEVER

10   BECOMES FORMAL.  JUST THE IDEA THAT SOMEONE IS UNDER

11   INVESTIGATION CAN HAVE DISASTROUS CONSEQUENCES FOR THAT PERSON

12   OR HIS OR HER BUSINESS OR HIS OR HER FAMILY.  THIS IS ANOTHER

13   IMPORTANT REASON WHY THE GRAND JURY PROCEEDINGS MUST REMAIN

14   SECRET.

15        IN THE EYES OF SOME PEOPLE, INVESTIGATION BY THE

16   GRAND JURY ALONE CARRIES WITH IT THE STIGMA OR SUGGESTION OF

17   GUILT.  SO GREAT INJURY CAN BE DONE TO A PERSON'S GOOD NAME

18   EVEN THOUGH ULTIMATELY YOU DECIDE THAT THERE'S NO EVIDENCE

19   SUPPORTING AN INDICTMENT OF THE PERSON.

20        TO ENSURE THE SECRECY OF THE GRAND JURY PROCEEDINGS,

21   THE LAW PROVIDES THAT ONLY AUTHORIZED PEOPLE MAY BE IN THE

22   GRAND JURY ROOM WHILE EVIDENCE IS BEING PRESENTED.  AS I'VE

23   MENTIONED TO YOU NOW SEVERAL TIMES, THE ONLY PEOPLE WHO MAY BE

24   PRESENT DURING THE FUNCTIONING OF THE GRAND JURY ARE THE GRAND

25   JURORS THEMSELVES, THE UNITED STATES ATTORNEY OR AN ASSISTANT

PDF created with pdfFactory trial version www.pdffactory.com

31

1    WHO'S PRESENTING THE CASE, A WITNESS WHO IS THEN UNDER

2    EXAMINATION, A COURT REPORTER, AND AN INTERPRETER, IF

3    NECESSARY.  ALL THE OTHERS EXCEPT THE GRAND JURORS GO OUT

4    DURING THE DELIBERATION AND VOTING.

5         YOU MAY DISCLOSE TO THE U.S. ATTORNEY WHO IS

6    ASSISTING THE GRAND JURY CERTAIN INFORMATION.  AS I SAID, IF

7    YOU HAVE QUESTIONS, IF GRAND JURORS HAVE QUESTIONS THAT THEY

8    WANT ANSWERED, OBVIOUSLY THAT INFORMATION IS TO BE CONVEYED TO

9    THE U.S. ATTORNEY TO GET THE QUESTIONS ANSWERED.

10        BUT YOU SHOULD NOT DISCLOSE THE CONTEXT OF YOUR

11   DELIBERATIONS OR THE VOTE OF ANY PARTICULAR GRAND JUROR TO

12   ANYONE, EVEN THE GOVERNMENT LAWYERS, ONCE THE VOTE HAS BEEN

13   DONE.  THAT'S ONLY THE BUSINESS OF THE GRAND JURY.  IN OTHER

14   WORDS, YOU'RE NOT TO INFORM THE GOVERNMENT LAWYER WHO VOTED

15   ONE WAY ON THE INDICTMENT AND WHO VOTED THE OTHER WAY.

16        LET ME CONCLUDE NOW -- I APPRECIATE YOUR PATIENCE,

17   AND IT'S BEEN A LONG SESSION THIS MORNING -- BY SAYING THAT

18   THE IMPORTANCE OF THE SERVICE YOU PERFORM IS DEMONSTRATED BY

19   THE VERY IMPORTANT AND COMPREHENSIVE OATH WHICH YOU TOOK A

20   SHORT WHILE AGO.  IT'S AN OATH THAT IS ROOTED IN OUR HISTORY

21   AS A COUNTRY.  THOUSANDS OF PEOPLE BEFORE YOU HAVE TAKEN A

22   SIMILAR OATH.  AND AS GOOD CITIZENS, YOU SHOULD BE PROUD TO

23   HAVE BEEN SELECTED TO ASSIST IN THE ADMINISTRATION OF JUSTICE.

24        IT HAS BEEN MY PLEASURE TO MEET YOU.  I WOULD BE

25   HAPPY TO SEE YOU IN THE FUTURE IF THE NEED ARISES.  AT THIS

PDF created with pdfFactory trial version www.pdffactory.com

32

1    POINT, THE U.S. ATTORNEY, MR. ROBINSON, WILL ASSIST YOU IN

2    FURTHER ORGANIZATION.  SO THIS PART OF THE ADMINISTRATION OF

3    YOUR RESPONSIBILITY AS GRAND JURORS INVOLVING THE COURT IS

4    OVER.

5            IT MIGHT BE APPROPRIATE TO TAKE A BREAK BEFORE WE GO

6    ON TO THE NEXT PROCEEDING.  I'VE HELD THESE FOLKS FOR A LONG

7    TIME.

8            LADIES AND GENTLEMEN, MY GREAT PLEASURE TO MEET ALL

9    OF YOU.  GOOD LUCK WITH YOUR GRAND JURY SERVICE.  I THINK

10   YOU'LL FIND IT REWARDING AND INTERESTING AND COMPELLING.

11                            --O0O--

12

13

14

15            I HEREBY CERTIFY THAT THE TESTIMONY

16            ADDUCED IN THE FOREGOING MATTER IS

17            A TRUE RECORD OF SAID PROCEEDINGS.

18

19            _____

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE:  THE IMPANELMENT               )
                                      )
OF GRAND JURY PANELS 07-1 AND         )
                                      )
07-2                                  )
                                      )
                                      )
                                      )
_____ )

BEFORE THE HONORABLE LARRY ALAN BURNS

UNITED STATES DISTRICT JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

WEDNESDAY, JANUARY 11, 2007

COURT REPORTER:

EVA OEMICK
OFFICIAL COURT REPORTER
UNITED STATES COURTHOUSE
940 FRONT STREET, STE. 2190
SAN DIEGO, CA 92101
TEL: (619) 615-3103

33

2

SAN DIEGO, CALIFORNIA—WEDNESDAY, JANUARY 11, 2007—10:45 A.M.

MR. HAMRICK:  YOU AND EACH OF YOU DO SOLEMNLY SWEAR
OR AFFIRM THAT YOU WILL GIVE TRUE ANSWERS TO ALL QUESTIONS
THAT WILL BE PUT TO YOU TOUCHING ON YOUR QUALIFICATION TO
SERVE AS A GRAND JUROR DURING THIS SESSION OF COURT, SO HELP
YOU?

(ALL GRAND JURORS RESPOND AFFIRMATIVELY)

MR. HAMRICK:  THANK YOU.  PLEASE BE SEATED AND COME
TO ORDER.

THE COURT:  LADIES AND GENTLEMEN, GOOD MORNING AND
WELCOME TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF CALIFORNIA.  YOU'RE HERE TODAY IN CONNECTION WITH
OUR EFFORT TO IMPANEL GRAND JURIES.  I KNOW ALL OF YOU HAVE
SEEN THE FILM ABOUT THE FUNCTION OF THE GRAND JURY.  I'M GOING
TO TALK A LITTLE BIT MORE ABOUT THAT LATER IN MY REMARKS AND
MY INTERACTIONS WITH YOU TODAY.

WE'RE ESSENTIALLY LOOKING FOR PEOPLE WHO CAN FAIRLY
AND CONSCIENTIOUSLY EVALUATE A SET OF FACTS AND MAKE AN
IMPORTANT DECISION ABOUT WHETHER CASES SHOULD MOVE FORWARD TO
TRIAL.  THAT'S THE FUNCTION OF THE GRAND JURY.  YOU'RE TO WEED
OUT THE GROUNDLESS CHARGES FROM THOSE THAT HAVE MERIT,
ALTHOUGH ACKNOWLEDGING THAT YOU'RE NOT MAKING A FINAL DECISION
ON WHETHER A PERSON IS GUILTY OR NOT OF A CRIMINAL CHARGE.
BUT THE IDEA OF PUTTING A PERSON THROUGH A TRIAL OF ITSELF IS
A SIGNIFICANT RESPONSIBILITY, AND THAT'S THE RESPONSIBILITY

COMPUTER-AIDED TRANSCRIPTION

3

1    THAT WE CALL ON YOU TO FULFILL.

2         MY NAME IS LARRY BURNS.  I'M THE JURY JUDGE.  I'LL

3    TELL YOU A LITTLE BIT ABOUT OUR COURT.

4         WE HAVE 12 ACTIVE JUDGES HERE NOW AND FIVE SENIOR

5    JUDGES.  WHEN A FEDERAL JUDGE TURNS 65 AND ASSUMING THEIR AGE

6    AND THEIR YEARS OF SERVICE ADD UP TO 80, THEY CAN GO SENIOR

7    AND WORK A REDUCED CASELOAD.  BUT OUR SENIORS IN OUR VERY BUSY

8    DISTRICT WORK VERY, VERY HARD.

9         EACH OF US, EACH OF OUR JUDGES HERE, WAS APPOINTED

10   BY ONE OF THE PRESIDENTS OF THE UNITED STATES AND CONFIRMED BY

11   THE SENATE.  WE HAVE A VERY BUSY, ACTIVE DISTRICT HERE.  OUR

12   PROXIMITY TO THE BORDER GIVES US LOTS OF CASES.  I THINK IF

13   YOU SERVE ON THE GRAND JURY OR IF YOU'VE BEEN HERE BEFORE

14   SERVING AS A TRIAL JUROR, YOU'RE AWARE THAT PEOPLE TRY TO

15   BRING THE STRANGEST THINGS ACROSS THE BORDER, A LOT OF WHICH

16   ARE PROHIBITED; PEOPLE, DRUGS, PARROTS, KNOCK-OFF CALVIN KLEIN

17   JEANS.  ALL THOSE THINGS ARE NOW IMPLICATED BY THE FEDERAL

18   LAWS.

19        LET ME INTRODUCE THE CLERK OF OUR COURT,

20   MR. HAMRICK.  HE'S THE THAT CALLED COURT TO ORDER.

21        WE ALSO HAVE SOME REPRESENTATIVES HERE FROM THE

22   UNITED STATES ATTORNEY'S OFFICE.  THEY WORK VERY CLOSELY WITH

23   THE GRAND JURY.  THEY'RE THE ONES THAT DECIDE, IN THE FIRST

24   INSTANCE, WHETHER A CASE SHOULD BE BROUGHT.  IT'S SUBJECT TO

25   THE APPROVAL OF THE GRAND JURY THAT THE CASE CAN GO FORWARD.

COMPUTER-AIDED TRANSCRIPTION

4

1        IF YOU'RE CHOSEN AS A GRAND JUROR, YOU'RE GOING TO

2  BE HEARING, BY AND LARGE, CASES PRESENTED BY THE ASSISTANT

3  UNITED STATES ATTORNEYS WHO WORK IN OUR DISTRICT.

4        REPRESENTING THAT OFFICE IS MR. TODD ROBINSON.  HE'S

5  A VERY FINE LAWYER.  I'VE KNOWN HIM FOR YEARS.  HE'S A FINE

6  TRIAL LAWYER, VERY SMART FELLOW.

7        AND ███████████ WHO'S BEEN WITH THE U.S.

8  ATTORNEY'S OFFICE FOR SOME TIME, ALSO, SHE'S THE GRAND JURY

9  ASSISTANT.  YOU'LL BE GETTING TO KNOW HER IN WORKING WITH HER.

10        AND THEN WHOSE ███████████ OUR JURY

11  ADMINISTRATOR.

12        AND THEN FINALLY I THINK MOST OF YOU HAVE MET ██████

13  ███████████ SHE'S OUR JURY CLERK.

14        AND THEN THIS YOUNG WOMAN HERE, EVA OEMICK, SHE'S MY

15  COURT REPORTER.  YOU'LL SEE HER OCCASIONALLY WHEN YOU COME

16  DOWN TO RETURN GRAND JURY INDICTMENTS.  AFTER YOU DECIDE WHICH

17  CASES SHOULD GO FORWARD, USUALLY THE FOREPERSON OR THE DEPUTY

18  FOREPERSON WILL COME DOWN.  SOMETIMES TO MY COURT; SOMETIMES

19  TO OTHERS.  BUT THAT'S A REPORTED PROCEEDING.

20        SO WE'RE GLAD TO HAVE YOU HERE TODAY.  THIS IS

21  IMPORTANT SERVICE, AND WE APPRECIATE YOU BEING HERE.  THE MOST

22  FAMILIAR RESPONSE I GET FROM FOLKS CALLED IN FOR JURY SERVICE

23  OR GRAND JURY SERVICE IS "I WISH I WAS SOMEWHERE ELSE."

24        AND I UNDERSTAND THE SENTIMENT.  WE ALL LEAD VERY

25  BUSY LIVES.  THIS IS REALLY IMPORTANT SERVICE.  IT'S LIKE

COMPUTER-AIDED TRANSCRIPTION

36

Case 3:08-cr-00724-WQH    Document 15-3    Filed 04/01/2008    Page 40 of 116
Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 6 of 69

5

1 TRIAL JURY SERVICE.  I TELL OUR TRIAL JURORS THAT IF YOU WERE

2 IN THE POSITION OF A DEFENDANT IN A CASE OR A PLAINTIFF IN A

3 CIVIL CASE OR EVEN THE UNITED STATES GOVERNMENT,

4 MR. ROBINSON'S POSITION, YOU'D WANT THE CASE TO BE DECIDED BY

5 PEOPLE WHO HAVE A STAKE IN THE COMMUNITY, PEOPLE WHO ARE

6 FAIR-MINDED, PEOPLE WHO ARE CONSCIENTIOUS.  THAT'S WHAT OUR

7 JURY SYSTEM IS ABOUT.  OUR GRAND JURY SYSTEM DEPENDS ON THAT

8 AS WELL.  WE WANT FAIR-MINDED PEOPLE TO MAKE THESE VERY

9 IMPORTANT DECISIONS.

10  SO WHILE I ACKNOWLEDGE AND I UNDERSTAND THAT YOU

11 LEAD VERY BUSY LIVES, WE APPRECIATE THE COMMITMENT THAT YOU

12 MAKE.  OUR SYSTEM DEPENDS ON IT.  AT SOME POINT, IF YOU COUNT

13 ON THE SYSTEM TO GIVE YOU JUSTICE, THEN YOU MUST BE PREPARED

14 TO MAKE THIS KIND OF COMMITMENT WHEN CALLED UPON TO DO IT.  SO

15 AGAIN, I APPRECIATE YOU BEING HERE.

16  THAT SAID, WE'VE TRIED TO SCREEN THOSE PEOPLE

17 PREVIOUSLY WHO, IN THEIR QUESTIONNAIRES, TOLD US THAT THEY HAD

18 INSURMOUNTABLE PROBLEMS THAT WOULD PREVENT THEM FROM SERVING.

19 MY EXPERIENCE IS THAT BETWEEN THE TIME WE GET THE

20 QUESTIONNAIRES AND THE SESSION TODAY, THE SESSION WHERE WE

21 ACTUALLY SPEAK TO PEOPLE PERSONALLY, THAT SOMETIMES THERE'S

22 SOME ADDITIONAL PROBLEMS THAT ARISE THAT WEREN'T FORESEEN AND

23 WEREN'T KNOWN AT THE TIME ALL OF YOU FILLED OUT THE

24 QUESTIONNAIRES.

25  MADAM CLERK, IF YOU'LL CALL THE FIRST 23 NAMES.

COMPUTER-AIDED TRANSCRIPTION

37

6

1          THE CLERK:  THIS IS THE PANEL 07-1, THE WEDNESDAY

2     PANEL.

3

4

5

6          THE NEXT NAME HAS BEEN EXCUSED.  I'LL DRAW A NEW

7     NAME.

8          NO.

9

10

11

12

13          THE NEXT NAME HAS BEEN EXCUSED.  I'LL DRAW ANOTHER

14     NAME RANDOMLY.

15          NO.

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

38

7

1

2

3

4

5      THE COURT:  GOOD MORNING AGAIN.

6                        YOU HAVE A COPY OF THE QUESTIONNAIRE

7   WITH THE BASIC BIOGRAPHICAL INFORMATION.

8            WOULD YOU TELL US ABOUT YOURSELF, PLEASE.

9         PROSPECTIVE JUROR:  MY MAKE                    I

10   LIVE IN            I'M A TEACHER.  MY WIFE IS A              I HAVE

11   ONE ADULT CHILD.  HE'S                              I HAD

12   SOME EXPERIENCE IN THE STATE COURT.  I WAS IN A TRIAL IN

13   NOVEMBER OR OCTOBER.  YES, I CAN BE FAIR AND IMPARTIAL.

14           THE COURT:  WHERE DO YOU TEACH?

15         PROSPECTIVE JUROR:                  SCHOOL DISTRICT.

16         THE COURT:  WHAT IS YOUR DISCIPLINE?

17         PROSPECTIVE JUROR:  LANGUAGE, ARTS, SOCIAL

18   STUDIES.

19           THE COURT:  I HAVE TWO SONS WHO

20                        I DON'T LIVE IN          ANYMORE.  I LIVED

21   THERE 24 YEARS.  AND AS SOON AS THE YOUNGEST ONE GRADUATED,

22   TWO WEEKS LATER I MOVED CLOSER TO DOWNTOWN BECAUSE THE DRIVE

23                WAS KILLING ME.

24           HOW LONG HAVE YOU BEEN A TEACHER?

25         PROSPECTIVE JUROR:  I STARTED AT              AND

COMPUTER-AIDED TRANSCRIPTION

8

1    I'VE BEEN AT ██████████████████ FOR 15 YEARS.

2              THE COURT:  NICE TO HAVE YOU.

3              THERE'S A DIFFERENCE, OF COURSE, BETWEEN THE

4    FUNCTION OF THE GRAND JURY AND THE FUNCTION OF THE TRIAL JURY.

5    HERE THE STANDARD OF PROOF IS NOT PROOF BEYOND A REASONABLE

6    DOUBT BECAUSE THE GRAND JURY IS NOT MAKING AN ULTIMATE

7    DECISION ABOUT WHETHER SOMEONE IS GUILTY OR NOT OF THE CHARGE.

8    INSTEAD, THE GRAND JURY IS DETERMINING REALLY TWO FACTORS:

9    "DO WE HAVE A REASONABLE -- COLLECTIVELY, DO WE HAVE A

10   REASONABLE BELIEF THAT A CRIME WAS COMMITTED?  AND SECOND, DO

11   WE HAVE A REASONABLE BELIEF THAT THE PERSON THAT THEY PROPOSE

12   THAT WE INDICT COMMITTED THE CRIME?"

13             IF THE ANSWER IS "YES" TO BOTH OF THOSE, THEN THE

14   CASE SHOULD MOVER FORWARD.  IF THE ANSWER TO EITHER OF THE

15   QUESTIONS IS "NO," THEN THE GRAND JURY SHOULD HESITATE AND NOT

16   INDICT.

17             YOU UNDERSTAND THAT LEGAL DIFFERENCE BETWEEN GRAND

18   JURY FUNCTION AND TRIAL JURY FUNCTION?

19             PROSPECTIVE JUROR:  YES, I DO.

20             THE COURT:  THANK YOU, ██████████████  I APPRECIATE

21   YOUR ANSWERS.

22             ██████████████  TELL US ABOUT YOURSELF.

