1  KAREN P. HEWITT
   United States Attorney
2  LAWRENCE A. CASPER
   Assistant U.S. Attorney
3  California Bar No. 235110
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7455/(619) 235-2757 (Fax)
   Email: Lawrence.Casper@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )   Criminal Case No. 08CR0724-WQH
                                     )   DATE:        April 21, 2008
                                     )   TIME:         9:00 a.m.
12          Plaintiff,               )
                                     )
            v.                       )   UNITED  STATES'  RESPONSE  AND
13                                   )   OPPOSITION TO DEFENDANT'S MOTIONS
                                     )   TO:
14  JOSE ELIAS CAMACHO-MELENDEZ,     )   (1)    COMPEL DISCOVERY & PRESERVE
                                     )          EVIDENCE; and
            Defendant.               )   (2)    DISMISS    INDICTMENT   DUE   TO
15                                   )          I M P R O P E R   G R A N D   J U R Y
                                     )          INSTRUCTIONS
16                                   )
                                     )   TOGETHER WITH STATEMENT OF FACTS
17                                   )   AND MEMORANDUM OF POINTS AND
                                     )   AUTHORITIES and
18                                   )
                                     )   UNITED    STATES'    MOTION    FOR
19  _____ )    RECIPROCAL DISCOVERY

20

21

22          COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

23  KAREN P. HEWITT, United States Attorney, and Lawrence A. Casper, Assistant United States

24  Attorney, and hereby files its Response and Opposition to the defendant's above-referenced motions

25  together with Statement of Facts and Memorandum of Points and Authorities.  This Response and

26  Opposition is based upon the files and records of the case.

27  //

28  //

I.

**STATEMENT OF THE CASE**

A federal grand jury on March 12, 2008 returned a four-count Indictment charging Defendant Jose Elias Camacho-Melendez with: (1) two counts of bringing in illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii); and (2) two counts of bringing in illegal aliens without presentation in violation of 8 U.S.C. § 1324(a)(2)(B)(iii).  On March 13, 2008 Defendant entered a not guilty plea before the Magistrate Judge.

II.

**STATEMENT OF FACTS**

**A.    Defendants' Apprehension**

**1.    Primary Inspection**

On February 27, 2008, at approximately 4:20 a.m., a 1987 white Ford F-250 pickup truck bearing Baja, California, Mexico license plate (BL16919) approached primary lane 6 at the Calexico, California West Port of Entry.  Defendant Jose Elias Camacho-Melendez (Defendant) was the driver and sole visible occupant of the vehicle.  Customs and Border Protection Officer Fonseca, the primary officer, was handed the Defendant's border crossing card (DSP-150) and was given a negative customs declaration by him.  CBPO Fonseca questioned Defendant regarding his destination and ownership of the vehicle.  Defendant claimed he was going to Las Palmas, a swap meet in Calexico, California to buy washers and that the truck belonged to his company.  CBPO Fonseca referred the vehicle to the secondary lot for further inspection.

**2.    Secondary Inspection**

At secondary, the vehicle was inspected by CBPO Justin VanArsdall; he observed the vehicle enter the secondary lot and examined the referral slip on the vehicle.  CBPO VanArsdall obtained a negative customs declaration from Defendant.  Defendant told CBPO VanArsdall that he was going to buy washers and that the vehicle belonged to the company for which he worked.  CBPO VanArsdall asked the Defendant to open the hood.  Defendant unlatched the hood release from inside the cab and proceeded to the vehicle secondary lobby area to pay for a user fee.  CBPO VanArsdall opened the hood of the vehicle and immediately noticed two bodies inside of the engine compartment. CBPO VanArsdall

chased after and caught up with the Defendant in the vehicle secondary lobby just inside the doors. CBPO VanArsdall conducted an immediate patdown of Defendant and escorted him into the vehicle secondary office. CBPO VanArsdall completed a pat down of Defendant in a private cell which was witnessed by CBPO Supervisor Olivas; that pat down was negative.

