1  KAREN P. HEWITT
   United States Attorney
2  LAWRENCE A. CASPER
   Assistant U.S. Attorney
3  California State Bar No. 235110
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7455/(619) 235-2757 (Fax)
   Email: Lawrence.Casper@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11
   UNITED STATES OF AMERICA          )   Criminal Case No. 08CR0724-WQH
12                                    )
                Plaintiff,            )
13                                    )   IN LIMINE DATE:    May 19,2008
                                      )   TIME:              2:00 p.m.
14         v.                         )   TRIAL DATE:        May 20, 2008
                                      )   TIME:              9:00 a.m.
15                                    )
                                      )   UNITED STATES' MOTIONS  IN LIMINE TO:
16  JOSE ELIAS CAMACHO-MELENDEZ,      )   (A)   ADMIT EVIDENCE DEFENDANT MAY
                                      )         CONTEND IS 404(B);
17              Defendant.            )   (B)   PRECLUDE EXPERT TESTIMONY
                                      )         BY THE DEFENSE;
18                                    )   (C)   EXCLUDE ALL WITNESSES
                                      )         EXCEPT CASE AGENT;
19                                    )   (D)   PROHIBIT REFERENCE TO
                                      )         DEFENDANT'S HEALTH, AGE, ETC.;
20                                    )   (E)   PRECLUDE SELF-SERVING
                                      )         HEARSAY;
21                                    )   (F)   LIMIT CHARACTER EVIDENCE;
                                      )   (G)   PRECLUDE EVIDENCE OF DURESS
22                                    )         AND NECESSITY;
                                      )   (H)   RENEW ITS MOTION FOR
23                                    )         RECIPROCAL DISCOVERY;
                                      )   TOGETHER WITH STATEMENT OF FACTS
24  _____  )   AND MEMORANDUM OF POINTS AND
                                      )   AUTHORITIES.
25                                    )

26        COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

27  KAREN P. HEWITT, United States Attorney, and LAWRENCE A. CASPER, Assistant United States

28  Attorney, and hereby files its Motions in Limine.  These Motions are based upon the files and records

of the case together with the attached statement of facts and memorandum of points and authorities.

# I

# STATEMENT OF THE CASE

A federal grand jury on March 12, 2008 handed up a four-count Indictment charging Defendant Jose Elias Camacho-Melendez with: (1) two counts of bringing in illegal aliens for financial gain in violation of 8 U.SC. § 1324(a)(2)(B)(ii); and (2) two counts of bringing in illegal aliens without presentation in violation of 8 U.S.C. § 1324(a)(2)(B)(iii).  On March 13, 2008 Defendant entered a not guilty plea before the Magistrate Judge.

On April 1, 2008, Defendant filed motions to: (1) compel discovery; (2) preserve evidence; (3) dismiss indictment due to improper grand jury instructions; and (4) leave to file further motions.  On April 7, 2008, the United States responded to each of the above-described motions and filed its motion for reciprocal discovery.  On April 21, 2008, the Court granted the United States' motion for reciprocal discovery and granted Defendant's motion to preserve evidence.  The Court deferred ruling on the Defendant's other motions and set a hearing on motions in limine for May 19, 2008.

# II

# STATEMENT OF FACTS

### A.   Primary Inspection

On February 27, 2008, at approximately 4:20 a.m., a 1987 white Ford F-250 pickup truck bearing Baja, California, Mexico license plate (BL16919) approached primary lane 6 at the Calexico, California West Port of Entry.  Defendant Jose Elias Camacho-Melendez (Defendant) was the driver and sole visible occupant of the vehicle.  Customs and Border Protection Officer Fonseca, the primary officer, was handed the Defendant's border crossing card (DSP-150) and was given a negative customs declaration by him.  CBPO Fonseca questioned Defendant regarding his destination and ownership of the vehicle.  Defendant claimed he was going to Las Palmas, a swap meet in Calexico, California to buy washers and claimed that the truck belonged to his company.

Defendant claimed that he had worked for the company for a few months and had crossed before.  CBPO Fonseca told Defendant that he would need to pay a user fee of $10.75. Defendant mentioned that he had previously attempted to buy a one-time decal sticker at the Calexico East Port of Entry so that

1   he would not have to pay each time he crossed into the United States but that no one at Calexico East

2   could help him.  CBPO Fonseca referred the vehicle to the secondary lot for further inspection and for

3   the user fee.

4          **B.     <u>Secondary Inspection</u>**

5          At secondary, the vehicle was inspected by CBPO Justin VanArsdall; he observed the vehicle

6   enter the secondary lot and examined the referral slip on the vehicle.  CBPO VanArsdall obtained a

7   negative customs declaration from Defendant.  Defendant told CBPO VanArsdall that he was going to

8   buy washers and that the vehicle belonged to the company for which he worked.  CBPO VanArsdall

9   asked the Defendant to open the hood.  Defendant unlatched the hood release from inside the cab.