23             PROSPECTIVE JUROR:  MY NAME IS ██████████████.  I

24   LIVE IN ██████████  I'M A MANAGER OF IMPLEMENTATIONS FOR A

25   SOFTWARE COMPANY.  I'M NOT MARRIED.  I HAVE NO CHILDREN.  I'VE

COMPUTER-AIDED TRANSCRIPTION

40

1      SERVED AS A FEDERAL GRAND JUROR IN '99, I BELIEVE.

2              THE COURT:  HERE IN THIS DISTRICT?

3              PROSPECTIVE JUROR:  YES.

4              THE COURT:  YOU'RE A VETERAN.  YOU KNOW ALL ABOUT

5      THIS PROCESS.

6              PROSPECTIVE JUROR:  CORRECT.

7              YES, I CAN FAIR.

8              THE COURT:  ARE YOU UP TO THE TASK?

9              PROSPECTIVE JUROR:  YES.

10             THE COURT:  I THINK IT MIGHT BE INTERESTING TO THE

11     OTHER ASSEMBLED PEOPLE WHO HAVE NOT BEEN ON A GRAND JURY

12     BEFORE, DID YOU ENJOY YOUR PRIOR SERVICE?

13             PROSPECTIVE JUROR:  I DID.

14             THE COURT:  INTERESTING?  LEARNED A LOT OF THINGS?

15             PROSPECTIVE JUROR:  YES.

16             THE COURT:  MOST PEOPLE WHO'VE SERVED ON THE GRAND

17     JURY TELL ME IT'S ONE OF THE BEST LEARNING EXPERIENCES OF

18     THEIR LIFE.  THEY MEET INTERESTING PEOPLE.  THEY DEAL WITH

19     INTERESTING ISSUES.

20             THANK YOU.  I APPRECIATE YOUR ANSWERS.  WELCOME

21     BACK.

22

23             PROSPECTIVE JUROR:  ███████████ I LIVE IN ████████

24     ████████████████  I'M A REGISTERED NURSE.  I'M MARRIED,

25     AND MY HUSBAND IS A ████████████████  I HAVE ████ ADULT CHILD

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 11 of 69

10

1    WHO'S IN HIS ████████████████████████████    I HAVE

2    EXPERIENCE AS A TRIAL JUROR IN MY MID-20'S.  I COULD BE FAIR

3    IF SELECTED FOR A GRAND JURY.

4              THE COURT:  YOU WERE IN YOUR MID-20'S OR YOU'VE

5    HEARD 25 CASES?

6              PROSPECTIVE JUROR:  I WAS IN MY MID-20'S.  A LONG

7    TIME AGO.

8              THE COURT:  I ASKED ████████████ ABOUT THE

9    DIFFERENCE.  ALL OF YOU, OF COURSE, HAVE SEEN THE ORIENTATION

10   TAPE ABOUT THE FUNCTION OF THE GRAND JURY.

11             YOU APPRECIATE THE DIFFERENCE IN THE FUNCTION

12   BETWEEN THE TWO ENTITIES, TRIAL JURIES AND GRAND JURIES?

13             PROSPECTIVE JUROR:  YES.

14             THE COURT:  YOU CAN CONSCIENTIOUSLY FULFILL THE JOB

15   OF BEING A GRAND JUROR SHOULD YOU BE ACCEPTED TO SIT ON THIS

16   PANEL?

17             PROSPECTIVE JUROR:  YES, I CAN.

18             THE COURT:  ████████████ GOOD MORNING.

19             PROSPECTIVE JUROR:  GOOD MORNING.

20             MY NAME IS ████████████ I LIVE IN ████████████ I'M

21   RETIRED NOW SINCE JUNE OF LAST YEAR.  I WAS A PRINCIPAL

22   RESEARCH TECHNICIAN FOR ████████████ I'VE BEEN MARRIED FOR

23   ██ YEARS.  MY WIFE IS A ████████████ WE DON'T HAVE ANY

24   CHILDREN.  AND I WAS ON A CIVIL REAL ESTATE TRIAL FOR A COUPLE

25   OF WEEKS MAYBE 10 OR 12 YEARS AGO.  AND I CAN BE FAIR.

COMPUTER-AIDED TRANSCRIPTION

Case 3:08-cr-00724-WQH    Document 15-3    Filed 04/01/2008    Page 46 of 116
Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 12 of 69

11

1    THE COURT:  ████████████ AS YOU'VE HEARD ME ALLUDE TO,

2    THE GRAND JURY FUNCTION IS TO DETERMINE WHETHER THERE'S ENOUGH

3    EVIDENCE FOR A CASE TO GO FORWARD FOR A FULL-BLOWN TRIAL.

4    THAT'S A PRELIMINARY DECISION IN THE CRIMINAL JUSTICE PROCESS,

5    BUT IT'S AN IMPORTANT DECISION.  SOMETIMES THE POWER TO CHARGE

6    SOMEBODY TO BRING AN INDICTMENT AGAINST SOMEBODY IS THE POWER

7    TO RUIN SOMEBODY.

8         SO WE WANT YOU TO LOOK AT THE CASES CAREFULLY AND

9    ANSWER THE TWO QUESTIONS THAT I MENTIONED TO ████████████

10   "DO I HAVE A REASONABLE BELIEF THAT A FEDERAL CRIME WAS

11   COMMITTED?  AND DO I HAVE A REASONABLE BELIEF, BASED ON THE

12   PRESENTATION OF EVIDENCE SO FAR, THAT THIS PERSON THEY WANT ME

13   TO INDICT HAD SOMETHING TO DO WITH THAT, EITHER COMMITTED IT

14   OR HELPED IN THE COMMISSION OF THE CRIME?"

15        CAN YOU MAKE DECISIONS SUCH AS THAT IF YOU WERE

16   IMPANELED AS A GRAND JUROR HERE?

17        PROSPECTIVE JUROR:  YES.

18        THE COURT:  THANK YOU.

19        ████████████ GOOD MORNING.

20        TELL US ABOUT YOURSELF.

21        PROSPECTIVE JUROR:  I'M ████████████.  I LIVE IN

22   ████████  I WORK AS A SPEECH PATHOLOGIST.  I'M NOT MARRIED.  I

23   DON'T HAVE ADULT CHILDREN.  I'VE BEEN ON THREE TRIAL JURIES

24   ACROSS THE STREET.

25        THE COURT:  WHAT WAS YOUR MOST RECENT TRIAL JURY

COMPUTER-AIDED TRANSCRIPTION

12

1    SERVICE, HOW LONG AGO?

2              PROSPECTIVE JUROR:  IN THE '80S.

3         AND I COULD BE A FAIR JUROR.

4              THE COURT:  YOU MAKE THAT STATEMENT MINDFUL OF THE

5    QUESTIONS THAT I'VE PUT TO THE OTHER PROSPECTIVE GRAND JURORS?

6              PROSPECTIVE JUROR:  YES.

7              THE COURT:  THANK YOU, ████████████

8              ████████████ GOOD MORNING.

9              PROSPECTIVE JUROR:  MY NAME IS ██████████  I

10   LIVE IN ████████  I'M A PRINCIPAL FOR AN ELEMENTARY SCHOOL.

11   I'M MARRIED, AND MY SPOUSE ██████████  I HAVE ████ ADULT

12   ██████████  SHE IS ██████████  I'VE SERVED AS A TRIAL JUROR

13   IN THE STATE COURT IN THE '80S.  AND YES, I CAN BE FAIR.

14             THE COURT:  DOES YOUR ████████████████████

15   ████████

16             PROSPECTIVE JUROR:  YES.  SHE'S ██████████

17             THE COURT:  ██████████

18        WHAT IS THE NATURE OF HER ██████████?  DOES SHE ████

19   O█████████████████████?

20             PROSPECTIVE JUROR:  ██████████

21             THE COURT:  THANK YOU, ██████████

22        ████████

23             PROSPECTIVE JUROR:  MY NAME IS ██████████  I LIVE

24   ████████  I WORK FOR THE POST OFFICE.  I'M MARRIED.  MY

25   HUSBAND'S ████████  MY ████  I ONLY HAVE ████████ AND HE

COMPUTER-AIDED TRANSCRIPTION

44

13

1   WORKS FOR THE ███████████   I HAVE NO EXPERIENCE.  YES, I CAN

2   BE FAIR.

3          THE COURT:  THANK YOU, ████████

4   ███████████

5          PROSPECTIVE JUROR:  MY NAME IS ████████████   I LIVE

6   IN S███████████   I'M A NURSE.  I'M MARRIED TO ████████

7   I HAVE ██████ CHILDREN, ██████ AND ██████.   AND I'VE NEVER HAD ANY

8   EXPERIENCE AS A TRIAL JUROR.

9          THE COURT:  YOU WATCHED OUR ORIENTATION FILM THIS

10  MORNING AND HAVE IN MIND THE DISTINCTION BETWEEN THE FUNCTION

11  OF THE GRAND JURY AND THE FUNCTION OF THE TRIAL JURY?

12         PROSPECTIVE JUROR:  YES.

13         THE COURT:  YOU'RE PREPARED TO SERVE THE FUNCTION OF

14  A GRAND JUROR?

15         PROSPECTIVE JUROR:  I'LL TRY.

16         THE COURT:  THANK YOU, ████████████

17  ████████████

18         PROSPECTIVE JUROR:  HI.  MY NAME IS ████████████

19  I LIVE IN ████████   I'M A SERVICE FOR THE SOCIAL SECURITY

20  ADMINISTRATION.  I'M NOT MARRIED, BUT I'LL BE GETTING MARRIED

21  IN APRIL.  I DON'T HAVE ANY CHILDREN.  I DON'T HAVE ANY

22  EXPERIENCE AS A TRIAL JUROR.  AND YES, I WILL BE FAIR.

23         THE COURT:  ████████   THANK YOU.

24  ████████████

25         PROSPECTIVE JUROR:  MY NAME IS ████████████.   I

COMPUTER-AIDED TRANSCRIPTION

45

Case 3:08-cr-00724-WQH    Document 15-3    Filed 04/01/2008    Page 49 of 116
Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 15 of 69

14

1    LIVE IN ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I'M A SYSTEMS ANALYST FOR A LARGE

2    PUBLISHING COMPANY.  MY WIFE IS AN ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮ I HAVE ▮▮▮ CHILDREN THAT THINK THEY'RE ADULTS, BUT

4    THE OLDEST IS REALLY ▮▮▮ I'VE BEEN ON THREE SUPERIOR COURT

5    TRIALS.  AND I'M SURE I CAN FAIR AS A GRAND JUROR.

6         THE COURT: ▮▮▮▮▮▮▮▮▮▮▮ THE PRESENTATION OF

7    EVIDENCE TO THE GRAND JURY IS NECESSARILY ONE-SIDED.  THAT'S

8    WHAT THE SYSTEM CONTEMPLATES.  YOU'RE GOING TO BE HEARING ONLY

9    FROM THE PROSECUTOR.  THE PROSECUTOR IS GOING TO BE PRESENTING

10   EVIDENCE IN SUPPORT OF THE PROPOSED CHARGE.

11        THERE'S A LATER OPPORTUNITY, IF AN INDICTMENT IS

12   RETURNED, FOR THE PERSON TO DEFEND HIMSELF OR HERSELF AND

13   PRESENT HIS OR HER SIDE OF THE CASE, CONFRONT THE ACCUSERS AND

14   THE WITNESSES AGAINST HIM.

15        BUT I WANT TO MAKE SURE THAT YOU'RE PREPARED FOR

16   THAT SITUATION; THAT YOU'RE GOING TO BE HEARING JUST ONE SIDE,

17   AND YOU'RE GOING TO BE ASKED TO MAKE A DECISION BASED ON THE

18   PROSECUTOR'S EVIDENCE ALONE.

19        YOU'RE PREPARED FOR THAT; RIGHT?

20        PROSPECTIVE JUROR:  I UNDERSTAND THAT.

21        THE COURT:  THAT'S ONE OF THE FUNDAMENTAL

22   DIFFERENCES BETWEEN THE FULL ADVERSARY SYSTEM OF A JURY TRIAL

23   AND THEN OUR GRAND JURY PROCEEDING.

24        NOW, HAVING TOLD YOU THAT, MY EXPERIENCE IS THAT THE

25   PROSECUTORS DON'T PLAY HIDE-THE-BALL.  IF THERE'S SOMETHING

COMPUTER-AIDED TRANSCRIPTION

15

1  ADVERSE OR THAT CUTS AGAINST THE CHARGE, YOU'LL BE INFORMED OF

2  THAT.   THEY HAVE A DUTY TO DO THAT.

3        BUT THAT'S NOT TO SAY THAT EVERY CHARGE WILL PASS

4  MUSTER.   THAT'S UP TO YOU AND YOUR FELLOW GRAND JURORS.

5        UNDERSTANDING THAT THAT'S THE TASK OF THE GRAND

6  JURY, I TAKE IT YOU'RE UP TO IT?

7        PROSPECTIVE JUROR:   I BELIEVE SO.

8        THE COURT:   THANK YOU.

9

10       PROSPECTIVE JUROR:   MY NAME IS

11  I LIVE IN SAN DIEGO IN THE MISSION HILLS AREA.   I'M RETIRED.

12  I WAS A CLINICAL SOCIAL WORKER.   I'M SINGLE.   NO CHILDREN.

13  I'VE BEEN CALLED FOR JURY SERVICE A NUMBER OF TIMES, BUT I'VE

14  NEVER ACTUALLY BEEN SELECTED AS A JUROR.   CAN I BE FAIR?   I'LL

15  TRY.   BECAUSE OF THE NATURE OF THE WORK THAT I DID, I HAVE

16  SOME FAIRLY STRONG OPINIONS ABOUT SOME OF THE PEOPLE WHO COME

17  INTO THE LEGAL SYSTEM.   BUT I WOULD TRY TO WORK WITH THAT.

18       THE COURT:   WE'RE ALL PRODUCTS OF OUR EXPERIENCE.

19  WE'RE NOT GOING TO TRY TO DISABUSE YOU OF EXPERIENCES OR

20  JUDGMENTS THAT YOU HAVE.   WHAT WE ASK IS THAT YOU NOT ALLOW

21  THOSE TO CONTROL INVARIABLY THE OUTCOME OF THE CASES COMING IN

22  FRONT OF YOU; THAT YOU LOOK AT THE CASES FRESH, YOU EVALUATE

23  THE CIRCUMSTANCES, LISTEN TO THE WITNESS TESTIMONY, AND THEN

24  MAKE AN INDEPENDENT JUDGMENT.

25       DO YOU THINK YOU CAN DO THAT?

COMPUTER-AIDED TRANSCRIPTION

47

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 17 of 69

16

1      PROSPECTIVE JUROR:  I'LL DO MY BEST.

2      THE COURT:  IS THERE A CERTAIN CATEGORY OF CASE THAT

3   YOU THINK MIGHT BE TROUBLESOME FOR YOU TO SIT ON THAT YOU'D BE

4   INSTINCTIVELY TILTING ONE WAY IN FAVOR OF INDICTMENT OR THE

5   OTHER WAY AGAINST INDICTING JUST BECAUSE OF THE NATURE OF THE

6   CASE?

7      PROSPECTIVE JUROR:  WELL, I HAVE SOME FAIRLY STRONG

8   FEELINGS REGARDING DRUG CASES.  I DO NOT BELIEVE THAT ANY

9   DRUGS SHOULD BE CONSIDERED ILLEGAL, AND I THINK WE'RE SPENDING

10  A LOT OF TIME AND ENERGY PERSECUTING AND PROSECUTING CASES

11  WHERE RESOURCES SHOULD BE DIRECTED IN OTHER AREAS.

12      I ALSO HAVE STRONG FEELINGS ABOUT IMMIGRATION CASES.

13  AGAIN, I THINK WE'RE SPENDING A LOT OF TIME PERSECUTING PEOPLE

14  THAT WE SHOULD NOT BE.

15      THE COURT:  WELL, LET ME TELL YOU, YOU'VE HIT ON THE

16  TWO TYPES OF CASES THAT ARE REALLY KIND OF THE STAPLE OF THE

17  WORK WE DO HERE IN THE SOUTHERN DISTRICT OF CALIFORNIA.  AS I

18  MENTIONED IN MY INITIAL REMARKS, OUR PROXIMITY TO THE BORDER

19  KIND OF MAKES US A FUNNEL FOR BOTH DRUG CASES AND IMMIGRATION

20  CASES.  YOU'RE GOING TO BE HEARING THOSE CASES I CAN TELL YOU

21  FOR SURE.  JUST AS DAY FOLLOWS NIGHT, YOU'RE HEAR CASES LIKE

22  THAT.

23      NOW, THE QUESTION IS CAN YOU FAIRLY EVALUATE THOSE

24  CASES?  JUST AS THE DEFENDANT ULTIMATELY IS ENTITLED TO A FAIR

25  TRIAL AND THE PERSON THAT'S ACCUSED IS ENTITLED TO A FAIR

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 18 of 69

17

1    APPRAISAL OF THE EVIDENCE OF THE CASE THAT'S IN FRONT OF YOU,

2    SO, TOO, IS THE UNITED STATES ENTITLED TO A FAIR JUDGMENT.  IF

3    THERE'S PROBABLE CAUSE, THEN THE CASE SHOULD GO FORWARD.  I

4    WOULDN'T WANT YOU TO SAY, "WELL, YEAH, THERE'S PROBABLE CAUSE.

5    BUT I STILL DON'T LIKE WHAT OUR GOVERNMENT IS DOING.  I

6    DISAGREE WITH THESE LAWS, SO I'M NOT GOING TO VOTE FOR IT TO

7    GO FORWARD."  IF THAT'S YOUR FRAME OF MIND, THEN PROBABLY YOU

8    SHOULDN'T SERVE.  ONLY YOU CAN TELL ME THAT.

9              PROSPECTIVE JUROR:  WELL, I THINK I MAY FALL IN THAT

10   CATEGORY.

11             THE COURT:  IN THE LATTER CATEGORY?

12             PROSPECTIVE JUROR:  YES.

13             THE COURT:  WHERE IT WOULD BE DIFFICULT FOR YOU TO

14   SUPPORT A CHARGE EVEN IF YOU THOUGHT THE EVIDENCE WARRANTED

15   IT?

16             PROSPECTIVE JUROR:  YES.

17             THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  I

18   APPRECIATE YOUR HONEST ANSWERS.

19             THE COURT:  ██████DO YOU WANT TO PICK A REPLACEMENT

20   AT THIS POINT?

21             THE CLERK:  YES, SIR.

22        ..   JUROR NO. ████████████████

23             THE COURT:  LET ME GIVE YOU A MINUTE TO GET A COPY

24   OF THE SHEET.  TAKE A LOOK AT IT.  I THINK WE KNOW WHO YOU

25   ARE.

COMPUTER-AIDED TRANSCRIPTION

49

18

1

2    PROSPECTIVE JUROR:  CORRECT.

3        I LIVE IN ▓▓▓▓▓▓▓    MY HUSBAND AND I HAVE OUR OWN

4    BUSINESS.  WE ARE ENGINEERING AND MANUFACTURING COMPONENTS FOR

5    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓    WE'VE BEEN IN BUSINESS ABOUT ▓▓▓

6    YEARS NOW.  WE'RE DOING REALLY WELL.  HE FREAKED OUT WHEN HE

7    TOLD ME I SHOULD JUST TELL YOU I SEE GUILTY PEOPLE.

8        THE COURT:  OH, I SAY THROUGH THE PHONY EXCUSES.

9    YOU THINK OTHERS HAVEN'T TRIED THAT BEFORE.

10       PROSPECTIVE JUROR:  I'M SURE THEY HAVE.

11       WE'VE BEEN MARRIED 31 YEARS.  I HAVE TWO ADULT

12   CHILDREN.  ONE'S A ▓▓▓▓▓▓▓▓▓ AND THE OTHER ONE'S A ▓▓▓▓

13   ▓▓▓▓▓▓▓ STUDENT AT ▓▓▓ IN ▓▓▓▓▓▓▓▓ IT'S MY FIRST COURT

14   APPEARANCE.  AND I THINK I CAN BE FAIR.

15       THE COURT:  I THINK YOU'LL ACTUALLY ENJOY IT, AND I

16   HOPE YOU'LL BE ABLE TO ACCOMMODATE YOUR WORK SCHEDULE HELPING

17   YOUR HUSBAND WITH THAT.

18       PROSPECTIVE JUROR:  I'M KIND OF CONCERNED ABOUT OUR

19   SCHEDULE.

20       THE COURT:  MOST PEOPLE FIND A WAY TO WORK IT OUT.

21   WE HEAR OFTEN "WELL, I'M SELF-EMPLOYED.  THIS IS GOING TO BE A

22   TREMENDOUS FINANCIAL BURDEN."

23       HERE'S WHAT I'M BUFFETED BY AS THE PERSON CHARGED

24   WITH MAKING THE DECISIONS:  THE CONSTITUTION REQUIRES THAT

25   JURIES, TRIAL JURIES AND GRAND JURIES, BE DRAWN FROM A FAIR

COMPUTER-AIDED TRANSCRIPTION

50

19

1    AND ACCURATE CROSS-SECTION OF THE COMMUNITY.  AND WHAT THE

2    COURTS HAVE SAID OVER THE YEARS IS NO GROUP IS AUTOMATICALLY

3    EXCLUDED.  YOU'VE GOT TO LOOK AT EVERYBODY.  AND THE EXCUSES

4    HAVE TO BE ON A CASE-BY-CASE BASIS.

5             AS YOU CAN IMAGINE, IF I EXCUSED EVERYONE WHO HAD

6    FINANCIAL HARDSHIP OR WAS SELF-EMPLOYED, THEN WE WOULD SKEW

7    OUR JURY POOLS.  WE WOULD HAVE WHOLE SEGMENTS OF OUR COMMUNITY

8    HERE THAT WERE NOT REPRESENTED, AND THAT WOULDN'T BE

9    CONSISTENT WITH THE CONSTITUTIONAL GUARANTEES.

10             AND SO I'M THE GUY AT THE FLOODGATE WITH THE BIG

11   WHEEL TRYING TO TURN IT AND MAKE THE DECISIONS.  I SAY THAT

12   RELUCTANTLY BECAUSE I'M NOT UNMINDFUL AT ALL OF THE BURDEN IT

13   PLACES ON NOT ONLY SELF-EMPLOYED PEOPLE, BUT PEOPLE WITH

14   REGULAR FULL-TIME JOBS THAT ARE GOING TO BE AWAY FOR A PERIOD

15   OF TIME.

16             WE DO APPRECIATE YOUR SERVICE.  IT'S IMPORTANT

17   SERVICE.  YOU SAY THIS IS YOUR FIRST TIME HERE.  IF YOU WERE

18   EVER HERE IN SOME OTHER CAPACITY, WITH LITIGATION OF SOME

19   TYPE, WHETHER CIVIL OR CRIMINAL, YOU WOULD WANT CONSCIENTIOUS

20   PEOPLE FROM THE COMMUNITY.  THAT'S THE GUARANTEE THAT WE TRY

21   TO GIVE; IS THAT "WE'RE GOING TO GIVE YOU A JUST DECISION, AND

22   IT WILL BE A JURY OF YOUR PEERS, PEOPLE JUST LIKE YOU FROM OUR

23   COMMUNITY WHO WILL MAKE THE DECISION.  WE CAN'T CONTINUE TO

24   GIVE THAT GUARANTEE UNLESS WE HAVE PEOPLE WILLING TO SERVE.

25             I THANK YOU.  I APPRECIATE THE SACRIFICE.  WELCOME.

COMPUTER-AIDED TRANSCRIPTION

20

1    WE'RE GLAD TO HAVE YOU.

2    ████████████

3         PROSPECTIVE JUROR:  MY NAME IS ███████████    I

4    LIVE IN ██████████ AND I'M A JANITOR.  I'M MARRIED.  MY

5    WIFE IS A █████████ I HAVE ███ ADULT CHILDREN.  MY

6    ████████ IN ██████████ IN ████████ MY ███ IS

7    WORKING ████████████ AN ████████████████

8    AND I HAVE ONCE BEEN A TRIAL JUROR ABOUT 15 YEARS AGO.

9         THE COURT:  CRIMINAL OR CIVIL?

10         PROSPECTIVE JUROR:  CIVIL CASE.

11         AND I COULD BE FAIR.

12         THE COURT:  YOU MAKE THAT STATEMENT MINDFUL OF THE

13    QUESTIONS I'VE PUT TO OTHERS AND THE ANSWERS THAT THEY'VE

14    GIVEN?

15         PROSPECTIVE JUROR:  YES.

16         THE COURT:  THANK YOU.

17    ███████████

18         PROSPECTIVE JUROR:  ███████████  I LIVE IN

19    ██████████ I'M AN ENGINEER FOR THE ██████████  I

20    INSTALL AND MAINTAIN █████████████████████

21    ████████████████ I'M NOT MARRIED.  I HAVE NO CHILDREN.