CBPO VanArsdall returned to the vehicle and CBPO Canine Officer Pyburn informed him that his narcotics detector dog alerted to the vehicle. Two females, who were subsequently determined to be undocumented aliens, were seen inside the engine compartment lying on top of the fender wells. The female on the driver's side had nothing separating her from the engine. The female on the passenger side of the engine compartment had a small piece of plywood between her and the engine. CBP Canine Officer Pyburn and CBPO VanArsdall removed a female later identified as Audelia Torres Gutierrez from the passenger side of the engine compartment. Upon removing her, CBPO asked her if she was alright in both Spanish and English; she just stared blankly back at him. She was unable to stand on her own and was perspiring heavily. The shoes that she was wearing were smoking from the heels and appeared to be melted and burning as were the leather uppers of her shoes. Canine Officer Pyburn removed her shoes and she was carried to the vehicle secondary office, where she was given some water. The female on the driver's side of the passenger compartment, who was later identified as Angelica Reyes Valenzuela, was also removed. She was cramped into an extremely tight fetal position and had her head between the master brake cylinder and the inner fender, with her feet against the radiator. She had no shoes on her feet but instead had only socks. She had to be assisted from her position as well.

Defendant was subsequently read his Miranda rights and invoked.

**B.**    **Statements of Material Witnesses**

Each of the two aliens smuggled in the engine compartment provided a statement admitting to being a Mexican citizen with no legal right to enter or remain in the United States. Each admitted to being smuggled for financial gain. Neither was able to identify the Defendant through a photo line up.

**B.**    **Criminal History of Defendant**

The Defendant has no known criminal convictions.

//

//

3

# III.

## DEFENDANT'S MOTIONS

### A.    The United States Has And Will Fully Comply With Its Discovery Obligations

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure.  To date, the United States has produced 177 pages of discovery to Defendant's counsel, including investigative reports and the videotape of Defendant's Miranda warning and invocation.

1.    Brady Material

The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963).  The Government will continue to perform its duty under Brady to disclose material exculpatory information or evidence favorable to Defendant  when such evidence is material to guilt or punishment.  The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not requested by the defense.  Bagley, 473 U.S.  at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).  "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).  The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam).  Under Brady, the Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380,

4

389-90 (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. (see United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)). Nor does Brady require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

### 2.    404(b) Material

The United States will disclose, in advance of trial, the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

### 3.    Evidence Seized

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The United States has no objection to allowing the defense an opportunity to inspect the Ford pickup truck seized in this case at a time mutually convenient for the parties.

### 4.    Preservation of Evidence

The United States has no opposition to a preservation order but objects to the broad and indeterminate scope of Defendant's request. The United States notes that it has not been served with a copy of any proposed preservation or inspection order nor was one attached to Defendant's motion papers. The United States also objects to Defendant's request to preserve narcotics samples in this alien smuggling case. Further, the United States will comply with its Henthorn obligations.

### 5.    Tangible Objects

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible

objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The United States, however, need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

6.    Expert Witnesses

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

7.    Bias or Motive to Lie

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

8.    Impeachment Evidence

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

9.    Evidence of Criminal Investigation of Any Government Witness

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such

1   information, disclosure need only extend to witnesses the United States intends to call in its case-in-

2   chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607

3   F.2d 1305, 1309 (9th Cir. 1979).

4   .

        10      Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth
5               Telling

6           The United States is unaware of any evidence indicating that a prospective witness has a

7   problem with perception, recollection, communication, or truth-telling.  The United States

8   recognizes its obligation under Brady and Giglio to provide material evidence that could be used to

9   impeach Government witnesses including material information related to perception, recollection or

10  ability to communicate.  The Government objects to providing any evidence that a witness has ever

11  used narcotics or other controlled substances, or has ever been an alcoholic because such

12  information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional

13  or statutory disclosure provision.

14          11.    Witness Addresses

15          The Government has already provided Defendant with the reports containing the names of

16  the agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital

17  case, however, has no right to discover the identity of prospective Government witnesses prior to

18  trial.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d

19  1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United

20  States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).  Nevertheless, in its trial memorandum, the

21  Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-

22  chief, although delivery of such a witness list is not required.  See United States v. Discher, 960 F.2d

23  870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

24          The Government objects to any request that the Government provide a list of every witness

25  to the crimes charged who will not be called as a Government witness.  "There is no statutory basis

26  for granting such broad requests," and a request for the names and addresses of witnesses who will

27  not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  United States v. Hsin-

28  Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502

7

(D. Del. 1980)).  The Government is not required to produce all possible information and evidence

regarding any speculative defense claimed by Defendant.  <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8

(1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of

admissible exculpatory evidence are not subject to disclosure under <u>Brady</u>).