10  Immediately upon unlatching the hood and before it was actually opened by the CBPO, Defendant

11  proceeded southbound toward the vehicle secondary lobby area  where the cashiers office – the location

12  to pay the user fee –  is located.  While Defendant was proceeding in that direction, CBPO VanArsdall

13  opened the hood of the vehicle and immediately noticed two bodies inside of the engine compartment.

14  CBPO VanArsdall immediately pursued the Defendant and caught up with him in the vehicle secondary

15  lobby just inside the doors.  CBPO VanArsdall conducted an immediate patdown of Defendant and

16  escorted him into the vehicle secondary office.  CBPO VanArsdall completed a pat down of Defendant

17  in a private cell which was witnessed by CBPO Supervisor Olivas; that pat down was negative.

18         CBPO VanArsdall returned to the vehicle and CBP Canine Officer Brent Pyburn, who had

19  approached the vehicle with his canine after CBPO VanArsdall had pursued the Defendant into the

20  vehicle secondary lobby but before VanArsdall returned, informed VanArsdall that his narcotics detector

21  dog had alerted to the vehicle.  Two females, who were subsequently determined to be undocumented

22  aliens, were seen inside the engine compartment lying on top of the fender wells.  The female on the

23  driver's side had nothing separating her from the engine.  The female on the passenger side of the engine

24  compartment had a small piece of plywood between her and the engine.

25         CBP Canine Officer Pyburn and CBPO VanArsdall removed a female later identified as Audelia

26  Torres Gutierrez from the passenger side of the engine compartment.  Upon removing her, CBPO

27  VanArsdall asked her if she was alright in both Spanish and English; she just stared blankly back at him.

28  She was unable to stand on her own and was perspiring heavily.  The shoes that she was wearing were

1    smoking from the heels and appeared to be melted and burning as were the leather uppers of her shoes.

2    Canine Officer Pyburn removed her shoes and she was carried to the vehicle secondary office where she

3    was given some water.  The female on the driver's side of the passenger compartment, who was later

4    identified as Angelica Reyes Valenzuela, was also removed.  She was cramped into an extremely tight

5    fetal position and had her head between the master brake cylinder and the inner fender, with her feet

6    against the radiator.  She had no shoes on her feet but instead had only socks.  She had to be assisted

7    from her position as well.

8         Defendant was subsequently read his <u>Miranda</u> rights and invoked.  Defendant had $41 dollars

9    in U.S. currency and no Mexican currency in his possession upon arrest.

10        **C.      Defendant's Criminal Record**

11        At this time, the Government is not aware of any criminal convictions or arrests of Defendant.

12        **D.      Statements of Material Witnesses**

13        Each of the two aliens smuggled in the engine compartment provided a statement admitting to

14   being a Mexican citizen with no legal right to enter or remain in the United States.  Each admitted to

15   being smuggled for financial gain.  Neither was able to identify the Defendant through a photo line up.

16        **E.      Criminal History of Defendant**

17        The Defendant has no known criminal convictions.

18                                    **III**

19                                **ARGUMENT**

20        **A.      THE COURT SHOULD ADMIT EVIDENCE THAT DEFENDANT MAY
                     CONTEND IS 404(B)**

21

22              1.     Introduction

23        Although the United States does not agree that it constitutes "other acts" evidence pursuant to

24   Fed. R. Crim. P. 404(B), the United States has provided notice by letter to the defense that it "may

25   introduce testimony and other evidence regarding Treasury Enforcement Communications System

26   (TECS) data."  In particular, "this evidence relates to Defendant's crossing history at the United States -

27   Mexico border as well as the crossing history of vehicles driven and/or registered to Defendant."  The

28   United States has already produced relevant data from the TECS system in discovery in this case.

1    Certain of this evidence, including the fact that the Defendant crossed from Mexico into the

2    United States in the same vehicle at issue in this case two days earlier as well as his other recent

3    crossings in this or other vehicles may be offered as evidence that is "inextricably intertwined" with

4    the evidence of Defendant's guilt in the instant offense. The most common type of evidence that is not

5    subject to Rule 404(b) involves evidence that is not of an extrinsic act, but rather is of an intrinsic act

6    intertwined with the charged offense or offenses.

7    The Ninth Circuit has consistently held that evidence relating to uncharged, inextricably

8    intertwined acts do not fall within the purview of Rule 404(b). See e.g., United States v. Beckman, 298

9    F.3d 788, 793 (9th Cir. 2002) (admitting evidence of prior drug runs by a defendant, as testified to by

10   his co-conspirator, so that the prosecutor may offer a "coherent and comprehensible story regarding

11   the commission of the crime"); United States v. King,  200 F.3d 1207, 1214 (9th Cir. 1999) (finding

12   that testimony of a former business associate of defendant admissible to explain the nature of

13   defendant's business scheme in a bank fraud case); see also United States v. Soliman, 813 F.2d 277,

14   279 (9th Cir. 1987) ("Evidence should not be treated as other crimes evidence when the evidence

15   concerning the other act and the evidence concerning the crime charged are inextricably intertwined.")

16   (internal quotations and citations omitted).