22    I HAVE NOT SERVED ON A JURY BEFORE.

23         THE COURT:  ANY TYPE OF JURY?

24         PROSPECTIVE JUROR:  ANY TYPE OF JURY.

25         I HOPE I CAN BE FAIR.

COMPUTER-AIDED TRANSCRIPTION

Case 3:08-cr-00724-WQH    Document 15-3    Filed 04/01/2008    Page 56 of 116
Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 22 of 69

21

1          THE COURT:  I THINK YOU CAN BE FAIR.

2          THE QUESTION IS JUST A TIME PROBLEM; RIGHT?

3          THE DEFENDANT:  YES, SIR.

4          THE COURT:  DOESN'T HAVE TO DO WITH FAIRLY --

5          __ PROSPECTIVE JUROR:  NO, SIR.

6          THE COURT:  I SPOKE TO YOU AT SIDEBAR ABOUT THAT.

7    IF IT BECOMES A PROBLEM, WE CAN DEAL WITH IT.  I'LL REVISIT IT

8    AT SOME LATER TIME.

9          BUT I THINK THE EXPLANATION I GAVE TO ▓▓▓▓▓ ALSO

10   WOULD APPLY IN YOUR CASE.  I CAN'T JUST SUMMARILY SAY, "WELL,

11   THIS FELLOW'S GOT A TIME PROBLEM, SO WE'VE GOT TO LET HIM GO."

12         WHERE'S YOUR DUTY STATION HERE?  WHERE'S YOUR

13   WORKPLACE?

14         PROSPECTIVE JUROR:  IN ▓▓▓▓▓▓

15         THE COURT:  ▓▓▓▓▓▓ THANK YOU.  I APPRECIATE

16   YOUR ANSWERS.

17         ▓▓▓▓▓▓

18         PROSPECTIVE JUROR:  MY NAME IS ▓▓▓▓▓▓▓      I

19   LIVE IN ▓▓▓▓▓▓.  I'M A STATISTICIAN AT ▓▓▓▓▓▓▓

20   ▓▓▓▓▓.  I'M SEPARATED RIGHT NOW.  I HAVE TWO ▓▓▓▓

21   CHILDREN.  I'VE BEEN ON A TRIAL JURY ON A CRIMINAL CASE AT THE

22   SUPERIOR COURT ABOUT TWO YEARS AGO.  AND I CAN BE FAIR.

23         THE COURT:  YOU WATCHED THE FILM AND APPRECIATE THE

24   DIFFERENCE BETWEEN THE FUNCTION OF THE GRAND JURY AND THEN

25   WHAT A CRIMINAL TRIAL JURY DOES?

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM   Document 18   Filed 07/30/2007   Page 23 of 69

22

1   PROSPECTIVE JUROR:  YES.

2   THE COURT:  THANK YOU, ████████████

3   I'M NOT GOING TO MAKE ANY JOKES ABOUT ████████████

4   ████████████

5   PROSPECTIVE JUROR:  MY NAME IS ████████████  I

6   LIVE IN ████████████ JUST EAST OF HERE.  I'M A PROJECT

7   MANAGER FOR THE CITY OF ████████████

8   ████████ I'M MARRIED.  MY WIFE'S A ████████████, BUT

9   SHE'S ON LEAVE RIGHT NOW RAISING ████ KIDS; ████████ AND

10   ████ MONTHS.  SO THEY'RE NOT ADULTS.  I HAVE NO EXPERIENCE

11   SERVING ON ANY JURY OF ANY TYPE.  I'VE BEEN SUMMONED.  I'VE

12   BEEN EXCUSED FROM ONE OR TWO.  I'VE SIMPLY NOT BEEN CALLED FOR

13   OTHERS.  I BELIEVE I CAN BE FAIR.

14   THE COURT:  THANK YOU.

15   ████████████

16   PROSPECTIVE JUROR: ████████████  I LIVE IN THE

17   COMMUNITY OF ████████  I DRIVE A SCHOOL FOR THE ████████████

18   ████████ SCHOOL DISTRICT.  MY WIFE IS A ████████████

19   ████████.  I HAVE TWO ████ CHILDREN.  ONE'S A ████████████

20   ████████ IN ████████████ BACK IN ████████████ MY OTHER SON

21   WORKS AS A ████████████

22   THE COURT:  HOW LONG HAVE YOU DRIVEN A SCHOOL BUS UP

23   IN THE ████████████

24   PROSPECTIVE JUROR:  THREE YEARS NOW.  ACTUALLY, I'VE

25   ONLY HAD TO DRIVE UP TO ████████ WITH A BUS FOR ABOUT THREE

COMPUTER-AIDED TRANSCRIPTION

23

1    MONTHS.  MOST OF MY STUFF HAS BEEN IN THE ███████████████

2    AREA.  NOW I'M OVER BY ██████████████ DRIVING.  I DRIVE

3    SPECIAL NEEDS CHILDREN.

4              THE COURT:  IT'S BEEN A WHILE SINCE MY KIDS WERE

5    SMALL.  I TOOK THEM TO SNOW.

6              ███████ IS UP IN THE MOUNTAINS; RIGHT?

7              PROSPECTIVE JUROR:  JUST ABOVE ██████ WHERE THE

8    FIRE WAS.

9              THE COURT:  OH.  I'M THINKING WAY FARTHER EAST AND

10   COLDER THAN ████████

11             YOU'RE NOT DRIVING OUT IN THE SNOW DURING THE

12   WINTER, ARE YOU?

13             PROSPECTIVE JUROR:  NONE OF THE █████████████

14   SCHOOLS.

15             AND I'VE NEVER BEEN ON A JURY AT ALL.  I THINK I CAN

16   DO ALL THIS.

17             THE COURT:  YOU HAVE NO RESERVATION ABOUT YOUR

18   ABILITY TO BE FAIR AND IMPARTIAL AND LOOK AT THE EVIDENCE AND

19   PERFORM THE FUNCTION THAT THE GRAND JURY PERFORMS.

20             PROSPECTIVE JUROR:  NO, SIR.

21             THE COURT:  ████████████

22             PROSPECTIVE JUROR:  MY NAME IS ████████████  I LIVE

23   IN ████████  I WORK AS A SCHOOL PSYCHOLOGIST.  I'M AT THE

24   ██████████ SCHOOL DISTRICT.  I AM MARRIED.  MY HUSBAND IS A

25   █████████████, SO NOW HE ████████████████████ I HAVE ███████

COMPUTER-AIDED TRANSCRIPTION

24

1    ADULT STEPCHILDREN.  ONE IS AN ███████████ AND ONE

2    IS IN ██████████ I SERVED AS A TRIAL JUROR IN VISTA MAYBE

3    TEN YEARS AGO NOW.  AND YES, I CAN BE FAIR.

4              THE COURT:  THANK YOU.  I APPRECIATE YOUR ANSWERS.

5              ██████████████

6              PROSPECTIVE JUROR:  MY NAME IS ██████████ I'M

7    FROM ██████████ I'M A HOMEMAKER.  MY HUSBAND IS A ████████

8    ████████  OUR ████████ ███████████ I'VE NEVER BEEN SELECTED

9    FOR A JURY, ALTHOUGH I WAS CALLED.  AND I THINK I CAN BE FAIR.

10             THE COURT:  WERE YOU CALLED UP TO VISTA?  IS THAT

11   WHERE YOU WOULD REPORT?

12             PROSPECTIVE JUROR:  YES.

13             THE COURT:  ███████████

14             PROSPECTIVE JUROR:  MAY NAME IS ████████████ I

15   LIVE IN ████████ I'M A REAL ESTATE AGENT.  NOT MARRIED.  NO

16   KIDS.  HAVE NOT SERVED.  AND AS FAR AS BEING FAIR, IT KIND OF

17   DEPENDS UPON WHAT THE CASE IS ABOUT BECAUSE THERE IS A

18   DISPARITY BETWEEN STATE AND FEDERAL LAW.

19             THE COURT:  IN WHAT REGARD?

20             PROSPECTIVE JUROR:  SPECIFICALLY, MEDICAL

21   MARIJUANA.

22             THE COURT:  WELL, THOSE THINGS -- THE CONSEQUENCES

23   OF YOUR DETERMINATION SHOULDN'T CONCERN YOU IN THE SENSE THAT

24   PENALTIES OR PUNISHMENT, THINGS LIKE THAT -- WE TELL TRIAL

25   JURORS, OF COURSE, THAT THEY CANNOT CONSIDER THE PUNISHMENT OR

COMPUTER-AIDED TRANSCRIPTION

56

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 26 of 69

25

1    THE CONSEQUENCE THAT CONGRESS HAS SET FOR THESE THINGS.  WE'D

2    ASK YOU TO ALSO ABIDE BY THAT.  WE WANT YOU TO MAKE A

3    BUSINESS-LIKE DECISION AND LOOK AT THE FACTS AND MAKE A

4    DETERMINATION OF WHETHER THERE WAS A PROBABLE CAUSE.

5            COULD YOU DO THAT?  COULD YOU PUT ASIDE STRONG

6    PERSONAL FEELINGS YOU MAY HAVE?

7            PROSPECTIVE JUROR:  IT DEPENDS.  I HAVE A VERY

8    STRONG OPINION ON IT.  WE LIVE IN THE STATE OF CALIFORNIA, NOT

9    FEDERAL CALIFORNIA.  THAT'S HOW I FEEL ABOUT IT VERY STRONGLY.

10           THE COURT:  WELL, I DON'T KNOW HOW OFTEN MEDICAL

11   MARIJUANA USE CASES COME UP HERE.  I DON'T HAVE A GOOD FEEL

12   FOR THAT.  MY INSTINCT IS THEY PROBABLY DON'T ARISE VERY

13   OFTEN.  BUT I SUPPOSE ONE OF THE SOLUTIONS WOULD BE IN A CASE

14   IMPLICATING MEDICAL USE OF MARIJUANA, YOU COULD RECUSE

15   YOURSELF FROM THAT CASE.

16           ARE YOU WILLING TO DO THAT?

17           PROSPECTIVE JUROR:  SURE.

18           THE COURT:  ALL OTHER CATEGORIES OF CASES YOU COULD

19   GIVE A FAIR, CONSCIENTIOUS JUDGMENT ON?

20           PROSPECTIVE JUROR:  FOR THE MOST PART, BUT I ALSO

21   FEEL THAT DRUGS SHOULD BE LEGAL.

22           THE COURT:  OUR LAWS ARE DIFFERENT FROM THAT.  AND

23   AS YOU HEARD ME EXPLAIN TO ███████████ A LOT OF THE CASES

24   THAT COME THROUGH IN OUR COURT ARE DRUG CASES.  YOU'LL BE

25   CALLED UPON TO EVALUATE THOSE CASES OBJECTIVELY AND THEN MAKE

COMPUTER-AIDED TRANSCRIPTION

26

1    THE TWO DETERMINATIONS THAT I STARTED OFF EXPLAINING TO

2    ▉▉▉▉▉▉▉▉▉▉    "DO I HAVE A REASONABLE BELIEF THAT A CRIME WAS

3    COMMITTED?  WHETHER I AGREE WITH WHETHER IT OUGHT TO BE A

4    CRIME OR NOT, DO I BELIEVE THAT A CRIME WAS COMMITTED AND THAT

5    THE PERSON THAT THE GOVERNMENT IS ASKING ME TO INDICT WAS

6    SOMEHOW INVOLVED IN THIS CRIME, EITHER COMMITTED IT OR HELPED

7    WITH IT?"

8            COULD YOU DO THAT IF YOU SIT AS A GRAND JUROR?

9            PROSPECTIVE JUROR:  THE LAST JURY I WAS ASKED TO SIT

10    ON, I GOT EXCUSED BECAUSE OF THAT REASON.

11            THE COURT:  YOU SAID YOU COULDN'T DO IT?  YOUR

12    SENTIMENTS ARE SO STRONG THAT THEY WOULD IMPAIR YOUR

13    OBJECTIVITY ABOUT DRUG CASES?

14            PROSPECTIVE JUROR:  I THINK RAPISTS AND MURDERERS

15    OUGHT TO GO TO JAIL, NOT PEOPLE USING DRUGS.

16            THE COURT:  I THINK RAPISTS AND MURDERERS OUGHT TO

17    GO TO JAIL, TOO.  IT'S NOT FOR ME AS A JUDGE TO SAY WHAT THE

18    LAW IS.  WE ELECT LEGISLATORS TO DO THAT.  WE'RE SORT OF AT

19    THE END OF THE PIPE ON THAT.  WE'RE CHARGED WITH ENFORCING THE

20    LAWS THAT CONGRESS GIVES US.

21            I CAN TELL YOU SOMETIMES I DON'T AGREE WITH SOME OF

22    THE LEGAL DECISIONS THAT ARE INDICATED THAT I HAVE TO MAKE.

23    BUT MY ALTERNATIVE IS TO VOTE FOR SOMEONE DIFFERENT, VOTE FOR

24    SOMEONE THAT SUPPORTS THE POLICIES I SUPPORT AND GET THE LAW

25    CHANGED.  IT'S NOT FOR ME TO SAY, "WELL, I DON'T LIKE IT.  SO

COMPUTER-AIDED TRANSCRIPTION

27

1   I'M NOT GOING TO FOLLOW IT HERE."

2         YOU'D HAVE A SIMILAR OBLIGATION AS A GRAND JUROR

3   EVEN THOUGH YOU MIGHT HAVE TO GRIT YOUR TEETH ON SOME CASES.

4   PHILOSOPHICALLY, IF YOU WERE A MEMBER OF CONGRESS, YOU'D VOTE

5   AGAINST, FOR EXAMPLE, CRIMINALIZING MARIJUANA.  I DON'T KNOW

6   IF THAT'S IT, BUT YOU'D VOTE AGAINST CRIMINALIZING SOME DRUGS.

7         THAT'S NOT WHAT YOUR PREROGATIVE IS HERE.  YOUR

8   PREROGATIVE INSTEAD IS TO ACT LIKE A JUDGE AND TO SAY, "ALL

9   RIGHT.  THIS IS WHAT I'VE GOT TO DEAL WITH OBJECTIVELY.  DOES

10  IT SEEM TO ME THAT A CRIME WAS COMMITTED?  YES.  DOES IT SEEM

11  TO ME THAT THIS PERSON'S INVOLVED?  IT DOES."  AND THEN YOUR

12  OBLIGATION, IF YOU FIND THOSE THINGS TO BE TRUE, WOULD BE TO

13  VOTE IN FAVOR OF THE CASE GOING FORWARD.

14        I CAN UNDERSTAND IF YOU TELL ME "LOOK, I GET ALL

15  THAT, BUT I JUST CAN'T DO IT OR I WOULDN'T DO IT."  I DON'T

16  KNOW WHAT YOUR FRAME OF MIND IS.  YOU HAVE TO TELL ME ABOUT

17  THAT.

18        PROSPECTIVE JUROR:  I'M NOT COMFORTABLE WITH IT.

19        THE COURT:  DO YOU THINK YOU'D BE INCLINED TO LET

20  PEOPLE GO ON DRUG CASES EVEN THOUGH YOU WERE CONVINCED THERE

21  WAS PROBABLE CAUSE THEY COMMITTED A DRUG OFFENSE?

22        PROSPECTIVE JUROR:  IT WOULD DEPEND UPON THE CASE.

23        THE COURT:  IS THERE A CHANCE THAT YOU WOULD DO

24  THAT?

25        PROSPECTIVE JUROR:  YES.

COMPUTER-AIDED TRANSCRIPTION

28

1    THE COURT:  I APPRECIATE YOUR ANSWERS.  I'LL EXCUSE

2  YOU AT THIS TIME.

3        THE CLERK:  ██████████████████████████

4        THE COURT:  GOOD MORNING, ████████████

5  PROSPECTIVE JUROR:  GOOD MORNING.

6        THE COURT:  LET ME GIVE YOU A MINUTE TO GET

7  ORIENTED.

8        PROSPECTIVE JUROR:  MY NAME IS ████████████ I

9  LIVE IN ████████████ I'M A CONTRACT ADMINISTRATOR FOR THE

10  STATE OF CALIFORNIA ON THEIR ████████████████ PROJECTS.

11  I'M NOT MARRIED.  I DON'T HAVE ANY CHILDREN.  I HAVE

12  EXPERIENCE IN THE '80'S AS A TRIAL JUROR.  AND I CAN BE

13  FAIR.

14        THE COURT:  DO YOU HAVE ANYTHING TO DO WITH GETTING

15  THE TELEPHONE POLES DOWN IN MY NEIGHBORHOOD?

16        PROSPECTIVE JUROR:  NO, BUT I CAN GET YOU A NUMBER

17  TO CALL.

18        THE COURT:  THAT'S GOOD ENOUGH.  WE'RE GOING TO KEEP

19  YOU ON THIS GRAND JURY.

20  ██████████████████

21        PROSPECTIVE JUROR:  MY NAME IS ████████████ I LIVE

22  IN ████████████ I'M A SPECIAL ED ASSISTANT AT ████████████

23  ████████ SCHOOL DISTRICT.  I'VE BEEN THERE FOR ABOUT ██ YEARS.