       12.    <u>Name of Witnesses Favorable to the Defendant</u>

As stated earlier, the Government will continue to comply with its obligations under <u>Brady</u>

and its progeny.  At the present time, the Government is not aware of any witnesses who have made

an arguably favorable statement concerning the defendant.

       13.    <u>Statements Relevant to the Defense</u>

The United States will comply with all of its discovery obligations.  However, "the

prosecution does not have a constitutional duty to disclose every bit of information that might affect

the jury's decision; it need only disclose information favorable to the defense that meets the

appropriate standard of materiality."  <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).

       14.    <u>Jencks Act Material</u>

The United States will comply with its discovery obligations under the Jencks Act, Title 18,

United States Code, Section 3500, and as incorporated in Rule 26.2.

       15.    <u>Giglio Material</u>

The United States has complied and will continue to comply with its discovery obligations

under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

       16.    <u>Reports of Examinations and Tests</u>

The United States will provide Defendant with any scientific tests or examinations in

accordance with Rule 16(a)(1)(F).

       17.    <u>Cooperating Witnesses</u>

At this time, the United States is not aware of any confidential informants or cooperating

witnesses involved in this case.  The Government must generally disclose the identity of informants

where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the

defense.  <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957).  If there is a confidential informant

involved in this case, the Court may, in some circumstances, be required to conduct an <u>in camera</u>

1   inspection to determine whether disclosure of the informant's identity is required under Roviaro.

2   See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997).  If the United States

3   determines that there is a confidential informant or cooperating witness who is a material witness

4   with evidence helpful to the defense or essential to a fair determination in this case, the United States

5   will either disclose the identity of the informant or submit the informant's identity to the Court for

6   an in camera inspection.

7           18.    Personnel Records of Government Officers Involved in the Arrest

8           The United States objects to this request.  Defendant has not shown how any personnel

9   records of the arresting officers are relevant to this case.  Defense counsel has no constitutional right

10  to conduct a search of agency files to argue relevance.  See Pennsylvania v. Ritchie, 480 U.S. 39, 59-

11  60 (1987) (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general

12  constitutional right to discovery in a criminal case, and Brady did not create one")).  Thus, the

13  United States will review these records for impeachment information and fully comply with its

14  Henthorn obligations, but will not provide these records as Rule 16 discovery.

15          19.    Government Examination of Law Enforcement Personnel Files

16          The United States will comply with its obligations under United States v. Henthorn, 931 F.2d

17  29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and

18  prosecution review the personnel files of the federal law enforcement inspectors, officers, and

19  special agents whom the United States intends to call at trial and disclose information favorable to

20  the defense that meets the appropriate standard of materiality.  United States v. Booth, 309 F.3d 566,

21  574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).  If the

22  undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the

23  personnel files is "material," the information will be submitted to the Court for an in camera

24  inspection and review.

25          20.    Training of Border Patrol and ICE Agents.

26          The Government will comply with its discovery obligations, as stated above.  However, the

27  disclosure of training manuals, policies or training instructions  is not required by Brady v.Maryland,

28

373 U.S. 83 (1963), and its progeny, the Jencks Act (18 U.S.C. § 3500), or Rule 16 of the Federal Rules of Criminal Procedure.

.     21.     <u>TECS Records</u>

Defendant requests TECS reports.  While some of this information may have already been produced, the United States objects to this request.  The United States does not intend to provide Defendant with Custom's TECS information unless the United States decides to introduce such evidence pursuant to Rule 404(b).  <u>See</u> <u>United States v. Vega</u>, 188 F.3d 1150, 1153 (9th Cir. 1999).  Otherwise, such evidence is only available to the defendant if it is "relevant to the development of a possible defense," <u>United States v. Mandel</u>, 914 F.2d 1215, 1219 (9th Cir. 1990) (citations and quotations omitted), or it "enable[s] the accused to substantially alter the quantum of proof in his favor." <u>United States v. Marshall</u>, 532 F.2d 1279,1285 (9th Cir. 1976).  Defendant has shown neither.