17   In United States v. Vizcarra-Martinez, 66 F.3d 1006 (9th Cir. 1995), the Ninth Circuit explained

18   that inextricably intertwined evidence that does not fall under Rule 404(b)'s umbrella typically come

19   in two forms.  First, some "other act" evidence is admissible because it constitutes a part of the

20   transaction that serves as the basis for the criminal charge.  See id. at 1012; see also United States v.

21   Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) ("[T]he policies underlying rule 404(b) are inapplicable

22   when offenses committed as part of a single criminal episode become other acts simply because the

23   defendant is indicted for less than all of his actions.").  Second, "other act" evidence may be admitted

24   when it is necessary to offer a coherent and comprehensible story regarding the commission of the

25   crime.  See Vizcarra-Martinez, 66 F.3d at 1012-13; see also United States v. Daly, 974 F.2d 1215, 1216

26   (9th Cir. 1992) (admitting evidence regarding a shoot-out between the defendant and police as

27   inextricably intertwined to evidence of the crime alleged: felon in possession of a firearm).  Although

28   not subject to Rule 404(b), both types of inextricably intertwined evidence described in Vizcarra-

1   <u>Martinez</u> may require pre-trial notice under Rule 16.  <u>See</u>, <u>e.g.</u>, Fed. R. Crim. P. 16(a)(1)(E) (requiring

2   disclosure of papers, documents, in the Government's possession if the Government intends on using

3   the items in its case-in-chief).  Such notice was given in this case.  Such crossings are relevant and

4   necessary to enable the United States to present a coherent and comprehensible story concerning the

5   Defendant's  commission of the charged crime of alien smuggling.

6       Even under a 404(b) analysis, this evidence tends to prove the Defendant's knowledge and

7   intent; it is plainly not too remote in time; it may be proven with evidence sufficient to show it was, in

8   fact, committed; and it is similar to the offense charged.  Nor is it unduly prejudicial.  <u>See</u> <u>United States</u>

9   <u>v. Romero</u>, 282 F.3d 683, 688 (9th Cir. 2002) (quoting <u>United States v. Chea</u>, 231 F.3d 531, 534 (9th

10  Cir. 2000)); <u>see</u> <u>also</u> <u>United States v. Sneezer</u>, 983 F.2d 920, 924 (9th Cir. 1992) (restating test).

11  Finally, even if the Government does not bring this evidence out in its case-in-chief, such evidence

12  may, of course, become relevant if Defendant chooses to testify in this case.

13              2.      The TECS Evidence May Be Offered As Evidence That Is "Inextricably
14                      Intertwined" With Defendant's Guilt

15      Rule 404(b) restates the long-settled rule that evidence of prior or subsequent bad acts or crimes

16  cannot be admitted when the <u>sole</u> relevancy is to show disposition to commit crimes with which the

17  defendant is charged.  <u>See</u> <u>generally</u> <u>Michelson v. United States</u>, 335 U.S. 469, 475-76 (1948); <u>United</u>

18  <u>States v. Hernandez-Miranda</u>, 601 F.2d 1104, 1107-08 (9th Cir. 1979).  But the Rule, as the Ninth

19  Circuit has noted, is an inclusionary one where "evidence of other crimes is inadmissible under this rule

20  only when it proves nothing but the defendant's criminal propensities."  <u>United States v. Sneezer</u>, 983

21  F.2d 920, 924 (9th Cir. 1992); <u>see</u> <u>also</u> <u>United States v. Hinostroza</u>, 297 F.3d 924, 928 (9th Cir. 2002)

22  (quoting <u>United States v. Ayers</u>, 924 F.2d 1468, 1473 (9th Cir. 1991)) ("The only time such evidence

23  may be excluded by rule 404(b) is if the evidence 'tends to prove <u>only</u> criminal disposition.'")

24  (emphasis in original); <u>United States v. Herrell</u>, 588 F.2d 711, 714 (9th Cir. 1978) ("This court has also

25  stated that Rule 404(b) is a rule of inclusion which admits evidence of other crimes or acts relevant to

26  an issue in the trial, except where it tends to prove only criminal disposition.") (internal quotations and

27  citations omitted); <u>United States v. Cruz-Garcia</u>, 344 F.3d 951, 954 (9th Cir. 2003) ("[W]e have held

28  //

1  that Rule 404(b) is one of inclusion, and if evidence of prior crimes bears on other relevant issues,

2  404(b) will not exclude it.") (internal quotations and citations omitted).

3        On the other hand, when offered to prove something other than propensity–such as motive,

4  opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

5  accident–Rule 404(b) applies to admit the "other act" evidence.  See Fed. R. Evid. 404(b); United

6  States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998); United States v. Johnson, 132 F.3d

7  1279, 1282 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose, such as to prove

8  intent, the district court is accorded wide discretion in deciding whether to admit the evidence and the

9  test for admissibility is one of relevance.").  In this regard, the Rule is of vital importance, especially

10  in criminal proceedings that typically involve inquiry into the intent of the accused.  As the Supreme

11  Court indicated in United States v. Huddleston, 485 U.S. 681 (1988), "[e]xtrinsic acts evidence may

12  be critical to the establishment of the truth as to a disputed issue, especially when that issue involves

13  the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences

14  from conduct."  Id. at 685.