24  I'VE BEEN MARRIED FOR ██ YEARS.  MY HUSBAND IS ████████ HE

25  ████████████████ I HAVE ████ ADULT CHILDREN:  ONE'S A

29

1    ███████████ MY ████ BOYS WORK FOR THE ████████████ IN

2    █████████████████ AND THEY WORK FOR A COMPANY WHERE THEY GO

3    INTO THE ███████████████ AND THE ████████████ TO COPY OFF ██████████

4    RECORDS.

5              THE COURT:  THEY BOTH HAVE THE SAME JOB, SAME JOB

6    FUNCTIONS?

7              PROSPECTIVE JUROR:  YES.  WELL, ACTUALLY, MY OLDER

8    BOY HAD THIS JOB FOR -- HE'S BEEN WORKING FOR THE COMPANY FOR

9    A LONG TIME.

10             THE COURT:  TOLD HIS BROTHER "THIS IS A GOOD GIG"?

11             PROSPECTIVE JUROR:  YEAH.  HIS BROTHER WAS WORKING

12   IN ███████ FOR A WHILE.  THEN THE JOB OPENED UP, AND MY

13   YOUNGER ONE NOW IS WORKING THERE.  HE GOES ALSO ALL OVER

14   ███████████, ██████████████████████

15             THE COURT:  WHERE'S THE OLDER BROTHER?

16             PROSPECTIVE JUROR:  THE OLDER BROTHER NOW IS IN ██

17   ███████████ THINGS WERE A LITTLE BIT BETTER FOR HIM TO GROW AND

18   BE ABLE TO BUY A HOME.  SO HE'S OVER THERE WITH HIS WIFE AND

19   TWO KIDS.

20             I HAVE BEEN ON A JURY BEFORE FOR FEDERAL IN 1980

21   MAYBE.  A LONG, LONG TIME AGO.  I'VE BEEN CALLED FOR SUPERIOR

22   COURT IN EL CAJON AND HERE IN SAN DIEGO.

23             THE COURT:  DID YOU WATCH OUR ORIENTATION FILM THIS

24   MORNING AND APPRECIATE THE DIFFERENCE IN FUNCTIONS BETWEEN

25   GRAND JURIES AND TRIAL JURIES?

COMPUTER-AIDED TRANSCRIPTION

61

30

1      PROSPECTIVE JUROR:  YES.

2      THE COURT:  ANY REASON YOU CAN THINK OF WHY YOU

3  WOULDN'T BE FAIR AND IMPARTIAL?

4      PROSPECTIVE JUROR:  NO.  I CAN BE FAIR.

5      THE COURT:  THANK YOU, ███████████

6      ███████████

7      PROSPECTIVE JUROR:  MY NAME IS ███████████  I COME

8  FROM ███████ WHICH IS ███████████  I WORK FOR THE POST

9  OFFICE.  I'M A MAIL CARRIER.  I'M DIVORCED.  I HAVE ONE ADULT

10  ███████  SHE WORKS IN A ███████ AND ALSO AT THE ███████

11  DOWN THERE.  I'VE BEEN ON TWO TRIALS:  ONE WAS A CRIMINAL,

12  SPOUSAL ABUSE; AND THE OTHER ONE WAS A CRIMINAL **.

13      THE COURT:  WAS THAT OUT IN ███████

14      PROSPECTIVE JUROR:  SUPERIOR COURT, YES.

15      AND YES, I CAN BE FAIR.

16      THE COURT:  HOW LONG WAS YOUR DRIVE OVER TODAY?

17      PROSPECTIVE JUROR:  TWO HOURS.

18      THE COURT:  DID THE DESERT FLOWERS START TO BLOOM

19  YET?

20      PROSPECTIVE JUROR:  NOT YET.

21      THE COURT:  WHEN DOES THAT HAPPEN?

22      PROSPECTIVE JUROR:  JUST ABOUT MAY, USUALLY.

23      THE COURT:  WHAT TIME WOULD ███████ HAVE TO BE

24  HERE ORDINARILY?

25      THE CLERK:  THEY TELL YOU YOU CAN COME OVERNIGHT.

COMPUTER-AIDED TRANSCRIPTION

31

1          PROSPECTIVE JUROR:  YES, I FOUND THAT OUT WHEN I GOT

2   HERE.

3          THE COURT:  IF THE DRIVE'S NOT GOING TO BE A

4   PROBLEM, YOU'RE HAPPY TO SERVE?

5          PROSPECTIVE JUROR:  I CAN SERVE, YES.

6          THE COURT:  WE'RE HAPPY TO HAVE YOU HERE.

7          THE SOUTHERN DISTRICT OF CALIFORNIA, LADIES AND

8   GENTLEMEN, COMPRISES BOTH SAN DIEGO COUNTY -- AND MOST OF US

9   ARE FROM SAN DIEGO COUNTY -- AND ALSO IMPERIAL COUNTY.  WE TRY

10  TO PULL RANDOMLY BUT SYSTEMATICALLY FROM IMPERIAL COUNTY, TOO.

11  IT'S NOT OUT OF THE ORDINARY.  IT'S A LITTLE UNUSUAL THAT I'LL

12  GET MORE THAN ONE OR TWO IMPERIAL COUNTY PROSPECTIVE JURORS

13  EVEN ON A TRIAL JURY.

14          BUT WE'RE HAPPY TO HAVE YOU, TEN-GALLON HAT AND ALL.

15

16          PROSPECTIVE JUROR:  MY NAME IS ███████████  I

17  LIVE IN THE ███████████████████  I'M RETIRED.  I'VE

18  BEEN RETIRED FOR SIX YEARS.

19          THE COURT:  WHAT KIND OF WORK DID YOU DO?

20          PROSPECTIVE JUROR:  I WAS IN THE PRINTING INDUSTRY

21  FOR ███ YEARS.

22          MY WIFE IS ██████████  WE HAVE ██████ ADULT

23  CHILDREN.  TWO OF THEM LIVE ████████████ ONE'S AN ███████

24  ████████████████████ THE OTHER IS A ██████████████

25  ████████ AND MY OTHER ████████ LIVES IN ████████████

COMPUTER-AIDED TRANSCRIPTION

32

1    SHE'S A ████████████████

2         THE COURT:  DID THE ████████████ SING IN THE SHOWER

3    WHEN ███ LIVED AT HOME?

4         PROSPECTIVE JUROR: ████ STILL SINGS IN THE SHOWER.

5         AND I'VE BEEN CALLED A FEW TIMES, BUT HAVE NOT

6    SERVED ON ANY JURIES.  AND I CERTAINLY CAN BE FAIR.

7         THE COURT:  THANK YOU, ███████████ WE'RE HAPPY

8    TO HAVE YOU.

9         FINALLY, █████████

10        PROSPECTIVE JUROR:  MY NAME IS ██████████ I LIVE

11   IN ███████████  I'M AN ACTIVE REAL ESTATE BROKER.  MY

12   WIFE IS ███████ WE HAVE ███ ADULT CHILDREN: █████ F THEM

13   ARE MARRIED, AND ONE'S A █████████████████    I

14   HAVE NO EXPERIENCE AS A JUROR.  HOWEVER, I HAVE SERVED AS A

15   WITNESS FOR THE GRAND JURY.

16        THE COURT:  YOU'VE ACTUALLY BEEN CALLED AS A WITNESS

17   BEFORE A GRAND JURY?

18        PROSPECTIVE JUROR:  YES, I HAVE.

19        THE COURT:  HOW LONG AGO WAS THAT?

20        PROSPECTIVE JUROR:  I WOULD SAY ABOUT TEN YEARS.

21        AND YES, I CAN BE FAIR.

22        THE COURT:  WELL, YOU MAY KNOW FROM YOUR EXPERIENCE

23   THAT IF YOU HAVE COUNSEL AS A WITNESS, YOUR COUNSEL DOESN'T

24   ACCOMPANY YOU IN TO THE GRAND JURY.  THE HALLMARK OF THE GRAND

25   JURY IS THAT IT'S A SECRET PROCEEDING AND NECESSARILY SO.

COMPUTER-AIDED TRANSCRIPTION

33

1    BECAUSE IF YOU, AS A GRAND JURY, DECIDE NO CHARGES SHOULD BE

2    BROUGHT, THEN NO ONE'S THE WORSE FOR THE WEAR. NO ONE EVER

3    KNOWS ABOUT THAT.

4         WE DO ALLOW WITNESSES TO CONSULT WITH THEIR LAWYERS,

5    BUT THEY MUST LEAVE THE GRAND JURY ROOM, CONSULT OUTSIDE WITH

6    THE LAWYER, AND THEN COME BACK IN. SO THAT'S WHAT YOU CAN

7    EXPECT IF THERE ARE WITNESSES WHO ARE REPRESENTED BY COUNSEL.

8         PROSPECTIVE JUROR: IT WAS SO SECRETIVE THAT I

9    DIDN'T EVEN KNOW WHAT I WAS THERE FOR.

10        THE COURT: I'M GOING TO TOUCH ON THAT IN MY

11   REMARKS. BUT IT'S VERY IMPORTANT THAT -- IT'S CHARACTERISTIC

12   OF THE GRAND JURY, AND YOU WILL BE UNDER LEGAL OBLIGATIONS NOT

13   TO SPEAK OF WHAT GOES ON IN FRONT OF THE GRAND JURY. THERE'S

14   A LOT OF INTEREST SERVED BY THAT SECRECY, AS I SAID.

15        ORDINARILY, EVERYTHING IS SUPPOSED TO BE

16   TRANSCRIBED. WE'RE SUPPOSED TO KNOW WHAT OUR GOVERNMENT IS

17   DOING. BUT THIS IS ONE AREA WHERE TRADITIONALLY THE COURTS

18   AND EVERYONE ELSE SAYS, "NO. WE NEED TO HAVE CONFIDENTIALITY

19   AND SECRECY HERE." I TOUCHED ON ONE OF THE REASONS WHY IT HAS

20   TO DO WITH NOT RUINING THE REPUTATIONS OF PEOPLE, FOR EXAMPLE,

21   WHO MAY BE UNDER INVESTIGATION, BUT NO CHARGES EVER RESULT.

22   SOMETIMES THE POWER TO INDICT SOMEONE CAN BE THE POWER TO RUIN

23   A REPUTATION.

24        THERE ARE A LOT OF OTHER GOOD REASONS WHY THE GRAND

25   JURY HAS TO FUNCTION SECRETLY. FIRST, IT PROMOTES YOUR

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 35 of 69

34

1    SECURITY.  PEOPLE WON'T KNOW THAT YOU'RE GRAND JURORS UNLESS

2    YOU TELL THEM.  A LOT OF TIMES THE CRIMES UNDER INVESTIGATION,

3    THE GOVERNMENT IS NOT SURE YET WHETHER IT'S A CRIME.  WE NEED

4    THE HELP OF THE GRAND JURY IN ASCERTAINING WHAT'S GOING ON.

5    SO THEY DON'T WANT TO TIP THEIR HAND AND SAY, "WE'RE LOOKING

6    AT SOMETHING."  THEY DON'T WANT PEOPLE TO TAKE MEASURES TO

7    COVER UP CRIMINAL ACTIVITIES.

8             ON OTHER OCCASIONS, SOMEONE WHO KNOWS HE'S THE

9    OBJECT OF AN INVESTIGATION MIGHT FLEE TO A DIFFERENT COUNTRY

10   AND GET OUTSIDE THE JURISDICTION OF THE UNITED STATES WHERE

11   THEY COULDN'T BE REACHED.

12            SO ALL OF THOSE REASONS AND OTHERS PROMOTE THE

13   POLICY OF GRAND JURY SECRECY.  YOU TOUCHED ON SOMETHING THAT'S

14   VERY IMPORTANT.  IT WILL BE INCUMBENT UPON ALL OF YOU TO

15   MAINTAIN THE SECRECY OF THE GRAND JURY IF YOU TAKE THE OATH

16   AND SERVE AS GRAND JURORS.

17            HOW'S THE REAL ESTATE MARKET THESE DAYS, SLOW?

18            PROSPECTIVE JUROR:  IT'S A LITTLE SLOW.  I

19   SPECIALIZE IN INVESTMENT PROPERTIES.

20            THE COURT:  SOME THINGS ARE HELPING, THOUGH; RIGHT?

21   THE MORTGAGE RATES ARE STARTING TO DROP?

22            PROSPECTIVE JUROR:  THEY'VE DROPPED A LITTLE BIT.

23            THE COURT:  THAT OUGHT TO HELP.

24            PROSPECTIVE JUROR:  YEAH.  THE MARKET'S STILL PRETTY

25   HIGH HERE IN SAN DIEGO PRICE-WISE.

COMPUTER-AIDED TRANSCRIPTION

35

1     THE COURT:  I READ WHERE PEOPLE ARE JUST STAYING

2  LONGER.  THE SELLERS ARE NOT GIVING UP THEIR PLACES FOR LESS.

3  THEY JUST SAY, "WELL, WE'LL STICK IT OUT.  WE'LL DIG IN OUR

4  HEELS AND STAY."

5     IS THAT WHAT YOU'RE EXPERIENCING, TOO?

6     PROSPECTIVE JUROR:  YES, I FIND A LOT OF THAT.  WHAT

7  YOU HAVE TO REALIZE IS THAT A LOT OF PEOPLE, IF THEY JUST

8  BOUGHT RECENTLY AND THEY'RE TRYING TO GET OUT OR THEY BOUGHT

9  SOME SECONDARY PROPERTY AND SO ON, THOSE ARE THE PEOPLE THAT

10  ARE HAVING PROBLEMS.

11     THE COURT:  THEY'RE A LITTLE BIT UNDERWATER?

12     PROSPECTIVE JUROR:  SOME OF THEM ARE, YES.

13     THE COURT:  THANK YOU, ███████████ I APPRECIATE

14  YOUR ANSWERS.

15     LADIES AND GENTLEMEN, HAVING SPOKEN WITH ALL OF YOU

16  AND PASSED ON YOUR GENERAL QUALIFICATIONS TO SIT, IT'S NOW MY

17  RESPONSIBILITY TO SELECT TWO OF YOUR NUMBER:  ONE AS A

18  FOREPERSON, THE OTHER AS A DEPUTY FOREPERSON.  THE FOREPERSON

19  PRESIDES OVER THE DELIBERATIONS OF THE GRAND JURY AND ACTS AS

20  THE CONTACT WITH BOTH THE COURT AND THE U.S. ATTORNEY'S

21  OFFICE.

22     NEITHER THE FOREPERSON OR THE DEPUTY FOREPERSON HAVE

23  ANY GREATER SAY.  IT'S THE DELIBERATIVE PROCESS.  THE 23 OF

24  YOU ALL HAVE AN EQUAL SAY.

25     BUT I THINK, HAVING LISTENED TO YOUR ANSWERS AND

COMPUTER-AIDED TRANSCRIPTION

67

36

1    EVALUATED YOUR BACKGROUNDS, IT APPEARS TO ME, ▐▐▐▐▐▐▐▐▐▐

2    HAVING PRIOR GRAND JURY SERVICE, THAT YOU WOULD BE A GOOD

3    PERSON TO ACT AS THE FOREPERSON OF THE GRAND JURY.

4            ARE YOU UP TO THE TASK AND WILLING TO ACCEPT THAT

5    ASSIGNMENT?

6            PROSPECTIVE JUROR:  I AM.

7            THE COURT:  THE COURT WOULD THEN APPOINT

8    ▐▐▐▐▐▐▐▐▐▐ AS THE FOREPERSON OF THIS GRAND JURY.

9            ▐▐▐▐▐▐▐▐▐▐ ARE YOU WILLING TO SERVE AS THE DEPUTY

10   FOREPERSON?

11           PROSPECTIVE JUROR:  CERTAINLY.

12           THE COURT:  YOU WOULD BE THE PRESIDING GRAND JUROR

13   IN THE ABSENCE OF ▐▐▐▐▐▐▐▐▐▐

14           THOSE ARE THE DESIGNATIONS I WOULD MAKE, THEN:

15   ▐▐▐▐▐▐▐▐▐▐ AS FOREPERSON; ▐▐▐▐▐▐▐▐▐▐ AS DEPUTY

16   FOREPERSON.

17                        --oOo--

18           THE CLERK:  NEXT PANEL, 07-2, THIS IS THE THURSDAY

19   PANEL. ▐▐▐▐▐▐▐▐▐▐

20   ▐▐▐▐▐▐▐▐▐▐

21   ▐▐▐▐▐▐▐▐▐▐

22   ▐▐▐▐▐▐▐▐▐▐

23   ▐▐▐▐▐▐▐▐▐▐

24   ▐▐▐▐▐▐▐▐▐▐

25   ▐▐▐▐▐▐▐▐▐▐

COMPUTER-AIDED TRANSCRIPTION

37

1  ███████████████████

2  ████████████████████████

3  ██████████████████

4  ███████████████████████

5  █████████████████████████

6  ████████████████████████

7  ███████████████████████

8  ████████████████████████

9  ████████████████████

10 █████████████████████████

11 █████████████████████████

12 ████████████████████████

13 ████████████████████████

14 ██████████████████████████

15 █████████████████████

16 ████████████████

17        THE COURT:  GOOD MORNING.

18        ████████████████████

19        PROSPECTIVE JUROR:  I'███████████████  I LIVE ████

20 ████████  I'M A ████████████████  FOR AN INDIAN TRIBE IN

21 ███████████████████  I'M MARRIED.  MY HUSBAND IS A ██████████

22 █████████████████████████████  I DO NOT HAVE ANY CHILDREN.