22.     <u>Residual Request</u>

The Government has already complied with Defendant's request for prompt compliance with its discovery obligations.  The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

**B.     The Grand Jury Instructions Were Not Faulty, And The Indictment Should Not Be Dismissed**

1.     <u>Introduction</u>

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007.  [Memorandum of Points and Authorities, pp. 9-25 (hereinafter "Memorandum")[1/]  Although recognizing that the Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the

---

[1/]     Defendant supplies a "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted.  [Appendix 1.] To amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings.  [Appendix 2.]

1    Indictment should be dismissed.  In fact, the identical arguments advanced by Defendant here were

2    rejected in a 12 page written order issued by the Hon. Barry T. Moskowitz in this District and a

3    recent Order entered by the Hon. John A. Houston.  See Order Denying Defendant's Motion to

4    Dismiss the Indictment in United States v. Manuel Martinez-Covarrubias, No. 07cr0491-BTM, filed

5    October 11, 2007 (Appendix 3, hereto) and in the Amended Order Denying Defendant's Motion to

6    Dismiss the Indictment in United States v. Diana Jimenez-Bermudez, 07cr1372-JAH (Appendix 4,

7    hereto).

8            In making his arguments concerning the two separate instructions Defendant urges this Court

9    to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which

10   were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first

11   attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its

12   supervising powers over grand jury procedures.  [Memorandum p. 23.]  This is a practice the

13   Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S.

14   36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should

15   come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis

16   for prescribing modes of grand jury procedure. ").  [Id.] Isgro reiterated:

17           [A] district court may draw on its supervisory powers to dismiss an
18   indictment.   The supervisory powers doctrine "is premised on the inherent ability of
     the federal courts to formulate procedural rules not specifically required by the
     Constitution or Congress to supervise the administration of justice."  Before it may
19   invoke this power, a court must first find that the defendant is actually prejudiced by
     the misconduct.  Absent such prejudice-that is, absent "'grave' doubt that the
20   decision to indict was free from the substantial influence of [the misconduct]"-a
     dismissal is not warranted.
21
22   974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction, in

23   an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the

24   Constitution as a reason to dismiss the Indictment.  [Memorandum p. 25 ("A grand jury so badly

25   misguided is no grand jury at all under the Fifth Amendment").]  Concerning that kind of a

26   contention Isgro stated:

27           [A] court may dismiss an indictment if it perceives constitutional error that interferes
     with the grand jury's independence and the integrity of the grand jury proceeding.
28   "Constitutional error is found where the 'structural protections of the grand jury have
     been so compromised as to render the proceedings fundamentally unfair, allowing the
     presumption of prejudice' to the defendant."  Constitutional error may also be found

11

1      "if [the] defendant can show a history of prosecutorial misconduct that is so

2    systematic and pervasive that it affects the fundamental fairness of the proceeding or
if the independence of the grand jury is substantially infringed."

3    974 F.2d at 1094 (citation omitted).[2/]

4       The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

5          You cannot judge the wisdom of the criminal laws enacted by Congress, that
is, whether or not there should or should not be a federal law designating certain

6    activity as criminal.    That is to be determined by Congress and not by you.

7    408 F.3d at 1187, 1202.

8          The United States Attorney and his Assistant United States Attorneys will
provide you with important service in helping you to find your way when confronted

9    with complex legal problems.   It is entirely proper that you should receive this
assistance.  If past experience is any indication of what to expect in the future, then

10   you can expect candor, honesty, and good faith in matters presented by the
government attorneys.

11

12   408 F.3d at 1187, 1206.

13       Concerning the "wisdom of the criminal laws" instruction, the court stated it was

14  constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the

15  policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury

16  nullification.'"[3/]  408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools for

17  informing itself of the policy or legal justification for the law;  it receives no briefs or arguments

18  from the parties.   The grand jury has little but its own visceral reaction on which to judge the

19  'wisdom of the law.'"  <u>Id.</u>

20       Concerning the "United States Attorney and his Assistant United States Attorneys"

21  instruction, the court stated:

22          We also reject this final contention and hold that although this passage may
include unnecessary language, it does not violate the Constitution.   The "candor,

23

24

25        [2/]     In <u>Isgro</u> the defendants choose the abrogation of constitutional rights route when
asserting that prosecutors have a duty to present exculpatory evidence to grand juries.  They did not

26  prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to
support the dismissal of the indictment."  (relying on <u>Williams</u>)).