15        When offered for one or more of the favored purposes enumerated in the Rule, "other act"

16  evidence is proper and becomes admissible if it meets the Ninth Circuit's five-part admissibility test.

17  The "other act" evidence may be admissible if (1) it tends to prove a material point; (2) it is not too

18  remote in time; (3) it is sufficient to support a finding that defendant committed the other act;

19  (4) (in certain cases) the act is similar to the offense charged; and (5) the probative value is

20  substantially outweighed by the prejudicial impact under Rule 403.  See United States v. Romero, 282

21  F.3d 683, 688 (9th Cir. 2002) (quoting United States v. Chea, 231 F.3d 531, 534 (9th Cir. 2000)); see

22  also United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992) (restating test).

23        Therefore, Rule 404(b) applies to either exclude "other act" evidence (when offered solely as

24  improper conformity evidence), or to permit "other act" evidence (when offered for a proper purpose

25  subject to the Ninth Circuit's five-part test).  As seen below, "other act" evidence is not always subject

26  to Rule 404(b) however.

27        Sometimes, evidence of "other crimes, wrongs, or acts" is not subject to Rule 404(b) at all.  This

28  makes sense as not every "other act" would be subject to the heightened scrutiny of the Rule 404(b)

1   test set forth by the Ninth Circuit as well as the pre-trial notice requirements of the Rule.  The most

2   common circumstances under which Rule 404(b) is inapplicable, explained in more detail below, are

3   (1) evidence of "other acts" inextricably intertwined to the acts charged against the defendant, and

4   (2) evidence of "other acts" that do not relate to character.  Obviously, as Rule 404(b) is inapplicable

5   in these circumstances, the Court need not evaluate the evidence under the five-part Rule 404(b) test

6   described above.

7        The most common type of evidence that is not subject to Rule 404(b) involves evidence that

8   is not of an extrinsic act, but rather is of an intrinsic act intertwined with the charged offense or

9   offenses.  The Ninth Circuit has consistently held that evidence relating to uncharged, inextricably

10  intertwined acts do not fall within the purview of Rule 404(b).  See e.g., United States v. Beckman, 298

11  F.3d 788, 793 (9th Cir. 2002) (admitting evidence of prior drug runs by a defendant, as testified to by

12  his co-conspirator, so that the prosecutor may offer a "coherent and comprehensible story regarding

13  the commission of the crime"); United States v. King,  200 F.3d 1207, 1214 (9th Cir. 1999) (finding

14  that testimony of a former business associate of defendant admissible to explain the nature of

15  defendant's business scheme in a bank fraud case); see also United States v. Soliman, 813 F.2d 277,

16  279 (9th Cir. 1987) ("Evidence should not be treated as other crimes evidence when the evidence

17  concerning the other act and the evidence concerning the crime charged are inextricably intertwined.")

18  (internal quotations and citations omitted).

19       In United States v. Vizcarra-Martinez, 66 F.3d 1006 (9th Cir. 1995), the Ninth Circuit explained

20  that inextricably intertwined evidence that does not fall under Rule 404(b)'s umbrella typically come

21  in two forms.  First, some "other act" evidence is admissible because it constitutes a part of the

22  transaction that serves as the basis for the criminal charge.  See id. at 1012; see also United States v.

23  Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) ("[T]he policies underlying rule 404(b) are inapplicable

24  when offenses committed as part of a single criminal episode become other acts simply because the

25  defendant is indicted for less than all of his actions.").  Second, "other act" evidence may be admitted

26  when it is necessary to offer a coherent and comprehensible story regarding the commission of the

27  crime.  See Vizcarra-Martinez, 66 F.3d at 1012-13; see also United States v. Daly, 974 F.2d 1215, 1216

28  (9th Cir. 1992) (admitting evidence regarding a shoot-out between the defendant and police as

1  inextricably intertwined to evidence of the crime alleged: felon in possession of a firearm). Although

2  not subject to Rule 404(b), both types of inextricably intertwined evidence described in Vizcarra-

3  Martinez may require pre-trial notice under Rule 16. See, e.g., Fed. R. Crim. P. 16(a)(1)(E) (requiring

4  disclosure of papers, documents, in the Government's possession if the Government intends on using

5  the items in its case-in-chief).

6          As the evidence sought to be introduced here is TECS evidence, perhaps the most illustrative

7  case in the "inextricably intertwined" series in this circuit is United States v. Sanchez-Robles, 927 F.2d

8  1070 (9th Cir. 1991). In Sanchez-Robles, the defendant was convicted of importation of marijuana and

9  cocaine, as well as possession of those drugs with intent to distribute, stemming from her arrest at the

10  Calexico Port of Entry. See id. at 1070. During its rebuttal case, the Government offered TECS

11  evidence to show border crossings of both the defendant's vehicle, and of the vehicle she drove on the

12  night of her arrest. See id. at 1078. This evidence was offered for two purposes. First, to contradict

13  the story given by Sanchez-Robles to customs officials upon her arrest, when she explained that she

14  borrowed the vehicle from a friend she had known for just one month. The TECS evidence showed

15  that the van she borrowed and her own vehicle made several crossings close in time to one another

16  before the defendant claimed to have known the owner of the van. See id. Second, Sanchez-Robles's

17  daughter testified at trial that she was on a date in the family vehicle on the evening of the defendant's

18  arrest. The TECS evidence offered by the Government showed no crossing that evening. See id. The

19  Ninth Circuit upheld the use of the TECS evidence as relevant, not in violation of rule 608(b), which

20  prohibits extrinsic evidence solely for impeachment, and not in violation of rule 404(b). As to the latter

21  point, the Court held that the evidence was inextricably intertwined to the offense conduct charged and,

22  accordingly, found that the TECS evidence was properly admitted. See id.