23 I HAVE NOT BEEN A JUROR BEFORE.  AND YES, I CAN BE FAIR.

24        THE COURT:  YOU'VE HAD THE ADVANTAGE OF SITTING

25 THROUGH ONE IMPANELMENT ALREADY.  YOU HEARD THE QUESTIONS

COMPUTER-AIDED TRANSCRIPTION

69

38

1    GENERALLY THAT I POSED TO THE OTHER PROSPECTIVE GRAND JURORS

2    ABOUT THE DIFFERENCES BETWEEN TRIAL JURIES AND GRAND JURIES

3    AND WHETHER INDIVIDUALS COULD FULFILL THAT FUNCTION.

4         WOULD YOUR ANSWERS HAVE BEEN BASICALLY THE SAME AS

5    THOSE THAT I'VE BEEN GIVEN WITH THE EXCEPTION OF THE TWO

6    PEOPLE THAT HAVE BEEN EXCUSED?

7         PROSPECTIVE JUROR:  YES.

8         THE COURT:  ████████████

9         PROSPECTIVE JUROR:  I'M ████████  I LIVE IN

10   ████████  I WORK FOR AN INSURANCE COMPANY ████████████

11   I'M MARRIED.  MY WIFE IS A ████████████████████  I

12   HAVE ████ KIDS AGE ████ AND ████  I'VE BEEN A JUROR BEFORE

13   PROBABLY TEN YEARS AGO ON KIND OF A LOW-LEVEL CRIMINAL CASE.

14   AND IN THE NAME OF FULL DISCLOSURE, I'D PROBABLY SUGGEST I'D

15   BE THE FLIPSIDE OF SOME OF THE INDIVIDUALS WHO HAVE CONVEYED

16   THEIR CONCERNS PREVIOUSLY.  I HAVE A STRONG BIAS FOR THE U.S.

17   ATTORNEY, WHATEVER CASES THEY MIGHT BRING.  I DON'T THINK

18   THEY'RE HERE TO WASTE OUR TIME, THE COURT'S TIME, THEIR OWN

19   TIME.  I APPRECIATE THE EVIDENTIARY STANDARDS, I GUESS, MORE

20   OR LESS, AS A LAYPERSON WOULD; THAT THEY ARE CALLED UPON IN

21   ORDER TO BRING THESE CASES OR SEEK AN INDICTMENT.

22         AND THE GATEKEEPER ROLE THAT I GUESS WE'RE BEING

23   ASKED TO PLAY IS ONE THAT I'D HAVE A DIFFICULT TIME; IN ALL

24   HONESTY.  I'M PROBABLY SUGGESTING THAT THE U.S. ATTORNEY'S

25   CASE WOULD BE ONE THAT I WOULD BE WILLING TO STAND IN FRONT

COMPUTER-AIDED TRANSCRIPTION

39

1    OF; IN OTHER WORDS, PREVENT FROM GOING TO A JURY.

2         THE COURT:  IT SOMETIMES HAPPENS THAT AT THE TIME

3    THE CASE IS INITIALLY PRESENTED TO THE U.S. ATTORNEY'S OFFICE,

4    THINGS APPEAR DIFFERENTLY THAN 10 DAYS LATER, 20 DAYS LATER

5    WHEN IT'S PRESENTED TO A GRAND JURY.  THAT'S WHY THIS

6    GATEKEEPER ROLE IS VERY, VERY IMPORTANT.

7         YOU'RE NOT PART OF THE PROSECUTING ARM.  YOU'RE

8    INTENDED TO BE A BUFFER INDEPENDENT OF THE U.S. ATTORNEY'S

9    OFFICE.  AND THE REAL ROLE OF THE GRAND JURY IS TO MAKE SURE

10   THAT UNSUBSTANTIATED CHARGES DON'T GO FORWARD.

11        YOU'VE HEARD MY GENERAL COMMENTS.  YOU HAVE AN

12   APPRECIATION ABOUT HOW AN UNSUBSTANTIATED CHARGE COULD CAUSE

13   PROBLEMS FOR SOMEONE EVEN IF THEY'RE ULTIMATELY ACQUITTED.

14        YOU APPRECIATE THAT; RIGHT?

15        PROSPECTIVE JUROR:  I THINK I COULD APPRECIATE THAT,

16   YES.

17        THE COURT:  AND SO WE'RE -- LOOK, I'LL BE HONEST

18   WITH YOU.  THE GREAT MAJORITY OF THE CHARGES THAT THE GRAND

19   JURY PASSES ON THAT ARE PRESENTED BY THE U.S. ATTORNEY'S

20   OFFICE DO GO FORWARD.  MOST OF THE TIME, THE GRAND JURY PUTS

21   ITS SEAL OF APPROVAL ON THE INITIAL DECISION MADE BY THE U.S.

22   ATTORNEY.

23        OBVIOUSLY, I WOULD SCREEN SOMEBODY OUT WHO SAYS, "I

24   DON'T CARE ABOUT THE EVIDENCE.  I'M NOT GOING TO PAY ATTENTION

25   TO THE EVIDENCE.  IF THE U.S. ATTORNEY SAYS IT'S GOOD, I'M

COMPUTER-AIDED TRANSCRIPTION

40

1    GOING TO GO WITH THAT."  IT DIDN'T SOUND LIKE THAT'S WHAT YOU

2    WERE SAYING.  YOU WERE SAYING YOU GIVE A PRESUMPTION OF GOOD

3    FAITH TO THE U.S. ATTORNEY AND ASSUME, QUITE LOGICALLY, THAT

4    THEY'RE NOT ABOUT THE BUSINESS OF TRYING TO INDICT INNOCENT

5    PEOPLE OR PEOPLE THAT THEY BELIEVE TO BE INNOCENT OR THE

6    EVIDENCE DOESN'T SUBSTANTIATE THE CHARGES AGAINST.  THAT'S

7    WELL AND GOOD.

8         YOU MUST UNDERSTAND THAT AS A MEMBER OF THE GRAND

9    JURY, YOU'RE THE ULTIMATE ARBITER.  THEY DON'T HAVE THE

10   AUTHORITY TO HAVE A CASE GO FORWARD WITHOUT YOU AND FELLOW

11   GRAND JURORS' APPROVAL.  I WOULD WANT YOU NOT TO JUST

12   AUTOMATICALLY DEFER TO THEM OR SURRENDER THE FUNCTION AND

13   GIVER THE INDICTMENT DECISION TO THE U.S. ATTORNEY.  YOU HAVE

14   TO MAKE THAT INDEPENDENTLY.

15        YOU'RE WILLING TO DO THAT IF YOU'RE RETAINED HERE?

16        PROSPECTIVE JUROR:  I'M NOT A PERSON THAT THINKS OF

17   ANYBODY IN THE BACK OF A POLICE CAR AS NECESSARILY GUILTY, AND

18   I WOULD DO MY BEST TO GO AHEAD AND BE OBJECTIVE.  BUT AGAIN,

19   JUST IN THE NAME OF FULL DISCLOSURE, I FELT LIKE I SHOULD LET

20   YOU KNOW THAT I HAVE A VERY STRONG PRESUMPTION WITH RESPECT TO

21   ANY DEFENDANT THAT WOULD BE BROUGHT IN FRONT OF US.

22        THE COURT:  I UNDERSTAND WHAT YOU'RE SAYING.  LET ME

23   TELL YOU THE PROCESS WILL WORK MECHANICALLY.  THEY'RE GOING TO

24   CALL WITNESSES.  AND WHAT THEY'RE GOING TO ASK YOU TO DO IS

25   EVALUATE THE TESTIMONY YOU HEAR FROM WITNESSES.

COMPUTER-AIDED TRANSCRIPTION

41

1    BEFORE YOU REACH A POINT WHERE YOU VOTE ON ANY

2    INDICTMENT, THE U.S. ATTORNEY AND THE STENOGRAPHER LEAVE.  THE

3    ONLY PEOPLE LEFT WHEN THE VOTE IS TAKEN ARE THE GRAND JURORS

4    THEMSELVES.  THAT'S THE WAY THE PROCESS IS GOING TO WORK.

5    YOU'RE GOING TO HAVE TO SAY EITHER "WELL, IT HAS THE

6    RING OF TRUTH TO ME, AND I THINK IT HAPPENED THE WAY IT'S

7    BEING SUGGESTED HERE.  AT LEAST I'M CONVINCED ENOUGH TO LET

8    THE CASE GO FORWARD" OR "THINGS JUST DON'T HAPPEN LIKE THAT IN

9    MY EXPERIENCE, AND I THINK THIS SOUNDS CRAZY TO ME.  I WANT

10   EITHER MORE EVIDENCE OR I'M NOT CONVINCED BY WHAT'S BEEN

11   PRESENTED AND I'M NOT GOING TO LET IT GO FORWARD."

12   CAN YOU MAKE AN OBJECTIVE ON FACTS LIKE THE ONES

13   I'VE JUST DESCRIBED?

14   PROSPECTIVE JUROR:  I WOULD DO MY BEST TO DO THAT.

15   I CERTAINLY WOULD WANT ME SITTING ON A GRAND JURY IF I WERE A

16   DEFENDANT COMING BEFORE THIS GRAND JURY.  HAVING SAID THAT, I

17   WOULD DO MY BEST.  I HAVE TO ADMIT TO A STRONG BIAS IN FAVOR

18   OF THE U.S. ATTORNEY THAT I'M NOT SURE I COULD OVERCOME.

19   THE COURT:  ALL I'M TRYING TO GET AT IS WHETHER

20   YOU'RE GOING TO AUTOMATICALLY VOTE TO INDICT IRRESPECTIVE OF

21   THE FACTS.

22   A FEW YEARS AGO, I IMPANELED A FELLOW HERE THAT WAS

23   A SERGEANT ON THE SHERIFF'S DEPARTMENT.  AND YEARS AGO WHEN I

24   WAS A PROSECUTOR, I WORKED WITH HIM.  HE WAS ALL ABOUT

25   ARRESTING AND PROSECUTING PEOPLE.  BUT WHEN HE GOT HERE, HE

73

42

1    SAID, "LOOK, I UNDERSTAND THAT THIS IS A DIFFERENT FUNCTION.

2    I CAN PERFORM THAT FUNCTION." HE SERVED FAITHFULLY AND WELL

3    FOR A NUMBER OF -- OVER A YEAR, I THINK. 18 MONTHS, MAYBE.

4    HE EVENTUALLY GOT A PROMOTION, SO WE RELIEVED HIM FROM THE

5    GRAND JURY SERVICE.

6           BUT, YOU KNOW, HE TOOK OFF ONE HAT AND ONE UNIFORM

7    AND PUT ON A DIFFERENT HAT ON THE DAYS HE REPORTED TO THE

8    GRAND JURY. HE WAS A POLICEMAN. HE'D BEEN INVOLVED IN

9    PROSECUTING CASES. BUT HE UNDERSTOOD THAT THE FUNCTION HE WAS

10   PERFORMING HERE WAS DIFFERENT, THAT IT REQUIRED HIM TO

11   INDEPENDENTLY AND OBJECTIVELY ANALYZE CASES AND ASSURED ME

12   THAT HE COULD DO THAT, THAT HE WOULD NOT AUTOMATICALLY VOTE TO

13   INDICT JUST BECAUSE THE U.S. ATTORNEY SAID SO.

14          AGAIN, I DON'T WANT TO PUT WORDS IN YOUR MOUTH. BUT

15   I DON'T HEAR YOU SAYING THAT THAT'S THE EXTREME POSITION THAT

16   YOU HAVE. I HEAR YOU SAYING INSTEAD THAT COMMON SENSE AND

17   YOUR EXPERIENCE TELLS YOU THE U.S. ATTORNEY'S NOT GOING TO

18   WASTE TIME ON CASES THAT LACK MERIT. THE CONSCIENTIOUS PEOPLE

19   WHO WORK FOR THE U.S. ATTORNEY'S OFFICE AREN'T GOING TO TRY TO

20   TRUMP UP PHONY CHARGES AGAINST PEOPLE.

21          MY ANECDOTAL EXPERIENCE SUPPORTS THAT, TOO. THAT

22   DOESN'T MEAN THAT EVERY CASE THAT COMES IN FRONT OF ME I SAY,

23   "WELL, THE U.S. ATTORNEY'S ON THIS. THE PERSON MUST BE

24   GUILTY." I CAN'T DO THAT. I LOOK AT THE CASES STAND-ALONE,

25   INDEPENDENT, AND I EVALUATE THE FACTS. I DO WHAT I'M CHARGED

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 44 of 69

43

1  WITH DOING, WHICH IS MAKING A DECISION BASED ON THE EVIDENCE

2  THAT'S PRESENTED.

3          SO THAT'S THE QUESTION I HAVE FOR YOU.  I CAN

4  UNDERSTAND THE DEFERENCE TO THE U.S. ATTORNEY.  AND FRANKLY, I

5  AGREE WITH THE THINGS THAT YOU'RE SAYING.  THEY MAKE SENSE TO

6  ME.  BUT AT THE END OF THE DAY, YOUR OBLIGATION IS STILL TO

7  LOOK AT THESE CASES INDEPENDENTLY AND FORM AN INDEPENDENT

8  CONSCIENTIOUS BUSINESS-LIKE JUDGMENT ON THE TWO QUESTIONS THAT

9  I'VE MENTIONED EARLIER:  DO I HAVE A REASONABLE BELIEF THAT A

10 CRIME WAS COMMITTED?  DO I HAVE A REASONABLE BELIEF THAT THE

11 PERSON TO BE CHARGED COMMITTED IT OR HELPED COMMIT IT?

12          CAN YOU DO THAT?

13          PROSPECTIVE JUROR:  AGAIN, I WOULD DO MY BEST TO DO

14 THAT.  BUT I DO BRING A VERY, VERY STRONG BIAS.  I BELIEVE

15 THAT, FOR EXAMPLE, THE U.S. ATTORNEY WOULD HAVE OTHER FACTS

16 THAT WOULD RISE TO LEVEL THAT THEY'D BE ABLE TO PRESENT TO US

17 THAT WOULD BEAR ON THE TRIAL.  I WOULD LOOK AT THE CASE AND

18 PRESUME AND BELIEVE THAT THERE ARE OTHER FACTS OUT THERE THAT

19 AREN'T PRESENTED TO US THAT WOULD ALSO BEAR ON TAKING THE CASE

20 TO TRIAL.  I'D HAVE A VERY DIFFICULT TIME.

21          THE COURT:  YOU WOULDN'T BE ABLE TO DO THAT.  WE

22 WOULDN'T WANT YOU TO SPECULATE THAT THERE'S OTHER FACTS THAT

23 HAVEN'T BEEN PRESENTED TO YOU.  YOU HAVE TO MAKE A DECISION

24 BASED ON WHAT'S BEEN PRESENTED.

25          BUT LOOK, I CAN TELL YOU I IMAGINE THERE'S PEOPLE IN

COMPUTER-AIDED TRANSCRIPTION

Case 3:07-cr-00491-BTM    Document 18    Filed 07/30/2007    Page 45 of 69

44

1      THE U.S. ATTORNEY'S OFFICE THAT DISAGREE WITH ONE ANOTHER

2      ABOUT THE MERITORIOUSNESS OF A CASE OR WHETHER A CASE CAN BE

3      WON AT A JURY TRIAL.

4              IS THAT RIGHT, MR. ROBINSON?

5              MR. ROBINSON:  ON OCCASION, YOUR HONOR.  NOT VERY

6      OFTEN.

7              THE COURT:  IT COMES UP EVEN IN AN OFFICE WITH

8      PEOPLE CHARGED WITH THE SAME FUNCTION.  I DON'T WANT TO BEAT

9      YOU UP ON THIS, ██████████.  I'M EQUALLY CONCERNED WITH

10     SOMEBODY WHO WOULD SAY, "I'M GOING TO AUTOMATICALLY DROP THE

11     TRAP DOOR ON ANYBODY THE U.S ATTORNEY ASKS."  I WOULDN'T WANT

12     YOU TO DO THAT.  IF YOU THINK THERE'S A POSSIBILITY YOU'LL DO

13     THAT, THEN I'D BE INCLINED TO EXCUSE YOU.

14             PROSPECTIVE JUROR:  I THINK THAT THERE'S A

15     POSSIBILITY I WOULD BE INCLINED TO DO THAT.

16             THE COURT:  I'M GOING TO EXCUSE YOU, THEN.  THANK

17     YOU.  I APPRECIATE YOUR ANSWERS.

18             LADIES AND GENTLEMEN, IF YOU'LL GIVE ME JUST A SHORT

19     PAUSE.  I'M GOING TO RECESS THIS PROCEEDING.  I HAVE A JURY

20     TRIAL OUT.  THE JURY HAS SENT A QUESTION.  I'M GOING TO

21     DISCUSS HOW TO ANSWER THE QUESTION WITH COUNSEL.  YOU'RE ALL

22     WELCOME TO STAY AND LISTEN TO THIS.  WE'LL BE IN RECESS

23     MOMENTARILY.

24                          --oOo--

25             THE COURT:  NOW BACK TO THE GRAND JURY IMPANELMENT.

COMPUTER-AIDED TRANSCRIPTION

45

1              AND WE WERE ABOUT TO CALL A REPLACEMENT FOR

2

3           THE CLERK:

4           THE COURT:  GOOD MORNING,

5         PROSPECTIVE JUROR:  GOOD MORNING.  MY NAME IS

6                I LIVE IN

7    I'M RETIRED.  MARRIED FOR        YEARS.

8             THE COURT:  GOOD FOR YOU.  YOU KNOW WHAT THEY SAY

9    ABOUT THAT.  THE REASON THAT COUPLES CAN STICK TOGETHER THAT

10   LONG, ALL THOSE YEARS YOU'VE BOTH BEEN IN LOVE WITH THE SAME

11   MAN.

12             PROSPECTIVE JUROR:  MY HUSBAND

13

14           THE COURT:

15           PROSPECTIVE JUROR:  AND HE'S BEEN

16

17           THE COURT:  HE'S AN ALUMNUS OF THE

18        HE WENT TO

19           PROSPECTIVE JUROR:  I WENT TO           COLLEGE.

20           THE COURT:  I'M A GRADUATE OF PT. LOMA COLLEGE.

21   PROBABLY A LITTLE BEFORE YOU.

22           PROSPECTIVE JUROR:  I DON'T THINK SO.

23         I HAVE        ADULT CHILDREN.  MY           WORKS FOR

24                      SHE'S IN

25     .  ONE        WORKS WITH            AND I HAVE A      WHO

46

1    WORKS FOR ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2              THE COURT:  IS HE AN ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3              PROSPECTIVE JUROR:  ▮▮▮▮▮▮▮▮▮▮▮    HE WORKS FOR THE

4    ▮▮▮▮▮▮▮▮▮▮▮▮

5              I'VE BEEN ON TWO TRIALS:  ONE WAS A MUNICIPAL COURT

6    TRIAL.  IT WASN'T CRIMINAL.  MONEY WAS INVOLVED.  AND THE

7    OTHER ONE WAS A CRIMINAL.  AND THE FIRST ONE WAS IN THE '80'S

8    SOMETIME.  THE LAST ONE WAS PROBABLY TEN YEARS AGO.  AND YES,

9    I CAN BE FAIR.

10             THE COURT:  HOW'S THE ▮▮▮▮▮▮▮▮ GOING.

11             PROSPECTIVE JUROR:  VERY WELL.

12             THE COURT:  WHEN I WAS STILL A COLLEGE STUDENT, WE

13   HAD EMBARKED UPON A SPEAKERS PROGRAM.  I GOT TOGETHER WITH

14   ▮▮▮▮▮▮▮▮▮▮ AT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AND WE MADE AN ARRANGEMENT

15   WHERE THE SPEAKERS WOULD COME.  AND THESE WERE ▮▮▮▮▮▮▮▮▮▮

16   THE ▮▮▮▮▮▮▮▮ DRAWS IN PEOPLE OF STATURE THAT HAVE SOMETHING

17   IMPORTANT TO SAY.

18             WE USED TO HAVE THEM STAY AT THE ▮▮▮▮▮▮▮▮▮ AND THE

19   ▮▮▮▮▮▮▮ SAID THAT "IF THEY'LL POSE FOR A PICTURE HERE AT THE

20   ▮▮▮▮▮▮ THEN ALL THE ACCOMMODATIONS ARE ON US," WHICH WAS A

21   GREAT ACCOMMODATION FOR OUR LITTLE TINY SPEAKERS PROGRAM.  BUT

22   THEY WOULD SPEAK AT THE COLLEGE THE NIGHT BEFORE BACK IN 1976,

23   AND THEN THEY'D GO TO ▮▮▮▮▮▮▮ THE NEXT DAY.

24             SO I HAVE FOND MEMORIES OF THAT.  PLEASE GIVE ▮▮▮

25   ▮▮▮▮▮▮▮ MY REGARDS.

COMPUTER-AIDED TRANSCRIPTION

47

1      PROSPECTIVE JUROR:  I WILL.

2      THE COURT:  █████████████

3      PROSPECTIVE JUROR:  I'M ██████████  I LIVE IN

4    ████████████  ████EARS IN THE NAVY AS A NAVAL AVIATOR.

5    28 YEARS IN INDUSTRY, IN R&D, DEFENSE INDUSTRY.  I'M MARRIED.

6    MY WIFE IS ████████  SHE DID ████████████  ████ADULT

7    CHILDREN, ALL OVER 40:  ████OF THEM PRODUCED CHILDREN FOR A

8    LIVING, I THINK.  MY DAUGHTER IS ██ IN ████████  I HAVE A ███

9    UP IN THE BAY AREA WHO'S IN ██████████AND ONE ████████

10   ████ IN ████WHO DOES ████████████FOR ████████

11   ████████  ONE'S A ██████████  WHO ████████AT

12   ████████AND ████████████THE ████████████████I

13   HAVE BEEN SELECTED AND BOUNCED OFF A NUMBER OF FEDERAL AND

14   STATE JURIES, BUT I DID SERVE ON ONE CIVIL CASE IN THE

15   SUPERIOR COURT.  I UNDERSTAND THE DISTINCTION BETWEEN THAT

16   WORK AND THE GRAND JURY.

17      THE COURT:  THE BASIS FOR BOUNCING YOU, WERE YOU PRO

18   PROSECUTION OR PRO DEFENSE?

19      PROSPECTIVE JUROR:  I THINK HALF THE TIME IT WAS

20   JUST THE MILITARY EXPERIENCE.  THE STORY IS IN COURT MARTIAL,

21   IF IT WEREN'T TRUE, THEY WOULDN'T HAVE CHARGED THEM TYPE OF

22   THING.

23      THE COURT:  YOU HEARD ████████ HE ADHERED TO THAT

24   KIND OF BELIEF IN THIS CIVILIAN PROCEEDING.

25      YOU'RE NOT OF THAT FRAME OF MIND?

48

1          PROSPECTIVE JUROR:  NO.

2          THE COURT:  IT'S UNFAIR TO ASK YOU WHY YOU WERE

3    BOUNCED.  I'D HAVE TO ASK THE LAWYERS.  WHEN WE PICK TRIAL

4    JURIES A LOT OF TIME, SOME PEOPLE -- I TALK TO PEOPLE LIKE MY

5    NEIGHBORS AND ALL.  THEY SAY, "THEY BOUNCED ME OFF."  THEY'RE

6    UPSET ABOUT IT.  AND I TRY TO ASSUAGE THEM BY SAYING, "LOOK,

7    LET ME TELL YOU SOMETHING."  AND THIS IS IN A TRIAL JURY

8    CONTEXT.  "IT REALLY SAYS MORE ABOUT THE LAWYER THAN IT DOES

9    ABOUT YOU.  BECAUSE LAWYERS HAVE THESE IDEAS OF WHO THEY WANT

10   ON A JURY OR WHAT THE COMPOSITION OF THE JURY OUGHT TO BE."

11          EVA'S HEARD ME TELL THIS STORY BEFORE.  WHEN I WAS A

12   YOUNG LAWYER TRYING CASES JUST STARTING OUT, MY RULE OF THUMB

13   AS TO THE TEN CHALLENGES I HAD WAS NO ONE YOUNGER THAN I AM.

14   IF THEY'RE YOUNGER THAN I AM, THEY HAVEN'T HAD TO MAKE HARD

15   DECISIONS.  THEY DON'T HAVE A SUFFICIENT STAKE IN THE

16   COMMUNITY.  I COULD RATTLE OFF THREE OR FOUR JUSTIFICATIONS

17   FOR IT.

18          THE TRUTH OF THE MATTER IS I PROBABLY BOUNCED A LOT

19   OF PEOPLE THAT WOULD HAVE BEEN FINE.  IT REALLY ILLUSTRATES

20   THE POINT THAT IT SAYS MORE ABOUT THE LAWYER THAN IT SAYS

21   ABOUT THE PERSON BEING BOUNCED.

22          THANK YOU, ▓▓▓▓▓▓▓  I APPRECIATE YOUR ANSWERS.

23   ▓▓▓▓▓▓▓▓▓▓▓▓

24          PROSPECTIVE JUROR:  MY NAME IS ▓▓▓▓▓▓▓  I

25   LIVE IN ▓▓▓▓▓▓▓▓▓▓I'M A PRODUCTION SCHEDULER.  I'M

COMPUTER-AIDED TRANSCRIPTION

49

1    MARRIED.  MY WIFE ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I HAVE ▓▓▓

2    BOYS FROM ▓ TO ▓.

3          THE COURT:  YOU POOR SOUL.

4          PROSPECTIVE JUROR:  I HAVE NO TRIAL EXPERIENCE, AND

5    I COULD BE FAIR.

6          THE COURT:  MY GOODNESS.

7          WHAT'S THE AGE SPAN BETWEEN YOUR BOYS?

8          PROSPECTIVE JUROR:  FROM ▓ TO ▓ — THEY KEEP ME VERY

9    BUSY.

10         THE COURT:  I RAISED TWO THAT WERE TWO YEARS APART,

11   AND THAT KEPT ME RUNNING ALL THE TIME.

12         YOU HAVE ▓▓▓▓ HUH?

13         PROSPECTIVE JUROR:  WE TRIED FOR A GIRL, AND IT

14   NEVER WORKED.

15         THE COURT:  DO YOU HAVE BROTHERS AND SISTERS?

16         PROSPECTIVE JUROR:  I HAVE ANOTHER BROTHER AND TWO

17   SISTERS.

18         THE COURT:  HIGH INCIDENCE OF BOYS IN YOUR FAMILY?

19         PROSPECTIVE JUROR:  VERY MUCH.

20         THE COURT:  DID YOUR MOTHER HAVE A LOT OF BOYS, TOO?

21         PROSPECTIVE JUROR:  MY SISTER HAS ▓▓▓▓▓▓ BUT MY

22   COUSINS, IT'S LIKE ▓ BOYS AND ▓ GIRLS.

23         THE COURT:  IT MUST BE SOMETHING IN ONE'S GENETIC

24   CODE.  WE HAVE TO ASK THE DOCTOR, THE GENETICIST, ABOUT IT.

25   MY FAMILY TREE RUNS THE SAME WAY, ALMOST ALL BOYS.  ALL OF US

COMPUTER-AIDED TRANSCRIPTION



50

1    KNOCK OUT BOYS.  I DIDN'T KEEP GOING.

2            PROSPECTIVE JUROR:  I'M DONE.

3            THE COURT:  THANK YOU, ▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5            PROSPECTIVE JUROR:  MY NAME IS ▮▮▮▮▮▮▮▮  I LIVE