27       [3/]     The Court acknowledged that as a matter of fact jury nullification does take place, and
there is no way to control it.  "We recognize and do not discount that some grand jurors might <u>in fact</u>

28  vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all
the reasons we have discussed, there is <u>no post hoc</u> remedy for that;  the grand jury's motives are not
open to examination."  408 F.3d at 1204 (emphasis in original).

honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207.  Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other."  Id.

>               2.      The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you.  That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient."  Instead, your obligation is to  contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[4/]

Defendant appears to  acknowledge that in line with Navarro-Vargas, the role of the grand jury is not to determine whether or not there should be a federal law or should not be a federal law designating certain activity is criminal.  [Memorandum p. 9-10.]  Defendant notes, however, that "should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence maybe insufficient.'"  [Memorandum p.10.]  Defendant

---

[4/]      The Supplemental Transcript supplied herewith (Appendix 2) recounts the excusing of the three individuals.  This transcript involves the voir dire portion of the grand jury selection process, and has been redacted,  to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused.  Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

1    contends that this addition to the approved instruction, "flatly bars the grand jury from declining to

2    indict because the grand jurors disagree with a proposed prosecution." [Memorandum p. 10.]    In

3    concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction

4    renders irrelevant the debate about what the word "should" means. [Memorandum p. 17.]

5    Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they

6    disagree with a proposed prosecution." [Memorandum p. 10.] This argument mixes-up two of the

7    holdings in Navarro-Vargas in the hope they will blend into one. They do not.

8    　　　　Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom

9    of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by

10   Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

11   expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in

12   grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his

13   rights, and within the law, when he excused the three prospective grand jurors because of their

14   expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind

15   the impaneled grand jurors that they could not question the wisdom of the laws. As we will

16   establish, this reminder did not pressure the grand jurors to give up their discretion not to return an

17   indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from

18   declining to indict because the grand jurors disagree with a proposed prosecution, because they do

19   not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the

20   prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the

21   term "should" was germane.[5/]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").

22

23   　　　　　　[5/]　　That instruction is not at issue here. It read as follows:

24

25

26   　　　　[Y]our task is to determine whether the government's evidence as presented to
     you is sufficient to cause you to conclude that there is probable cause to believe that the
     accused is guilty of the offense charged.　To put it another way, you should vote to

27   indict where the evidence presented to you is sufficiently strong to warrant a reasonable
     person's believing that the accused is probably guilty of the offense with which the

28   accused is charged.

408 F.3d at 1187.

14

This other instruction bestows discretion on the grand jury not to indict.[6/]  In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward.  If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime.  Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the

---

[6/]    The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.   The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.   As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States  v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

discretion not to return an indictment per <u>Navarro-Vargas</u>.  Further, if a potential grand juror could

not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be

dismissed as a potential jury nullification advocate.  See  <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-

80 (9th Cir. 2005).  Thus, there was no error requiring dismissal of this Indictment or any other

indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found

in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual

decision, that those three individuals should not serve on the grand jury because of their views.

Judge Burns' reference back to those three colloquies cannot be construed as pressuring the

impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually

prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt

that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal is

not warranted." <u>Isgro</u>, 974 F.2d at 1094.