23          Inextricably intertwined evidence is not the only form of "other act" evidence that is not subject

24  to Rule 404(b). It is axiomatic that evidence of "other acts" unrelated to an individual's character is

25  likewise not covered by Rule 404(b). Support for this proposition comes from Ninth Circuit case law,

26  Rule 404(b) jurisprudence in other circuits, the format of the Federal Rules of Evidence, and common

27  sense as it relates to discovery obligations and basic trial advocacy.

28  //

1                    3.       Rule 404(b) Other Acts Are Limited To Those Acts Relating to Character

2         The Ninth Circuit properly limits the scope of "other acts" evidence of Rule 404(b) to those acts

3  relating to character.  In Sanchez-Robles, as detailed above, the Ninth Circuit ruled that TECS

4  evidence, showing contradictory testimony by defense witnesses and the incredibility of the defendant's

5  story upon her arrest, was inextricably intertwined to evidence of the crime itself.  However, the

6  inextricably intertwined language was an alternative basis for the Court's decision, coming after the

7  Court indicated "The TECS reports . . . show border crossings, not wrongs or acts showing character."

8  Sanchez-Robles, 927 F.2d at 1078.

9         In United States v. Kearns, 61 F.3d 1422, 1423 (9th Cir. 1995), the defendant was convicted

10  of conspiring to distribute marijuana and possession of marijuana with intent to distribute.  During trial,

11  the district court admitted several deeds that related to three pieces of real property that were

12  transferred between the three co-conspirators in the case.  See id. at 1426.  The defendant contended

13  on appeal that the deeds were "other crimes, wrongs, or acts" under Rule 404(b).  The Ninth Circuit

14  disagreed, holding "[t]he deeds do not constitute 'other acts' evidence because they do not show

15  'wrongs or acts showing character. . . .  Even if the deeds somehow showed bad acts, they were not

16  offered to prove the character of a person in order to show action in conformity therewith.'"  Id. (citing

17  Sanchez-Robles, 927 F.2d at 1078).  The Court concluded that the deeds were relevant to show the

18  previous and extensive involvement of the defendant with other co-conspirators and to rebut the

19  defense that she was not an active participant in the activities to distribute marijuana.  As the admission

20  of the deeds did not relate to the character of the defendant, the Kearns Court refused to find Rule

21  404(b) applicable.  See also United States v. McCourt, 925 F.2d 1229, 1232 n.1 (9th Cir. 1991) ("Rule

22  404(b) is a 'specialized but important application of the general rule excluding circumstantial use of

23  character evidence.'") (emphasis added).

24         Finally, common sense dictates that Rule 404(b) applies only to evidence of "other crimes,

25  wrongs, or acts" that relate to character.  Without such a limitation, literally every act that an individual

26  undertakes in his or her life would be subject to Rule 404(b).  As Rule 404(b) is not limited to

27  defendants in criminal cases, see McCourt, 925 F.2d 1229, 1232 (9th Cir. 1991) (noting the Rule

28  applies to all persons), is not limited to prior acts, see Hinostroza, 297 F.3d at 928, and is not limited

1  to bad or unlawful acts, see United States v. Vega, 188 F.3d 1150 (9th Cir. 1999), then literally every

2  act that does not make up part of the allegations charged would require a Rule 404(b) analysis. Judicial

3  economy and logic cut against such a result.

4          Moreover, in criminal prosecutions–where the accused is entitled to pre-trial notice of the

5  prosecutor's intent to use "other act" evidence–the Rule would rewrite the Government's discovery

6  obligations. That is, Rule 16 of the Federal Rules of Criminal Procedure, the Jencks Act, and Brady

7  material would all be unnecessary, as every act the defendant ever did in his life would be subject to

8  disclosure by the Government. Such an overbroad reading of Rule 404(b) cannot stand.

9          Finally, if the Government were required to disclose "other acts" unrelated to character, than

10 it would have no defense against concocted stories by defendants. If a defendant took the stand and

11 made a false statement as to a material fact, the Government would be barred from disproving such a

12 fact on rebuttal or cross-examination if it had failed to provide pre-trial notice of the "other act." This

13 is especially true when the "other act" is unrelated to character. For example, in United States v.