6    IN ▮▮▮▮▮▮▮▮▮▮  I'M A REGISTERED NURSE.  I'M MARRIED.

7    WE HAVE ▮▮▮ ADULT CHILDREN.  MY HUSBAND WORKS FOR ▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮ HE'S A ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮  ONE ▮▮▮ IS A ▮▮▮▮▮▮▮▮▮ WHO WORKS

10   FOR ▮▮▮▮  A ▮▮▮▮▮ IS ▮▮▮▮▮▮▮▮▮  AND ANOTHER ▮▮▮ IS

11   AN ▮▮▮▮▮▮▮▮▮▮▮▮▮      AND ONE ▮▮▮▮▮▮▮▮ IS A ▮▮▮▮▮▮

12   ▮▮▮▮▮▮▮▮▮▮  I HAVE NO EXPERIENCE AS A JUROR.  AND I THINK I

13   CAN BE FAIR.

14           THE COURT:  ▮▮▮▮▮▮▮▮▮▮  YOU'RE GOING TO HEAR CASES,

15   I'M SURE, INVOLVING AGENTS ▮▮▮▮▮▮▮▮

16           YOU SAID YOUR OTHER SON IS A ▮▮▮▮▮▮▮▮

17           PROSPECTIVE JUROR:  HE'S AN ▮▮▮▮▮▮▮▮▮▮

18           THE COURT:  ONE'S AN ▮▮▮▮▮▮▮▮▮  AND THE OTHER

19   IS.

20           PROSPECTIVE JUROR:  A ▮▮▮▮▮▮▮▮▮▮

21           THE COURT:  I THOUGHT YOU HAD TWO ▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮

23           JUST ONE?

24           PROSPECTIVE JUROR:  MY HUSBAND WORKS FOR ▮▮▮▮▮ ND

25   ▮▮▮▮▮▮▮▮▮▮

COMPUTER-AIDED TRANSCRIPTION

1          THE COURT:  YOU'RE GOING TO BE HEARING CASES FROM

2    ████ AND ████████████████

3          CAN YOU BE OBJECTIVE ABOUT THOSE CASES?  CAN YOU

4    LISTEN TO THE FACTS AND MAKE A STAND-ALONE DECISION ON EACH

5    CASE WITHOUT INSTINCTIVELY SAYING, "WELL, THEY WORK FOR THE

6    ████████ AS MY SON OR MY HUSBAND."

7          PROSPECTIVE JUROR:  I THINK I CAN BE FAIR.

8          THE COURT:  THAT WOULD BE YOUR OBLIGATION.  YOU'RE

9    NOT AUTOMATICALLY DISQUALIFIED.  AS YOU HEARD ME SAY, WE HAD A

10   SERGEANT ON THE SHERIFF'S DEPARTMENT THAT WAS SERVING ON ONE

11   OF OUR GRAND JURIES.  SO IT'S NOT AUTOMATICALLY DISQUALIFYING.

12   BUT YOU HAVE TO BE ABLE TO ASSURE ME THAT "I'LL LOOK AT THESE

13   CASES INDEPENDENTLY.  I UNDERSTAND THE IMPORTANCE OF ACTING AS

14   A BUFFER BETWEEN THE GOVERNMENT'S POWER TO CHARGE SOMEONE WITH

15   A CRIME AND THEN BRINGING THEM TO TRIAL.  AND I'LL FULFILL

16   THAT FUNCTION CONSCIENTIOUSLY."

17         YOU CAN DO THAT?

18         PROSPECTIVE JUROR:  I CAN DO THAT.

19         THE COURT:  THANK YOU.

20   ████████████

21         PROSPECTIVE JUROR:  MY NAME IS ████████████  I LIVE

22   IN ████████████████████  I'M A TRAFFIC ENGINEER WITH THE

23   CITY OF ████████████

24         THE COURT:  MAYBE YOU CAN GET THOSE TELEPHONE POLES

25   DOWN.  I HAVE A BIG POLE RIGHT ON THE LEFT SIDE.  I JUST READ

COMPUTER-AIDED TRANSCRIPTION

1    IN THE PAPER THAT WE'RE GOING TO PAY MORE FOR OUR TELEPHONE

2    BILLS SO THAT THEY CAN TAKE ALL THESE POLES DOWN, AND I

3    EXPECTED TO HEAR THAT CHAINSAWS THE NEXT MORNING.  YOU CAN BET

4    WHEN THE NEXT BILL COMES, I'M GOING TO HAVE THE ASSESSMENT.

5        YOU DON'T KNOW ANYTHING ABOUT THAT?

6        PROSPECTIVE JUROR:  THE PEOPLE IN THE UTILITIES

7    PROGRAM KNOW.

8        I'M NOT MARRIED.  I DON'T HAVE ANY CHILDREN.  I WAS

9    JUST ON A CRIMINAL CASE IN THE SUPERIOR COURT JUST LAST MONTH.

10   SO I'M GETTING HIT AGAIN HERE.  AND I UNDERSTAND THE

11   DIFFERENCE BETWEEN TRIAL AND --

12       THE COURT:  I WAS GOING TO SAY, YOU MUST BE

13   REPORTING EARLY AND OFTEN IF YOU'VE BEEN CALLED FOR BOTH STATE

14   AND FEDERAL SERVICE AT THE SAME TIME.

15       PROSPECTIVE JUROR:  I CAN BE FAIR.

16       THE COURT:  THANK YOU, ███████████

17   ██████████████████

18       PROSPECTIVE JUROR:  MY NAME IS ███████████  I LIVE

19   IN ███████████  I'M AN INVESTIGATOR AND HOUSING COORDINATOR

20   FOR THE ████████████████████████████████  I'M

21   MARRIED FOR 12 YEARS.  MY HUSBAND IS ████████████████  WE

22   DON'T HAVE CHILDREN BY CHOICE.  I DON'T HAVE ANY EXPERIENCE IN

23   THE COURT SYSTEM.  I CAN BE FAIR.  IT WOULD BE AN HONOR,

24   SIR.

25       THE COURT:  THANK YOU.  I APPRECIATE YOUR ANSWERS.

COMPUTER-AIDED TRANSCRIPTION

53

1    ▬▬▬▬▬▬▬▬

2        PROSPECTIVE JUROR:  MY NAME IS ▬▬▬▬▬▬  I

3    LIVE IN ▬▬▬▬▬ I'M A CHILDCARE WORKER/MENTAL HEALTH

4    WORKER WORKING WITH ABUSED -- PHYSICALLY AND SEXUALLY ABUSED

5    CHILDREN.  I'M NOT MARRIED.  I DON'T HAVE ANY KIDS.  I DON'T

6    HAVE ANY EXPERIENCE AS A TRIAL JUROR.  YES, I CAN BE FAIR.

7        THE COURT:  THANK YOU, ▬▬▬▬▬▬

8    ▬▬▬▬▬▬

9        PROSPECTIVE JUROR:  MY NAME IS ▬▬▬▬  I LIVE IN

10   ▬▬▬▬▬ CALIFORNIA.  THAT'S ▬▬▬▬▬▬

11       THE COURT:  WELCOME.

12       PROSPECTIVE JUROR:  I'M AN AIRCRAFT MECHANIC FOR

13   ▬▬▬▬▬▬▬ I'M MARRIED.  MY WIFE IS A

14   ▬▬▬▬▬▬▬

15       THE COURT:  DO YOU HAVE ANY LAW ENFORCEMENT FUNCTION

16   AT ALL?

17       PROSPECTIVE JUROR:  I'M ▬▬▬▬

18   I HAVE TWO ADULT BOYS.  AND I HAVE NO EXPERIENCE IN

19   FEDERAL COURT.  AND I CAN BE FAIR.

20       THE COURT:  YOU CAN EVALUATE THESE CASES

21   INDEPENDENTLY?  YOU'RE ACTING AS A CITIZEN AND NOT SO MUCH AS

22   A ▬▬▬▬▬▬▬▬ DO YOU UNDERSTAND THAT?

23       PROSPECTIVE JUROR:  YES.

24       THE COURT:  ▬▬▬▬▬ IS THE ▬▬▬▬▬▬

25   CALIFORNIA?

COMPUTER-AIDED TRANSCRIPTION

54

1        PROSPECTIVE JUROR:  THAT'S ABOUT IT.

2        THE COURT:  MY SON JUST WENT OVER TO THE ▐▐▐▐▐▐▐▐

3  ▐▐▐▐▐▐▐▐▐▐ ▐▐ ▐▐▐   WE DROVE HIM IN THE SUMMER.  I WANTED

4  TO GET OVER THERE QUICKLY.  SOMEBODY WARNED ME AFTERWARDS THAT

5  THEY'RE A VERY AGGRESSIVE ▐▐▐▐▐▐ HIGHWAY PATROL.

6        PROSPECTIVE JUROR:  THEY'RE OUT THERE.

7        THE COURT:  CAN I USE YOUR NAME IN CASE I GET

8  STOPPED?

9        THANK YOU, ▐▐▐▐▐▐▐▐

10  ▐▐▐▐▐▐▐▐▐▐

11        PROSPECTIVE JUROR:  MY NAME IS ▐▐▐▐▐▐▐▐ I LIVE

12  IN ▐▐▐▐▐▐▐▐   I DO CONVENTION SERVICES AT THE ▐▐▐ IN

13  ▐▐▐▐▐▐ I'M NOT MARRIED.  I HAVE NO KIDS.  I DON'T HAVE ANY

14  EXPERIENCE AS A TRIAL JUROR.  AND I COULD BE FAIR.

15        THE COURT:  THANK YOU.  WE'RE GLAD TO HAVE YOU.

16  ▐▐▐▐▐▐▐▐

17        PROSPECTIVE JUROR:  MY NAME IS ▐▐▐▐▐▐    I LIVE IN

18  ▐▐▐▐▐▐ MY WIFE AND I ARE BOTH RETIRED.  WE HAVE ▐▐▐▐

19  ADULT CHILDREN.

20        THE COURT:  WHAT WAS YOUR WORK BEFORE YOU RETIRED?

21        PROSPECTIVE JUROR:  I WAS ▐▐ YEARS AN EDUCATOR.

22        AND WE HAVE NINE GRANDCHILDREN.  OUR IMMEDIATE ADULT

23  CHILDREN, ONE IS A SUCCESSFUL ▐▐▐▐▐▐▐▐▐▐ ONE IS A

24  SUCCESSFUL ▐▐▐▐▐  MY ▐▐▐▐▐▐▐▐▐▐▐ OF

25  ▐▐▐▐▐▐▐▐ IN ▐▐▐▐▐ AND PART OF ▐▐▐▐▐ AND

COMPUTER-AIDED TRANSCRIPTION

1    UNFORTUNATELY, MY OTHER SON HAS ███████████        HE HAS BEEN

2    ██████████████ FOR SEVERAL YEARS.  I'VE HAD EXPERIENCE ON ONE

3    TRIAL.  IT WAS A CRIMINAL CASE AT THE VISTA COURTHOUSE.  AND I

4    CERTAINLY CAN BE FAIR.

5            THE COURT:  THANK YOU.

6        ██████████████ GOOD AFTERNOON.

7        PROSPECTIVE JUROR:  MY NAME IS █████████████ I LIVE IN

8    ████████████ I'M MARRIED.  I HAVE ██████████ CHILDREN.  ONE IS A

9    ████████████ MY WIFE IS A S████████████████ IN ████████████

10   ████████████████████████████ MY SON IS A ████████ AT ██████████

11   ████████████ I'M A CONTRACT OFFICER FOR THE NAVY WORKING AT THE

12   ████████████████████ AT ███████████████   AND I'VE BEEN CALLED

13   THREE TIMES.  I'VE NEVER BEEN IMPANELED ON A JURY.  I'VE

14   STATED MY PRO POLICE VIEWS.

15           THE COURT:  YOU CAN SERVE IN THIS FUNCTION AS A

16   GRAND JUROR OBJECTIVELY, LOOK AT THE EVIDENCE, AND ANSWER THE

17   QUESTIONS THAT I'VE REPEATED NOW SEVERAL TIMES:  DO I HAVE A

18   REASONABLE BELIEF THAT A CRIME WAS COMMITTED?  DO I HAVE A

19   REASONABLE BELIEF THAT THE PERSON THEY WANT ME TO INDICT

20   EITHER COMMITTED THE CRIME OR ASSISTED WITH IT?

21           PROSPECTIVE JUROR:  YES, SIR.

22           THE COURT:  THANK YOU, █████████████

23        ██████████████████

24           PROSPECTIVE JUROR:  ██████████████.  I LIVE IN ██████████

25   ██████████████████████

56

```
 1          THE COURT:  HOW IS THAT?

 2          PROSPECTIVE JUROR:  I LOVE BEING ██████    I WOULD

 3   HAVE WALKED TODAY, EXCEPT I THINK IT'S GOING TO RAIN.

 4          I'M A CPA.  I'M MARRIED.  NO CHILDREN.  AND I HAVE

 5   NEVER SERVED ON A JURY.  AND I CAN BE FAIR.

 6          THE COURT:  THANK YOU ████████

 7   ██████████████

 8          PROSPECTIVE JUROR:  ██████████████  I LIVE IN

 9   ████████████  I DO NOT WORK.  I'VE BEEN MARRIED FOR

10   ████ YEARS.  MY HUSBAND IS RETIRED FROM THE ████████████

11   BUT NOW IS A ████████████████████████████████

12   ████████████

13          THE COURT:  WHAT WAS HIS JOB WITH THE ██████████

14   ████████

15          PROSPECTIVE JUROR:  HE WAS A ████████████████

16   ████████  BUT ALWAYS WORKED IN ████████████████

17   ████████████████  ████████████████

18          THE COURT:  WHAT DOES HE DO NOW AS A ████████ WITH

19   THE ████████

20          PROSPECTIVE JUROR:  HE'S A ████████ EMPLOYEE.  HE

21   WORKS IN ████████████   AND THEN, FOR EXAMPLE, ████ HE'LL

22   BE WORKING ████████ AT THE ████████████

23          THE COURT:  LET'S HOPE THEY WIN THAT GAME.

24          PROSPECTIVE JUROR:  YES.

25          THE COURT:  I'M A LITTLE WORRIED ABOUT IT.  I WAS
```

COMPUTER-AIDED TRANSCRIPTION

88

57

1   TORN WITH THE KANSAS CITY CHIEFS.  I WAS HOPING -- I THOUGHT

2   THEY WOULD BE THE EASIER TEAM FOR THE CHARGERS TO BEAT.

3           PROSPECTIVE JUROR:  WE HAVE ████ ADULT ██████ AND

4   ████ GRANDCHILDREN.  OUR ████████ IS A ████ AND ██████

5   ██████ FOR ████████████████████████████████████████████

6   ██████.  OUR Y████████████ IS A ██████████████ FOR

7   ████████ COMPANY IN ████████████████  I'VE BEEN CALLED, BUT NEVER

8   SERVED ON A JURY.  YES, I COULD BE FAIR.

9           THE COURT:  YOU SAY THAT MINDFUL OF EVERYTHING YOU

10  LEARNED ON THE TAPE AND ALL THE QUESTIONS AND ANSWERS THAT

11  HAVE BEEN GIVEN SO FAR?

12          PROSPECTIVE JUROR:  YES.

13          THE COURT:  ████████████

14          PROSPECTIVE JUROR:  MY NAME IS ████████████  I LIVE

15  IN THE ████████████████████  I'M UNEMPLOYED AT THE CURRENT

16  TIME.  I'M A HOUSEWIFE.  I WAS A BOOKKEEPER FOR SEVERAL YEARS.

17  I'VE BEEN MARRIED FOR 19.  MY SPOUSE IS A ██████████████████

18  ████████████  WE HAVE ████ ADULT ██████, BOTH WHO LIVE IN ██████

19  ONE WORKS IN ████████  THE OTHER ████████████████████  I

20  THINK I WAS CALLED FOR TRIAL JURY OVER AT SUPERIOR COURT ABOUT

21  15 YEARS AGO, BUT I DON'T REMEMBER -- I DON'T THINK I WAS

22  IMPANELED, AT LEAST NOT THAT I REMEMBER.  I LIKE THINGS TO

23  BALANCE OUT.  I LIKE TO FIND HOW THINGS WORK.  THAT'S WHY I

24  ENJOY WORKING WITH NUMBERS.  I GREW UP ABOUT 20 MINUTES AWAY

25  FROM GILLETTE STADIUM.

COMPUTER-AIDED TRANSCRIPTION

1          THE COURT:  YOU'RE WORRIED, TOO.

2

3          PROSPECTIVE JUROR:  MY NAME IS ▮▮▮▮▮▮▮▮  I LIVE

4     IN ▮▮▮▮▮▮▮▮▮▮▮ NOW.  I JUST MOVED DOWN THERE FROM

5     ▮▮▮▮▮▮▮▮▮  I WORK FROM HOME AS A MORTGAGE BROKER, AND I'VE

6     DONE THAT FOR ▮▮▮ YEARS.  NO KIDS.  NEVER BEEN MARRIED.  I HAVE

7     BEEN CALLED FOR JURY DUTY, BUT NEVER PULLED UP FROM MAIN

8     SELECTION.  AND YES, I CAN BE FAIR.

9          THE COURT:  THANK YOU.

10

11         PROSPECTIVE JUROR:  ▮▮▮▮▮▮▮▮▮▮▮  I LIVE IN

12     ▮▮▮▮▮▮▮  I DON'T WORK.  I'M MARRIED.  MY HUSBAND WORKS FOR

13     ▮▮▮▮▮▮▮▮▮▮▮  I HAVE ▮▮▮ KIDS.  NO EXPERIENCE.  AND

14     I CAN BE FAIR.

15         THE COURT:  WHAT DOES HE DO FOR THE ▮▮▮▮▮

16         PROSPECTIVE JUROR:  HE'S ▮▮▮▮▮▮▮▮▮.

17         THE COURT:  WAS HE A ▮▮▮▮▮▮

18         PROSPECTIVE JUROR:  NO.  HE ▮▮▮▮▮ ▮▮▮▮▮S.

19     HE'S ▮▮▮▮▮ FOR A MILLION YEARS.  HE TRAVELS.  WE LIVE ▮▮▮

20     AND HE JUST TRAVELS.

21         THE COURT:  WHERE DO THEY DO ▮▮▮▮▮▮▮▮▮▮

22         PROSPECTIVE JUROR:  ▮▮▮▮▮▮

23         THE COURT:  YOU JOIN HIM SOMETIMES FOR ▮▮▮▮▮▮

24     ▮▮▮▮▮▮▮

25         PROSPECTIVE JUROR:  YES.

59

1          THE COURT:  THANK YOU.

2          ██████████████

3          PROSPECTIVE JUROR:  MY NAME IS ███████████████

4   I LIVE ████████████ I WORK AT A CHILDREN'S BOOK STORE IN

5   ████████ I'M MARRIED.  MY HUSBAND WORKS ██████████ MY ████

6   ADULT CHILDREN, MY OLDEST ██████ GRADUATED FROM ██████████████ AS

7   A ████████ HE'S A ██████████████████████████

8   ██████████████  MY SECOND ████ GRADUATED FROM ████████ HE'S

9   AN ████████████████ I'VE BEEN CALLED TO JURY DUTY, BUT

10  NEVER IMPANELED.  I CAN BE FAIR.

11         THE COURT:  LET ME TEST MY MEMORY WITH YOU.

12         "WHERE THE WILD THINGS ARE."