> 3.    The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office. . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries.  They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[7]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." [Memorandum p.24.] Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" [Memorandum p.24.] From this lash-up Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

---

[7]    Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[Memorandum p. 25.] (Emphasis added.)[8/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[9/] (emphasis added)). See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal

---

[8/]    The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

[9/]    Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

18

grand jury.[10/]  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[11/]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must present or otherwise disclose</u> such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should <u>not result in dismissal of an indictment</u>, appellate courts <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

(Emphasis added.)[12/]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ."  (Emphasis added.)[13/]

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by

---

[10/]     He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[11/]          The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

[12/]          <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[13/]     <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".  <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

1  Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he

2  knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the

3  cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no

4  "substantial" exculpatory evidence exists.[14]  If it does exist, as mandated by the USAM, the

5  evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly

6  having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if

7  there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any

8  "substantial" exculpatory evidence, because there is none, the negative inference created thereby in

9  the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no

10  "substantial" exculpatory evidence generated from its investigation or from submissions tendered by

11  the defendant.[15]  There is nothing wrong  in this scenario with a grand juror inferring from this state-

12  of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence

13  were presented, the evidence presented represents the universe of all available exculpatory evidence.

14       Further, just as the instruction language regarding the United States Attorney attacked in

15  Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution,"

16  408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

17  concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and

18  does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth

19  Circuit while reviewing Williams established that there is nothing in the Constitution which requires

20  a prosecutor to give the person under investigation the right to present anything  to the grand jury

21  (including his or her testimony or other exculpatory evidence), and the absence of that information

22

23       [14]    Recall Judge Burns also told the grand jurors that:

24       [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown
         trial, you're likely in most cases not to hear the other side of the story, if there is another
25       side to the story.

26  Partial transcript p. 19.

27       [15]    Realistically, given "that the grand jury sits not to determine guilt or innocence, but to
    assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause],"
28  Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent
    defense attorney is going to preview the defendant's defense story prior to trial assuming one will be
    presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

20

1  does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea

2  that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM

3  imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand

4  jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits

5  from the self-imposed policy.[16/]  Therefore, while the "duty-bound" statement was an interesting

6  tidbit of information, it was  unnecessary in terms of advising the grand jurors of their rights and

7  responsibilities, and does not cast an unconstitutional pall upon the instructions which requires

8  dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by

9  Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by

10  Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").

11  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the

12  accused and is independent,"  which was also required by Navarro-Vargas.  408 F.3d at 1207.  In

13  this context the unnecessary "duty-bound" statement does not mean the instructions were

14  constitutionally defective requiring dismissal of this indictment or any indictment.

15       The "duty bound" statement constitutional contentions raised by Defendant do not indicate

16  that the "'structural protections of the grand jury have been so compromised as to render the

17  proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

18  "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

19  pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

20  grand jury is substantially infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this

21  Indictment, or any other indictment, need not be dismissed.

22

23

24

25

26

27

28   _____

[16/]       The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

**C.    Leave to File Further Motions**

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

**IV**

**GOVERNMENT'S MOTION TO COMPEL RECIPROCAL DISCOVERY**

**A.    All Evidence That Defendant Intends To Introduce In His Case-In-Chief**

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1).  Pursuant to Rule 16(b)(1), requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness.  The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**B.    Reciprocal Jencks – Statements By Defense Witnesses**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant.  The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified.  However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.  Such an order should include any form in which these statements

1    are memorialized, including but not limited to, tape recordings, handwritten or typed notes and

2    reports.

3                                              **V.**

4                                      **CONCLUSION**

5         For the foregoing reasons, the Government respectfully requests that the Court deny

6    Defendant's motions and grant the United States' motion for reciprocal discovery.

7         DATED: April 7, 2008

8                                                  Respectfully Submitted,

9                                                  KAREN P. HEWITT
                                                   United States Attorney
10
                                                   s/Lawrence A. Casper
11                                                 LAWRENCE A. CASPER
                                                   Assistant U.S. Attorney
12                                                 Attorneys for Plaintiff
                                                   United States of America
13                                                 Email: lawrence.casper@usdoj.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.08cr0724-WQH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| JOSE ELIAS CAMACHO-MELENDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

     I, LAWRENCE A. CASPER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action. I have caused service of Government's Response and **Opposition to Defendant's Motions to: (1) COMPEL DISCOVERY AND PRESERVE EVIDENCE; (2) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTIONS; AND (3) FILE FURTHER MOTIONS**, together with statement of facts and memorandum of points and authorities on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     1.    Kasha K. Pollreisz
            Attorney for Defendant
            Federal Defenders of San Diego, Inc.

     I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

     1.    N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on April 7, 2008

                     *s/Lawrence A. Casper*
                     LAWRENCE A. CASPER