14 Beverly, 5 F.3d 633, 640 (2d Cir. 1993), the defendant sought reversal of his conviction for various

15 drug trafficking and gun possession offenses. Among his contentions was that the trial court erred in

16 admitting evidence that he had committed other shootings in Albany on specific dates. On direct and

17 cross-examination, Defendant testified that he was in Long Island City, not Albany, on the

18 March 28, 1991 and March 29, 1991. See id. at 640. Through cross-examination and on rebuttal the

19 Government introduced evidence that Defendant committed two shootings in Albany on those dates.

20 See id. The Second Circuit upheld the admission of the evidence below, noting that "[o]nce a

21 defendant has put certain activity in issue by offering innocent explanations for or denying wrongdoing,

22 the government is entitled to rebut by showing that the defendant has lied." See id. at 639-40.

23         In a case where the Government's proof was not related to an "other crime," as was the case

24 in Beverly, but rather related to a defendant making a factual claim, unrelated to character, that the

25 Government could prove was false. For example, in a bank robbery case where the defendant testifies

26 that he was not the man witnesses saw running from the bank because on the date in question he had

27 a severely injured leg, or that it could not be him because he was in another city. If Rule 404(b) were

28 read to require pretrial notice of all "other act" evidence, even those unrelated to character, then the

1    Government would be barred from introducing evidence that Defendant was seen running a race on the

2    date in question, or that he was seen eating a sandwich in the town where the robbery took place just

3    minutes before the event. Rule 404(b), as indicated above, is a rule of inclusion, and should not be read

4    to limit evidence in such a way.

5         The limitations on evidence pronounced in Rule 404(b), and the pre-trial notice requirement

6    called for by the rule in criminal cases, does not apply to all "other act" evidence. The Rule covers

7    only evidence relating to an individual's character. Ninth Circuit case law, the locale of the Rule

8    within the Federal Rules of Evidence, and common sense dictate as much.

9              4.    The <u>Vega</u> Decision Does Not Change The 404(b) Analysis

10        It is anticipated that Defendant will cite this Court to <u>United States v. Vega</u>, 188 F.3d 1150 (9th

11   Cir. 1999), in support of a broad reading of Rule 404(b). In <u>Vega</u>, a jury convicted the defendant of

12   smuggling just under 90 pounds of marijuana into the United States through the Calexico, California

13   port of entry. <u>See</u> <u>id.</u> at 1152. During her trial, Vega testified that (1) she was in Mexico as a result

14   of an extra-marital affair, and (2) that she was using a friend's van because Vega's daughter was using

15   Vega's vehicle on a date in Mexico. <u>See</u> <u>id.</u> The Government cross-examined Vega regarding prior

16   trips to Mexico and prior bank deposits that occurred during the four weeks prior to her arrest.

17   Specifically, Vega admitted during cross-examination that she had made prior trips to Mexico that were

18   followed soon thereafter by cash deposits into her bank account. <u>See</u> <u>id.</u> at 1153. After this testimony,

19   the Government called two witnesses on its rebuttal case. The first witness testified to and provided

20   records of the Treasury Enforcement Communication System (TECS) that verified the dates and times

21   of Vega's prior crossings to which she admitted on cross-examination. The second witness testified

22   to and provided records of Vega's bank deposits, which confirmed the cash deposits following her trips

23   to Mexico.

24        On appeal, the Ninth Circuit reversed Vega's conviction, finding that the TECS records and

25   bank records provided by the rebuttal witnesses were subject to Rule 404(b) and therefore inadmissible

26   as a result of the Government's failure to comply with the rule's notice requirements. <u>See</u> <u>id.</u> at 1154-

27   55. In a one paragraph analysis, the Court held that the evidence was subject to rule 404(b). The Court

28   noted three points about the evidence that subjected it to coverage by Rule 404(b): (1) the court noted

1   that the rule applied not only to bad acts, but rather to any "other acts" even if not intrinsically

2   improper; (2) the district court recognized that 404(b) applied; and (3) the Government admitted that

3   it was offering the evidence for the purpose of demonstrating a common plan or scheme. See id. Thus,

4   the Court held that the use of the particular evidence by the Government fell within the of confines of

5   404(b) and therefore required notice by the Government. Since the Government failed to provide the

6   requisite notice, the conviction was reversed.

7        Vega, therefore, stands for the proposition for the Government to use extrinsic act evidence to

8   show that those other acts were part of a common scheme or plan, they must provide notice per

9   Rule 404(b). This holding is consistent with the plain language, the rationale, and the longstanding

10  jurisprudence of the Rule. There is nothing exceptional or new established by the Vega court.

11       Importantly, although Vega states that the "rule applies to all 'other acts,' not just bad acts,"

12  nowhere in the decision does it state that Rule 404(b) applies to other crimes, wrongs, or acts unrelated

13  to character. If the language "all other acts" were read in a vacuum, as discussed in detail above, then

14  Vega would render Rule 404(b), the discovery rules, and Brady meaningless. If the Ninth Circuit

15  desired to create such havoc on the discovery rules, it likely would have mentioned it somewhere in

16  its holding. In short, rather than create a new standard for admissibility, the Vega opinion reinforced

17  the plain language and understood meaning of Rule 404(b). The Rule admits evidence of other acts

18  that relate to character when offered for something other than propensity.