13         PROSPECTIVE JUROR:  ██████████████████

14         THE COURT:  IS THAT BOOK STILL VERY POPULAR?

15         PROSPECTIVE JUROR:  VERY.  I CAN'T KEEP IT ON THE

16  SHELF.  THAT'S WHAT EVERYBODY WANTS FOR A BABY GIFT.

17         THE COURT:  ██████████████ DO YOU USE THAT BOOK WITH

18  YOUR BOYS?

19         PROSPECTIVE JUROR:  YES.

20         THE COURT:  THANK YOU.

21         ██████████████

22         PROSPECTIVE JUROR:  MY NAME IS ██████████ I LIVE

23  IN ████████████████████ I'M A TEACHER AND A COACH

24  FOR ADOLESCENT KIDS; HEALTH, P.E., LA CROSSE.  I'M MARRIED.

25  MY SPOUSE IS ████████████████████.  HE'S GONE BACK TO

COMPUTER-AIDED TRANSCRIPTION

60

1   SCHOOL.  HE TINKERS IN THE ████████ I DON'T HAVE ADULT

2   CHILDREN.  I HAVE HAD EXPERIENCE IN CRIMINAL AND CIVIL CASES.

3        THE COURT:  HOW MUCH EXPERIENCE?  YOU'VE SAT ON BOTH

4   CRIMINAL AND CIVIL JURIES?

5        PROSPECTIVE JUROR:  YES, SIR.

6        THE COURT:  WHEN WAS YOUR MOST RECENT JURY

7   EXPERIENCE?

8        PROSPECTIVE JUROR:  APPROXIMATELY FIVE YEARS AGO, A

9   CIVIL CASE.

10        THE COURT:  LET ME PUT TO YOU THE QUESTION THAT I

11   PUT TO MANY WHO'VE HAD BOTH TYPES OF JURY EXPERIENCE.

12        YOU UNDERSTAND THE DISTINCTION HERE THAT THIS GRAND

13   JURY WOULD PERFORM A DIFFERENT FUNCTION FROM THE ONE --

14        PROSPECTIVE JUROR:  I UNDERSTAND THAT.

15        THE COURT:  AND ████████ I WANT TO MAKE SURE I GOT

16   YOUR LAST ANSWER.

17        YOU CAN BE FAIR?

18        PROSPECTIVE JUROR:  I CAN BE FAIR.

19        THE COURT:  THANK YOU.

20   ████████

21        PROSPECTIVE JUROR:  MY NAME IS ████████ I LIVE

22   IN ████████ I'M A CATHOLIC DEACON AT A CHURCH ████████

23   ████████ AND I'M ALSO PRESIDENT OF A COMPANY IN ████████ THAT

24   MAKES ████████ FOR ████████ I'VE BEEN MARRIED FOR

25   ████████ YEARS.  MY WIFE IS A ████████ SHE ████████

COMPUTER-AIDED TRANSCRIPTION

61

1   WORK.  I HAVE ████ ADULT CHILDREN AND TWO GRANDCHILDREN.  MY

2   ████████ IS A ████████████ FOR ███████ THE ████████ MY

3   ████ DOES ██████████████ ON ██████████ AT ██████████ AT

4   █████████ AND HE'S PRESENTLY ████████████ AS WE DISCUSSED.

5   TEN YEARS AGO, I WAS A JUROR ON A CIVIL CASE.  AND I HAVE TO

6   SAY I'M SOFT ON IMMIGRATION BECAUSE I'VE DONE VOLUNTEER WORK

7   WITH IMMIGRANTS IN THE FIELD.  BUT I DO NOT THINK THAT WOULD

8   STAND IN MY WAY OF MAKING FAIR AND OBJECTIVE DECISIONS.

9            THE COURT:  AS YOU HEARD ME EXPLAIN EARLIER TO ONE

10  OF THE PROSPECTIVE GRAND JURORS, WE'RE NOT ABOUT TRYING TO

11  CHANGE PEOPLE'S PHILOSOPHIES OR ATTITUDES HERE.  THAT'S NOT MY

12  BUSINESS.  BUT WHAT I HAVE TO INSIST ON IS THAT YOU FOLLOW THE

13  LAW THAT'S GIVEN TO US BY UNITED STATES CONGRESS.  WE ENFORCE

14  THE FEDERAL LAWS HERE.

15           I THINK I CONFESSED ALOUD THAT THERE'S SOME OF THE

16  LAWS THAT I DISAGREE WITH THAT I HAVE TO ENFORCE.  SO IT'S NOT

17  ABOUT ME OR MY PHILOSOPHIES.  IT'S ABOUT PERFORMING A

18  CONSCIENTIOUS FUNCTION HERE AND SEEING IF THE FACTS SUPPORT AN

19  OUTCOME ONE WAY OR THE OTHER.

20           CAN YOU DO THAT?

21           PROSPECTIVE JUROR:  I DON'T THINK I WOULD HAVE ANY

22  PROBLEM.

23           THE COURT:  THANK YOU.

24  ████████████████████

25           PROSPECTIVE JUROR:  MY NAME IS ██████████████ I

62

1    LIVE IN ▓▓▓▓▓▓ I HAVE WORKED AS A CHEMICAL ENGINEER, AS A

2    LAWYER, AS A SOCIAL WORKER, AND AS A LAW SCHOOL PROFESSOR.

3          THE COURT:  WHAT WAS DISCIPLINE IN THE LAW?  WERE

4    YOU AN INTELLECTUAL PROPERTY LAWYER?

5          PROSPECTIVE JUROR:  NO.  LABOR LAW AND PERSUASIVE

6    WRITING AT ▓▓▓▓▓▓▓▓▓

7          THE COURT:  WHEN YOU PRACTICED, WHERE DID YOU

8    PRACTICE?

9          PROSPECTIVE JUROR:  I WAS WITH CORPORATIONS IN

10   NEW YORK; ▓▓▓▓▓ ▓▓▓▓▓ WHO BUILT THE ▓▓▓▓▓▓▓▓

11   ▓▓▓▓ THAT I WAS INVOLVED IN.  I WENT FROM THAT TO ▓▓▓▓ WHO

12   BUILT THE ▓▓▓▓▓▓ AND I WENT IN-HOUSE WITH ▓▓▓▓

13   ▓▓▓▓▓ BUT I'VE ALSO BEEN WITH LARGE LAW FIRMS IN ▓▓▓▓

14   AND ▓▓▓▓▓▓

15         THE COURT:  INTERESTING AND VARIED LEGAL CAREER,

16   HUH?

17         PROSPECTIVE JUROR:  YES.

18         I'VE BEEN MARRIED FOR ▓▓ YEARS TWICE AND NOT

19   DIVORCED.  THAT ALSO ADDS UP TO ▓▓ HAPPY YEARS.  MY CURRENT

20   WIFE WORKS FOR THE ▓▓▓▓▓▓ SHE ▓▓▓▓▓▓▓▓

21   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

22   INCIDENTALLY, SHE WAS ▓▓▓▓▓▓▓ WHO ▓▓

23   ▓▓▓▓▓ FROM HIS ▓▓▓▓▓▓

24   ▓▓▓▓▓▓▓▓

25         THE COURT:  HER FIRST HUSBAND?

COMPUTER-AIDED TRANSCRIPTION

1       PROSPECTIVE JUROR:  YES.

2       THE COURT:  INTERESTING.

3       MR. ███████ IS TALKING ABOUT THE CASE THAT

4  PROBABLY ALL OF US KNOW FROM TV, THE MIRANDA DECISION, WHERE

5  YOU HAVE TO TELL THE SUSPECTS BEFORE YOU QUESTION THEM "YOU

6  HAVE A RIGHT TO REMAIN SILENT.  ANYTHING YOU SAY CAN AND WILL

7  BE HELD AGAINST YOU IN A COURT OF LAW."

8       HE WAS THE LAWYER FOR ERNESTO MIRANDA, HUH?

9       PROSPECTIVE JUROR:  THAT WAS AN ACLU CASE.

10      WHEN ████████████████████████████████████████

11  ████████████████████████████████████████

12      THE COURT:  HE GOT KILLED IN A BAR FIGHT IN PHOENIX

13  YEARS AFTER HE WAS VINDICATED.

14      PROSPECTIVE JUROR:  THAT'S RIGHT.  WHEN THE POLICE

15  CAME TO ARREST THE SUSPECT, THEY KNEW THEY HAD TO READ

16  SOMETHING TO HIM.  THEY WEREN'T SURE WHAT.  AND THE OTHER

17  POLICEMAN WHO WAS LOOKING THROUGH THE VICTIM'S -- MIRANDA'S

18  WALLET SAID, "LOOK HERE.  I FOUND SOMETHING.  I THINK THIS IS

19  IT."  SO THE GUY WHO KILLED MIRANDA WAS READ HIS MIRANDA

20  RIGHTS FROM WHAT WAS IN MIRANDA'S WALLET.

21      THE COURT:  AMONG THE MEMORABILIA THAT ████████,

22  DID HE ACTUALLY AUTOGRAPH ANY OF THOSE CARDS?

23      PROSPECTIVE JUROR:  I DIDN'T GO THROUGH IT.  IT WAS

24  BOXES AND BOXES OF PAPERS.

25      THE COURT:  I WOULD IMAGINE IN THIS DAY, THAT WOULD

COMPUTER-AIDED TRANSCRIPTION

64

1    BE SOMETHING THAT COULD FETCH MONEY ON EBAY.

2            PROSPECTIVE JUROR:  THAT WAS PRE-EBAY.

3            I HAD ▓▓▓ NATURAL CHILDREN, TWO OF WHOM ARE ALIVE.

4    ONE IS A ▓▓▓▓▓ AND THE OTHER HAS A ▓▓▓▓▓▓▓▓

5    ONE OF MY CHILDREN WHO DIED WAS A LITIGATION ATTORNEY IN

6    ▓▓▓▓▓▓▓▓ I HAVE ▓▓ STEPCHILDREN.  ONE IS A CRIMINAL

7    DEFENSE LAWYER IN ▓▓▓▓▓ COUNTY, AND THE OTHER IS AN

8    ▓▓▓▓▓▓ I WAS SEATED AS A CRIMINAL JUROR IN SUPERIOR

9    COURT.  WE ACQUITTED.  AND I CERTAINLY CAN BE FAIR.

10           THE COURT:  THANK YOU, ▓▓▓▓▓▓▓ I APPRECIATE

11   YOUR ANSWERS.

12   ▓▓▓▓▓▓▓▓

13           PROSPECTIVE JUROR:  MY NAME IS ▓▓▓▓▓▓▓.  I GO

14   BY ▓▓▓  AFTER A TWO-YEAR MISSION FOR MY CHURCH, I WAS

15   FORTUNATE TO MARRY MY CHILDHOOD SWEETHEART.  WE'VE BEEN

16   MARRIED FOR ▓▓ YEARS.  SHE'S A DOMESTIC GODDESS.  WE HAVE ▓▓

17   CHILDREN.  WE HAVE ONE ▓▓ OUR ▓▓ OLDER ARE MARRIED.  OUR

18   ▓▓▓▓▓▓ IS A STUDENT.  OUR OTHER CHILDREN, ONE IS IN

19   ▓▓▓▓▓▓▓▓▓ THE OTHER IS THE ▓▓▓▓▓▓ WITH

20   ▓▓▓▓▓▓▓▓ AS FAR AS MY LIVING, I'M AN ARCHITECT.

21   I'M ▓▓▓▓▓▓▓▓▓▓▓ WE SPECIALIZE IN

22   ▓▓▓▓▓▓, GENERALLY MORE TOWARDS INSTITUTIONAL WORK.  WE DO

23   LIBRARIES FOR THE CITY OF ▓▓▓▓▓ ▓▓▓▓▓▓ AND

24   ▓▓▓▓▓▓ I HAVE EXPERIENCE IN TERMS OF TRIAL, BUT IT'S

25   LIMITED TO EXPERT WITNESS PRIMARILY ON ZONING ISSUES AND

COMPUTER-AIDED TRANSCRIPTION

65

1    CONSTRUCTION DEFECT. I'VE PROBABLY BEEN INVOLVED IN SOMEWHERE

2    BETWEEN 13 AND 15 OF THOSE KINDS OF CASES. YOUR HONOR, I WILL

3    BE FAIR.

4            THE COURT: THANK YOU VERY MUCH, ████████    I

5    APPRECIATE YOUR ANSWERS.

6            ████████████

7            PROSPECTIVE JUROR: MY NAME IS ████████. I

8    LIVE IN ████████. I'M A REALTOR, AND MY HUSBAND IS A

9    ████████████ WE HAVE ONE ████ WHO IS ███ I HAVE HAD

10   NO EXPERIENCE WITH BEING A JUROR. I CAN BE FAIR.

11           THE COURT: THANK YOU, ████████

12           ONCE AGAIN, I HAVE TO MAKE A DETERMINATION HERE OF

13   WHO MIGHT BE THE FOREPERSON AND DEPUTY FOREPERSON.

14           ████████ HOW ABOUT YOU? ARE YOU UP TO THE

15   TASK OF SERVING AS THE FOREPERSON? LET ME TELL YOU ABOUT THE

16   ROLE OF A FOREPERSON.

17           PROSPECTIVE JUROR: I HAD ████████████

18   AGO. I'M DOING FINE, BUT SOME DAYS --

19           THE COURT: I'M GOING TO APPOINT A DEPUTY

20   FOREPERSON, TOO. LET ME TELL YOU WHAT THE FUNCTION IS.

21           IT USED TO BE WHEN THE GRAND JURY DECIDED ON A GROUP

22   OF CASES AND DECIDED TO RETURN INDICTMENTS IN CASES, THE

23   ENTIRE GRAND JURY WOULD HAVE TO COME DOWN AND AFFIRM THAT

24   "THESE ARE OUR DECISIONS." A FEW YEARS AGO, FIVE, SIX, SEVEN

25   YEARS AGO, CONGRESS PASSED A LAW THAT SAID, "WE'LL ALLOW THE

Case 3:07-cr-00491-BTM     Document 18     Filed 07/30/2007     Page 67 of 69

66

1    FOREPERSON OF THE GRAND JURY TO COME DOWN AND REPRESENT TO THE

2    COURT THE RESULTS OF GRAND JURY BALLOTING"

3          SO TYPICALLY, AS YOU HEARD ME MENTION, ONCE THE

4    GRAND JURY SESSION IS THROUGH FOR THE DAY, THE GRAND JURY

5    FOREPERSON OR DEPUTY FOREPERSON WILL COME DOWN AND ATTEST TO

6    THE COURT ALONG WITH THE APPROPRIATE PAPERWORK THE RESULTS OF

7    GRAND JURY'S WORK FOR THE DAY.  THAT WOULD BE ABOUT IT.

8          THE OTHER THING IS THE U.S. ATTORNEY WOULD LOOK TO

9    YOU TO HELP SCHEDULE SESSIONS WITH THE GRAND JURY, TO GET A

10   CONSENSUS AMONG GRAND JURORS ABOUT BREAKS OR HOW LONG YOU WANT

11   TO GO, THAT TYPE OF THING.  I DON'T WANT TO SAY IT'S NOT

12   IMPORTANT, BUT IT'S NOT GOING TO TAX YOUR RESOURCES MUCH MORE,

13   I DON'T THINK, THAN JUST SIMPLY SERVING AS A GRAND JUROR.

14   THERE IS A LITTLE MORE INVOLVED, AND YOU HAVE A TITLE.

15          PROSPECTIVE JUROR:  I'D RATHER BE THE DEPUTY.

16          THE COURT:  WELL, THEN, LET'S SWITCH PLACES.

17          ███████████    I WAS GOING TO CALL UPON YOU TO SEE IF

18   YOU'D BE INTERESTED IN BEING A DEPUTY. ████████████WOULD

19   DEFER TO YOU AS THE FOREPERSON.

20          ARE YOU WILLING TO TAKE THAT ASSIGNMENT?

21          PROSPECTIVE JUROR:  I WOULD BE.

22          THE COURT:  I'LL APPOINT ████████AS THE FOREPERSON

23   OF THE GRAND JURY AND ██████████AS THE DEPUTY FOREPERSON.

24          NOW, I MENTIONED THE POSSIBILITY THAT THERE MIGHT BE

25   PEOPLE THAT WANTED TO SWITCH BETWEEN THURSDAY AND FRIDAY

COMPUTER-AIDED TRANSCRIPTION

67

1   PANELS.   I'VE BEEN INFORMED THAT ONE OF THE GRAND JURORS FROM

2   THE FIRST PANEL, THE WEDNESDAY PANEL, WOULD PREFER TO SIT ON

3   THURSDAYS.

4            IS THERE ANYONE ON THIS THURSDAY PANEL -- OKAY.   ALL

5   RIGHT.

6            LET ME TAKE FIRST THINGS FIRST.

7            TURNING MY ATTENTION BACK TO THE WEDNESDAY PANEL,

8   WHO IS IT THAT WOULD PREFER -- ▇▇▇▇▇▇▇▇▇▇

9            I'M GOING TO TRY TO GET YOU IN ORDER.

10           ▇▇▇▇▇▇▇▇▇▇ SPOKE UP FIRST.

11           ▇▇▇▇▇▇, ▇▇▇▇▇▇▇, ▇▇▇▇▇▇

12           LET ME SEE IF I HAVE FOUR SIMILARLY SITUATED PEOPLE

13  ON THURSDAY THAT WANT TO GO TO WEDNESDAY.

14           MR. COOPER, I'M GOING TO SWITCH YOU WITH

15  ▇▇▇▇▇▇▇▇▇

16           ▇▇▇▇▇▇▇▇ I'LL SWITCH YOU WITH ▇▇▇▇▇▇

17           ▇▇▇▇▇▇▇ I'LL SWITCH YOU WITH ▇▇▇▇▇▇

18           AND ▇▇▇▇▇▇▇ I'LL SWITCH YOU WITH ▇▇▇▇▇▇

19  ▇▇▇▇▇▇▇

20           IS THERE ANYONE ELSE WHO EITHER WANTS TO SWITCH OR

21  IS INDIFFERENT?

22           ▇▇▇▇▇▇▇▇ I'LL SWITCH YOU WITH ▇▇▇▇▇▇

23           I LIKE TO BE ACCOMMODATING TO EVERYBODY.   AND SEEING

24  NO MORE HANDS, I'M NOT GOING TO MAKE ANY MORE INQUIRIES.

25           ▇▇▇▇▇▇▇▇ WILL YOU STAND.

COMPUTER-AIDED TRANSCRIPTION

99

68

1

2    I PROPOSE SWITCHING THE TWO OF THEM.

3    DO YOU WANT THEM TO SWITCH PHYSICALLY RIGHT NOW?

4    THE CLERK:  NO.

5    THE COURT:          AND                   THOSE TWO WILL

6  SWITCH.

7        AND          WILL SWITCH.

8        AND          WILL SWITCH.

9        ON THE END AND

10    WE'LL MAKE THOSE SWITCHES AT THE APPROPRIATE TIME.

11    LADIES AND GENTLEMEN, THOSE OF YOU WHO HAVE BEEN

12  SELECTED TO SIT ON THE GRAND JURY, IF YOU'LL STAND AND RAISE

13  YOUR RIGHT HAND, PLEASE.

14                        --oOo--

15

16

17    I HEREBY CERTIFY THAT THE TESTIMONY

18    ADDUCED IN THE FOREGOING MATTER IS

19    A TRUE RECORD OF SAID PROCEEDINGS.

20

21    S/EVA OEMICK                    7-3-07

22    EVA OEMICK                      DATE
      OFFICIAL COURT REPORTER

23

24

25

COMPUTER-AIDED TRANSCRIPTION

100

# EXHIBIT C

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

8

| UNITED STATES OF AMERICA, | CASE NO. 07cr0491 BTM |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** |
| v. | |
| MANUEL MARTINEZ-COVARRUBIAS, | |
| Defendant. | |

13

14    Defendant Manuel Martinez-Covarrubias has filed a Motion to Dismiss the Indictment

15  Due to Erroneous Grand Jury Instruction.  For the reasons discussed below, Defendant's

16  motion is **DENIED**.

17                    **I. BACKGROUND**

18    On February 28, 2007, a federal grand jury empaneled in this district on January 11,

19  2007 returned a two-count Indictment charging Defendant with Importation of

20  Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and Possession of

21  Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

22

23                    **II. CHALLENGED INSTRUCTIONS**

24  A. Video Presentation

25    Prior to the selection of the grand jury jury, the potential grand jurors were shown a

26  video titled "The Federal Grand Jury: The People's Panel."  The video's apparent purpose

27  is to educate potential grand jurors about their civic duty to serve, the function of the grand

28  jury, and their responsibilities as grand jurors.

1

101

1    The video presents the story of a woman who serves on a grand jury for the first time.

2    In one scene, after the woman receives the summons, her son tells her what he has learned

3    about the function of a grand jury.  Reading from a civics book, the son states that if the "jury

4    finds that probable cause does exist, then it will return a written statement of charges called

5    an indictment . . . ."

6    When charging the impaneled grand jury, the fictional judge explains that if the grand

7    jury finds that there is probable cause, "you will return an indictment."

8    Later, the foreperson tells the other grand jurors that there are two purposes of the

9    grand jury: (1)  when there is a finding of probable cause, to bring the accused to trial fairly

10   and swiftly; and (2) to protect the innocent against unfounded prosecution.