19       In this case, the Government has produced TECS information concerning prior crossings of the

20  license plates on the vehicle driven by the defendant in connection with this case as well as other

21  crossings made by the defendant. If this information becomes necessary for the United States to

22  present a coherent and comprehensible story of the defendants' commission of the instant crime, the

23  Government may seek to introduce such evidence. Moreover, if this or other TECS evidence is

24  unrelated to character and will not be used by the Government in its case-in-chief, the Government will

25  reserve the right to submit the evidence to rebut, contradict, or impeach just like any other evidence.

26       Accordingly, the Government should be permitted to offer TECS records and information at

27  trial for the jury's consideration.

28  //

1

**B.     THE COURT SHOULD PRECLUDE EXPERT TESTIMONY BY THE DEFENSE**

2

3          On April 21, 2008, the Court granted the United States' request for reciprocal discovery,

4   pursuant to Federal Rules of Criminal Procedure 12.2 and 16(b).  Therefore, Defendant must permit

5   the United States to inspect and copy or photograph any results or reports of physical or mental

6   examinations and of scientific tests or experiments made in connection with the particular case, or

7   copies thereof, within the possession or control of Defendant, which Defendant intends to introduce

8   as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends

9   to call at trial.  Moreover, the Defendant has provided neither proper notice of any expert witness, nor

10  any reports by expert witnesses regarding his anticipated testimony.  Accordingly, Defendant should

11  not be permitted to introduce any expert testimony.

12          **C.     THE COURT SHOULD EXCLUDE ALL WITNESSES EXCEPT CASE AGENT**

13          Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be

14  essential to the presentation of the party's cause" should not be ordered excluded from the court during

15  trial.  The case agent in the present matter has been critical in moving the investigation forward to this

16  point and is considered by the United States to be essential to presentation of the trial.  As such, the

17  case agent's presence at trial is necessary to the United States.

18          The United States requests that Defendant's testifying witnesses be excluded during trial

19  pursuant to Rule 615.

20

**D.     THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

21

22          Evidence of, and thus argument referring to, Defendant's health, age, finances, education and

23  potential punishment is inadmissible and improper.

24           "Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Rule 403 provides

25  further that even relevant evidence may be inadmissible "if its probative value is substantially

26  outweighed by the danger of unfair prejudice."  The Ninth Circuit Model Jury Instructions explicitly

27  instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or

28  sympathy."  § 3.1 (2000 Edition).

1    Moreover, it is inappropriate for a jury to be informed of the consequences of their verdict.

2    United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992).  Any

3    mention of penalty or felony status is irrelevant as it sheds no light on the Defendant's guilt or

4    innocence.  Therefore, the United States respectfully requests this Court to preclude any mention of

5    possible punishment at any point in this trial.

6    Reference to Defendant's health, age, finances, education and potential punishment may be

7    relevant at sentencing.  However, in an alien smuggling trial, such reference is not only irrelevant and

8    unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

9    **E.    SELF-SERVING HEARSAY IS INADMISSIBLE**

10    Defendant's out of court statements are inadmissible hearsay when offered by a defendant

11    through witnesses.  Defendant cannot rely on Fed. R. Evid. 801(d)(2) because the Defendant is not the

12    proponent of the evidence, and the evidence is not being offered against him.  Defendant cannot attempt

13    to have "self-serving hearsay" brought before the jury without the benefit of cross-examination.  See,

14    e.g., United States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v. Fernandez, 839 F.2d

15    639, 640 (9th Cir. 1988).

16    In this case, the United States anticipates that Defendant may attempt to have the United States'

17    witnesses testify about certain statements which Defendant made to inspectors.  Thus, the United States

18    moves, in limine, to prohibit Defendant from eliciting self-serving hearsay from: (a) the United States'

19    witnesses or (b) defense witnesses.

20    **F.    THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

21    The United States anticipates that Defendant may improperly attempt to introduce testimony

22    regarding Defendant's specific acts of prior good conduct.  Testimony as to multiple instances of good

23    conduct violates Federal Rule of Evidence 405(a).  United States v. Barry, 841 F.2d 1400, 1403 (9th

24    Cir. 1987);  Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985).

25    Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not

26    admissible for the purpose of proving a person's actions on a particular occasion except "evidence of

27    a pertinent trait of character offered by an accused or by the prosecution to rebut the same."

28    //

1    A character witness can not offer specific instances of conduct by the defendant which would

2    tend to support the reputation of the defendant. United States v. Giese, 597 F.2d 1170 (9th Cir. 1979)

3    cert. denied, 444 U.S. 972 (1979) (character witnesses must restrict their direct testimony to appraisals

4    of defendant's reputation); United States v. Hedgecorth, 873 F.2d 1307 (9th Cir. 1989) ("While a

5    defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence

6    of specific acts is generally inadmissible").

7    In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit

8    has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness"

9    and honesty is permissible. The appellate court, however, has held that asking a defense witness about

10    the defendant's propensity to engage in a specific type of criminal activity is not allowed under Rule

11    404(a). See United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992) (holding that it is impermissible to

12    ask a character witness about the defendant's propensity to engage in large scale drug dealing).