11

12   B.  Voir Dire Session

13   Before commencing voir dire, the empaneling judge, the Hon. Larry A. Burns,

14   explained the function of the grand jury to the prospective jurors as follows: "The grand jury

15   is determining really two factors: 'Do we have a reasonable – collectively, do we have a

16   reasonable belief that a crime was committed? And second, do we have a reasonable belief

17   that the person that they propose that we indict committed the crime?'  If the answer is 'yes'

18   to both of those, then the case should move forward.  If the answer to either of the questions

19   is 'no,' then the grand jury should hesitate and not indict." App. 2 to Gov't Response at 8.

20   During voir dire, Judge Burns explained to the potential grand jurors that the

21   presentation of the evidence to the grand jury was going to be one-sided.  Id. at 14.

22   However, Judge Burns stated, "Now, having told you that, my experience is that the

23   prosecutors don't play hide-the-ball.  If there's something adverse or that cuts against the

24   charge, you'll be informed of that.  They have a duty to do that." Id. at 14-15.

25   One prospective juror, a retired clinical social worker, indicated that he did not believe

26   that any drugs should be considered illegal.  Id. at 16.  He also stated that he had strong

27   feelings about immigration cases and thought the government was spending a lot of time

28   unnecessarily persecuting people.  Id.  The following exchange occurred:

102
07cr0491 BTM

1
2
3
4
5

The Court: Now, the question is can you fairly evaluate those cases? Just as the Defendant ultimately is entitled to a fair trial and the person that's accused is entitled to a fair appraisal of the evidence of the case that's in front of you, so, too, is the United States entitled to a fair judgment. If there's probable cause, then the case should go forward. I wouldn't want you to say, "Well, yeah, there's probable cause. But I still don't like what our Government is doing. I disagree with these laws, so I'm not going to vote for it to go forward." If that's your frame of mind, then probably you shouldn't serve. Only you can tell me that.

6

Prospective Juror: Well, I think I may fall in that category.

7

The Court: In the latter category?

8

Prospective Juror: Yes.

9
10

The Court: Where it would be difficult for you to support a charge even if you thought the evidence warranted it?

11

Prospective Juror: Yes.

12

The Court: I'm going to excuse you, then. I appreciate your honest answers.

13

Id. at 16-17.

14
15
16

Later, another prospective juror, a real estate agent, expressed a concern regarding the disparity between state and federal law with respect to medical marijuana. Judge Burns responded:

17
18
19

Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. We'd ask you to also abide by that. We want you to make a business-like decision and look at the facts and make a determination of whether there was a [sic] probable cause.

20

Id. at 25.

21
22
23

Subsequently, the prospective juror stated that he felt that drugs should be legal and that rapists and murderers, not people using drugs, should go to jail. Id. at 25-26. The following exchange ensued:

24
25
26
27
28

The Court: I think rapists and murderers ought to go to jail too. It's not for me as a judge to say what the law is. We elect legislators to do that. We're sort of at the end of the pipe on that. We're charged with enforcing the laws that Congress gives us.

I can tell you sometimes I don't agree with some of the legal decisions that are indicated that I have to make. But my alternative is to vote for someone different, vote for someone that supports the policies I support and get the law changed. It's not for me to say, "Well, I don't like it. So I'm not going to follow it here."

You'd have a similar obligation as a grand juror even though you might

**103**

have to grit your teeth on some cases.  Philosophically, if you were a member of congress, you'd vote against, for example, criminalizing marijuana.  I don't know if that's it but you'd vote against criminalizing some drugs.

That's not what your prerogative is here.  Your prerogative instead is to act like a judge and to say, "All right.  This is what I've got to deal with objectively.  Does it seem to me that a crime was committed?  Yes.  Does it seem to me that this person's involved?  It does."  And then your obligation, if you find those things to be true, would be to vote in favor of the case going forward.

I can understand if you tell me, "Look, I get all that, but I just can't do it or I wouldn't do it."  I don't know what your frame of mind is.  You have to tell me about that.

Prospective Juror: I'm not comfortable with it.

The Court: Do you think you'd be inclined to let people go on drug cases even though you were convinced there was probable cause they committed a drug offense?

Prospective Juror: It would depend upon the case.

The Court: Is there a chance that you would do that?

Prospective Juror: Yes.

The Court: I appreciate your answers.  I'll excuse you at this time.

Id. at 26-28.

Later, a potential juror said that he was "soft" on immigration because he had done volunteer work with immigrants in the field, but that he could be fair and objective.  Judge Burns stated: "As you heard me explain earlier to one of the prospective grand jurors, we're not about trying to change people's philosophies and attitudes here.  That's not my business.  But what I have to insist on is that you follow the law that's given to us by the United States Congress. We enforce the federal laws here."  Id. at 61.  This juror was not excused.


C.  Charge to Impaneled Grand Jury

After the grand jury was impaneled, Judge Burns gave further instructions regarding the responsibilities of the grand jurors.

With respect to the enforcement of federal laws, Judge Burns explained:

But it's not for you to judge the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is [sic] criminal is not up to you.  That's a judgment that Congress makes.

And if you disagree with that judgment made by Congress, then your

104

07cr0491 BTM

1  option is not to say, 'Well, I'm going to vote against indicting even though I
2  think that the evidence is sufficient' or 'I'm going to vote in favor of [indictment]
   even though the evidence may be insufficient.' Instead, your obligation is to
3  contact your congressman or advocate for a change in the laws, but not to
   bring your personal definition of what the law ought to be and try to impose that
   through applying it in a grand jury setting.
4       Furthermore, when you're deciding whether to indict or not to indict, you
5  shouldn't be concerned with punishment that attaches to the charge. I think
   I also alluded to this in the conversation with one gentleman. Judges alone
6  determine punishment. We tell trial juries in criminal cases that they're not to
   be concerned with the matter of punishment either. Your obligation at the end
7  of the day is to make a business-like decision on facts and apply those facts
   to the law as it's explained and read to you.

8  App. 1 to Gov't Response at 8-9.

9       With respect to exculpatory evidence, Judge Burns stated: "As I told you, in most

10  instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they

11  may be asking you to do if they're aware of that evidence." <u>Id.</u> at 20.   Later, Judge Burns

12  said, "If past experience is any indication of what to expect in the future, then you can expect

13  that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that

14  they'll act in good faith in all matters presented to you." <u>Id.</u> at 27.

15

16                              **III. <u>DISCUSSION</u>**

17

18  A. <u>Instructions Re: Role of Grand Jury</u>

19       Defendant contends that statements made in the video, Judge Burns' instructions, and

20  the dismissal of two potential jurors deprived Defendant of the traditional functioning of the

21  Grand Jury. Specifically, Defendant claims that the challenged statements in combination

22  with the dismissal of the two potential jurors "flatly prohibited grand jurors from exercising

23  their constitutional discretion to not indict even if probable cause supports the charge."

24  (Def.'s Reply Br. 8.) Looking at the video presentation and the instructions as a whole, the

25  Court disagrees.

26       Judge Burns made it clear that the jurors were not to refuse to indict in the face of

27  probable cause *on the ground that they disagreed with Congress's decision to criminalize*

28  *certain activity.* Judge Burns did not err in doing so. In <u>United States v. Navarro-Vargas</u>, 408

105

1   F.3d 1184 (9th Cir. 2005) ("Navarro-Vargas II"), the Ninth Circuit upheld the model grand jury

2   instruction that states: "You cannot judge the wisdom of the criminal laws enacted by

3   Congress, that is, whether or not there should or should not be a federal law designating

4   certain activity as criminal.  That is to be determined by Congress and not by you."   The

5   majority opinion observed that the instruction was not contrary to any long-standing historical

6   practice surrounding the grand jury and noted that shortly after the adoption of the Bill of

7   Rights, federal judges charged grand juries with a duty to submit to the law and to strictly

8   enforce it.  Id. at 1193,1202-03.  "We cannot say that the grand jury's power to judge the

9   wisdom of the laws is so firmly established that the district court must either instruct the jury

10  on its power to nullify the laws or remain silent."  Id. at 1204.

11          A prohibition against judging the wisdom of the criminal laws enacted by Congress

12  amounts to the same thing as a prohibition against refusing to indict based on disagreement

13  with the laws.  It is true that Judge Burns used stronger language that, viewed in isolation,

14  could be misconstrued as requiring the return of an indictment in *all* cases where probable

15  cause can be found.  Particularly troubling is the following statement made to the real estate

16  agent: "Your prerogative instead is to act like a judge and to say, 'All right.  This is what I've

17  got to deal with objectively.  Does it seem to me that a crime was committed?  Yes.  Does

18  it seem to me that this person's involved?  It does.'  *And then your obligation*, if you find

19  those things to be true, *would be to vote in favor of the case going forward.*"  App. 2 to Gov't

20  Response at 26.  However, viewed in context, Judge Burns was not mandating the issuance

21  of an indictment in *all* cases where probable cause is found; he was explaining that

22  disagreement with the laws should not be an obstacle to the issuance of an indictment.[1]

23          Furthermore, the word "obligation" is not materially different than the word "should."

24  _____

25      [1]  The Supreme Court has recognized that a grand jury is not required to indict in
    every case where probable cause exists.  In Vasquez v. Hillery, 474 U.S. 254, 263 (1986),
26  the Supreme Court explained: "The grand jury does not determine only that probable cause
    exists to believe that a defendant committed a crime, or that it does not.  In the hands of the
27  grand jury lies the power to charge a greater offense or a lesser offense; numerous counts
    or a single count; and perhaps most significant of all, a capital offense or a noncapital offense
28  - all on the basis of the same facts.  Moreover, '[t]he grand jury is not bound to indict in every
    case where a conviction can be obtained.' United States v. Ciambrone, 601 F.2d 616, 629
    (2d Cir. 1979) (Friendly, J., dissenting)."

106

07cr0491 BTM

1    In Navarro-Vargas II, the majority opinion held that the model instruction that the jurors

2    "should" indict if they find probable cause does not violate the grand jury's independence.

3    The majority explained, "As a matter of pure semantics, it does not 'eliminate discretion on

4    the part of the grand jurors,' leaving room for the grand jury to dismiss even if it finds

5    probable cause." Navarro-Vargas II, 408 F.3d at 1205 (quoting United States v. Marcucci,

6    299 F.3d 1156, 1159 (9th Cir. 2002)).  The dissenting opinion notes that the word "should"

7    is used "to express a duty [or] *obligation*." Id. at 1121 (quoting The Oxford American Diction

8    And Language Guide 931 (1999))(emphasis added).[2]

9        Defendant points to the language in the video where first the son, then the judge, state

10    that if there is a finding of probable cause, the grand jury "will" return an indictment.

11    However, no emphasis is placed on the word "will."  As spoken by the actors, the statements

12    are not directives, mandating the return of an indictment upon the finding of probable cause,

13    but, rather, descriptions of what is expected to occur.  Similarly, the foreperson's statement

14    that one of the purposes of the grand jury is to bring an accused to trial when there is a

15    finding of probable cause is a general statement of the grand jury's function, not a command

16    to return an indictment in *every* case where probable cause exists.

17        Defendant also argues that Judge Burns improperly forbade the grand jury from

18    considering the potential punishment for crimes when deciding whether or not to indict.

19    Defendant relies on the following statement:

20        Well, those things – the consequences of your determination shouldn't concern
       you in the sense that penalties or punishment, things like that – we tell trial
21        jurors, of course, that they cannot consider the punishment or the
       consequence that Congress has set for these things.  *We'd ask you to also*
22        *abide by that.*  We want you to make a business-like decision and look at the
       facts and make a determination of whether there was a probable cause.

23

24    App. 2 to Gov't Response at 25.  (Emphasis added.)  Although Judge Burns stated that trial

25    jurors *cannot* consider punishment, he did not impose such a restriction on the grand jurors.

26    Instead, Judge Burns *requested* that the grand jurors follow the same principle.  Similarly,

27    _____

28        [2] Defendant concedes that at other times Judge Burns instructed that upon a finding
    of probable cause, the case "should" go forward.  App. 2 to Gov't Response at 8, 17; App.
    1 to Gov't Response at 4, 23.

107

1  during the formal charge, Judge Burns stated, "[y]ou *shouldn't* be concerned with punishment

2  that attaches to the charge."  App. 1 to Gov't Response at 8.  (Emphasis added.)

3       In United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006), the Ninth Circuit

4  upheld a jury instruction that stated: "[W]hen deciding whether or not to indict, you *should not*

5  be concerned about punishment in the event of conviction; judges alone determine

6  punishment." (Emphasis added.)  Consistent with the reasoning in Marcucci and Navarro-

7  Vargas II, the Ninth Circuit held that the instruction did not place an absolute bar on

8  considering punishment and was therefore constitutional.  The instructions given by Judge

9  Burns regarding the consideration of punishment were substantially the same as the

10  instruction in Cortez-Rivera.

11       Neither Judge Burns nor the video pronounced a general prohibition against jurors

12  exercising their discretion to refuse to return an indictment in the face of probable cause.

13  In any case, "history demonstrates that grand juries do not derive their independence from

14  a judge's instruction.  Instead they derive their independence from an unreviewable power

15  to decide whether to indict or not."  Navarro-Vargas II, 408 F.3d at 1204.

16       Both the video and Judge Burns informed the jurors about the utmost secrecy of the

17  grand jury proceedings and their deliberations.  The video and Judge Burns also emphasized

18  to the jury that they were independent of the Government and did not have to return an

19  indictment just because the Assistant U.S. Attorney asked them to.  In the video, the judge

20  expressed approval at the fact that the grand jury did not return an indictment as to the

21  alleged driver of the get-away car. Judge Burns characterized the jury as "a buffer between

22  our Government's ability to accuse someone of a crime and then putting that person through

23  the burden of standing trial."  App. 1 to Gov't Response at 26.  Judge Burns also told the

24  jurors that they were not to be a "rubber stamp" and were expected to depend on their

25  independent judgment.  Id, at 27.

26       Even though the jurors were not explicitly instructed that they could use their

27  discretion to refuse to return an indictment, they retained that power by virtue of the secrecy

28  surrounding their deliberations and the unreviewability of their decisions.  Nothing that Judge

108

1    Burns said or did impinged on the jurors' independence in this regard.

2         Defendant counters that the dismissal of the two potential jurors undermined the grand

3    jury's independence from the very start.   According to Defendant, when Judge Burns

4    dismissed the jurors, the message was clear that they were to indict in every case where

5    there was probable cause or they would be excused.  Defendant contends that the remaining

6    grand jurors could not have understood Judge Burns' actions in any other way.  (Reply Br.

7    18.)  The Court disagrees.

8         Upon reading the voir dire transcript, it is apparent that the jurors were excused

9    because they were biased against the government with respect to a whole category of

10   criminal laws, not simply because they were independent-minded and might refuse to return

11   an indictment in a case where probable cause exists.  Judge Burns explained to the clinical

12   social worker, "We're all products of our experience.  We're not going to try to disabuse you

13   of experiences or judgments that you have.  What we ask is that you not allow those to

14   control invariably the outcome of the cases coming in front of you; that you look at the cases

15   fresh, you evaluate the circumstances, listen to the witness testimony, and then make an

16   independent judgment."  App. 2 to Gov't Response at 15.  Judge Burns excused the social

17   worker after he admitted that it would be difficult for him to return an indictment in drug or

18   immigration cases.

19        Similarly, the real estate agent expressed that he thought drugs should be legal and

20   that people using drugs should not be sent to jail.  App. 2 to Gov't Response at 25-26.   The

21   real estate agent said that he was not comfortable with indicting in drug cases.  Although he

22   did not say that he would refuse to indict in all cases involving drugs, he admitted that

23   because of his beliefs, there was a chance that he would refuse to return an indictment in a

24   drug case even though there was probable cause.  Id. at 27.  The real estate agent's

25   responses established that he had serious concerns regarding the criminalization of drugs

26   and could not be impartial with respect to these cases

27        That bias was the reason for the dismissal of the first two potential  jurors is confirmed

28   by the dismissal of a third potential juror.  This juror stated that he had a strong bias for the

109

1   Government.  App. 2 to Gov't Response at 38.  Judge Burns cautioned the juror that he

2   should not "automatically defer to [the Government] or surrender the function and give the

3   indictment decision to the U.S. Attorney.  You have to make that independently." Id. at 40.

4   Judge Burns emphasized once again the responsibility of the jurors to evaluate the facts of

5   each case independently based on the evidence presented. Id. at 42-43. Demonstrating his

6   even-handedness, Judge Burns explained, "I'm equally concerned with somebody who would

7   say, 'I'm going to automatically drop the trap door on anybody the U.S. Attorney asks.' I

8   wouldn't want you to do that." Id. at 44.

9       A reasonable grand juror would not have interpreted the dismissal of the first two

10  potential jurors as a message that they must indict in all cases where probable cause is

11  found or risk being excused from service.  It was apparent to the other jurors that a lack of

12  impartiality with respect to certain types of cases, *not* independence, was the reason for all

13  three dismissals.

14      In sum, Judge Burns did not err in instructing the grand jurors that they were not to

15  refuse to return an indictment on the ground that they disagreed with the laws.  Furthermore,

16  nothing in the video or Judge Burns' instructions nullified the grand jury's inherent power to

17  refuse to indict for any reason whatsoever.  As the Ninth Circuit noted in Navarro-Vargas II,

18  408 F.3d at 1204, the grand jury's independence results from the secrecy of their

19  deliberations and the unreviewability of their decisions.  Nothing in the record shows any

20  impediment to that independence.

21

22  B.    Instructions re: Assistant U.S. Attorneys

23      Defendant also contends that Judge Burns committed structural error by making

24  comments about the Assistant U.S. Attorney's duty to present evidence that "cuts against the

25  charge."  According to Defendant, not only did Judge Burns' comments contradict United

26  States v. Williams, 504 U.S. 36 (1992), but also discouraged independent investigation,

27  leading to inaccurate probable cause determinations.  Defendant reasons that given Judge

28  Burns' comments, the grand jurors would have assumed that if the prosecutor did not present

110

1    any exculpatory evidence, then none exists, rendering further investigation a waste of time.

2            Under Williams, prosecutors do not have a duty to present substantial exculpatory

3    evidence to the grand jury.    Although Assistant U.S. Attorneys apparently have an

4    employment duty to disclose "substantial evidence that directly negates the guilt" of a subject

5    of investigation (United States Attorneys' Manual § 9-11.233), it does not appear that they

6    have a broad duty to disclose all evidence that may be deemed exculpatory or adverse to

7    the Government's position.

8            Accordingly, Judge Burns' comments regarding the duty of Assistant U.S. Attorneys

9    to present adverse evidence were inaccurate.   However, Judge Burns' comments do not rise

10   to the level of structural error.  As discussed above, the video and Judge Burns stressed that

11   the grand jury was independent of the Government.   The video and Judge Burns also

12   explained to the jury that they could direct the Assistant U.S. Attorney to subpoena additional

13   documents or witnesses.  App. 1 to Gov't Response at 11, 24.   The jurors were also told

14   about their right to pursue their own investigation, even if the Assistant U.S. Attorney

15   disagrees with the grand jury's decision to pursue the subject.  Id. at 12.

16           In light of the foregoing instructions, the Court does not agree that the grand jurors

17   would assume that if the Government did not present any exculpatory evidence, none exists.

18   A reasonable juror would understand that the Assistant U.S. Attorney may not be aware of

19   certain exculpatory evidence, whether due to legitimate circumstances or inadequate

20   investigation, and that further investigation by the grand jury may be needed to properly

21   evaluate the evidence before them.   Furthermore, Judge Burns told the jury that "in *most*

22   instances" the U.S. Attorneys are duty-bound to present exculpatory evidence.  App. 1 to

23   Gov't Response at 20.   Based on this qualifying language, the grand jurors would have

24   understood that the prosecutor is not always bound to present exculpatory evidence.   Thus,

25   "the structural protections of the grand jury" have not "been so compromised as to render the

26   proceedings fundamentally unfair."  Bank of Nova Scotia v. United States, 487 U.S. 250, 257

27   (1988).

28           If Defendant can establish that the Government in fact knew of exculpatory evidence

111

07cr0491 BTM

1  that was not presented to the grand jury and that this failure to present exculpatory evidence,

2  in conjunction with Judge Burns' comments, "substantially influenced the grand jury's

3  decision to indict" or raises "grave doubt" that the decision to indict was free from the

4  substantial influence of such events, the Court may dismiss the indictment under its

5  supervisory powers. Bank of Nova Scotia, 487 U.S. at 256. Therefore, the Court will grant

6  Defendant leave to conduct discovery regarding what evidence was presented to the grand

7  jury. If, based upon the discovery, Defendant can establish that he suffered actual prejudice,

8  Defendant may renew his motion to dismiss the indictment.

9

10                              **IV.  CONCLUSION**

11        For the reasons discussed above, Defendant's Motion to Dismiss the Indictment Due

12  to Erroneous Grand Jury Instruction is **DENIED WITHOUT PREJUDICE**.

13

14  **IT IS SO ORDERED.**

15

16  DATED:  October 11, 2007

17                                          _Barry Ted Moskowitz_

18                                          Honorable Barry Ted Moskowitz
                                            United States District Judge

19

20

21

22

23

24

25

26

27

28

112
07cr0491 BTM