13    Defense counsel should also be prohibited from arguing or eliciting testimony or evidence

14    concerning a Defendant's lack of a prior criminal record. "Evidence of good conduct is not admissible

15    to negate criminal intent." United States v. Camejo, 929 F.2d 610, 613 (11th Cir. 1991). Under Rule

16    404(b), evidence of other acts, including other "good" acts (or the mere absence of prior "bad" acts),

17    are "not admissible to prove the character of a person in order to show action in conformity therewith."

18    Fed. R. Evid. 404(b). Furthermore, even when character evidence is admissible, evidence of specific

19    instances of conduct is not admissible unless "character or a trait of character of a person is an essential

20    element of a charge, claim, or defense." Fed. R. Evid. 405(b); see also Michelson v. United States, 335

21    U.S. 469, 477 (1948) ("The witness may not testify about defendant's specific acts or courses of [good]

22    conduct or his possession of a particular disposition or of benign mental and moral traits."). In

23    particular, testimony concerning Defendant's lack of a criminal record is inadmissible, unless such

24    character evidence is an essential element of the charge or defense. See, e.g., United States v. Thomas,

25    134 F.3d 975, 979-80 (9th Cir. 1998) (testimony concerning defendant's lack of a prior criminal record

26    admissible where defendant raises an entrapment defense, because defendant's character "is an

27    'essential element' of the defense" of entrapment; specifically, the prosecution must prove beyond a

28    reasonable doubt that defendant was predisposed to commit the crime); see United States v. Barry, 814

F.2d 1400, 1404 (9th Cir. 1987)("the trial court acted within its discretion in concluding that this general evidence of an absence of criminal conduct was not probative of appellant's state of mind at the time he committed the crime"); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989)(citing Barry with approval; "evidence of specific acts is generally inadmissible"); see also Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985)("testimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never be caught").

Thus, the United States hereby moves in limine to prohibit Defendant from introducing testimony from any character witness about (a) a specific instance of Defendant's conduct, and (b) Defendant's propensity to be involved in alien smuggling.

**G.     THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY**

A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and precluding evidence thereof if the defense is found to be insufficient. Fed. R. Crim. P. 12(b) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982) (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim. P. 12(e).

Generally, motions are capable of pretrial determination if they raise issues of law, rather than issues of fact. United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, defendant must establish a prima facie case that:

(1)     Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2)     Defendant had a well-grounded fear that the threat would be carried out; and

1    (3)    There was no reasonable opportunity to escape the threatened harm.

2    United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to

3    make a threshold showing as to each and every element of the defense, defense counsel should not

4    burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

5    A defendant must establish the existence of four elements to be entitled to a necessity defense:

6    (1)    that he was faced with a choice of evils and chose the lesser evil;

7    (2)    that he acted to prevent imminent harm;

8    (3)    that he reasonably anticipated a causal relationship between his conduct and the harm

9    to be avoided; and

10    (4)    that there was no other legal alternatives to violating the law.

11    See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court

12    may preclude invocation of the defense if "proof is deficient with regard to any of the four elements."

13    See Schoon, 971 F.2d at 195.

14    The United States hereby moves for an evidentiary ruling precluding defense counsel from

15    making any comments during the opening statement or the case-in-chief that relate to any purported

16    defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing

17    satisfying each and every element of the defense. The United States respectfully requests that the Court

18    rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury

19    nullification that would result from such comments.

20    **H.    UNITED STATES' RENEWED MOTION FOR RECIPROCAL DISCOVERY**

21    On April 21, 2008, the Court granted Government's motion for reciprocal discovery. As of the

22    date of the preparation of these motions, Defendant has produced no reciprocal discovery. The United

23    States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as

24    well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those

25    of Defendant. Defendant has not provided the United States with any documents or statements.

26    Accordingly, the United States will object at trial and ask this Court to suppress any evidence at trial

27    which has not been provided to the United States.

28    //

1

**IV**

2

**CONCLUSION**

3        For the above stated reasons, the United States respectfully requests that its motions <u>in limine</u>

4    be granted.

5        DATED: May 5, 2008

6                                                Respectfully submitted,

7
                                                KAREN P. HEWITT
8                                                United States Attorney

9                                                *s/ Lawrence A. Casper*
                                                LAWRENCE A. CASPER
10                                               Assistant United States Attorney
                                                Attorneys for Plaintiff
11                                               United States of America
                                                Email: Lawrence.Casper@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. No. 08CR0724-WQH |
| Plaintiff, | ) |
| v. | ) **CERTIFICATE OF SERVICE** |
| JOSE ELIAS CAMACHO-MELENDEZ, | ) |
| Defendant. | ) |

IT IS HEREBY CERTIFIED THAT:

I, LAWRENCE A. CASPER, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of GOVERNMENT'S MOTIONS IN LIMINE

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kasha Pollreisz, Esq., Federal Defenders of San Diego, Inc.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 5, 2008.

s/Lawrence A. Casper
LAWRENCE A. CASPER