**KASHA K. POLLREISZ**
California Bar No. 204148
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Tel: (619) 234-8467 / Fax: (619) 687-2666
kasha_pollreisz@fd.org

Attorneys for Mr. Camacho-Melendez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 08CR0724-WQH |
| Plaintiff, ) | |
| ) | MEMORANDUM OF POINTS AND |
| v. ) | AUTHORITIES IN SUPPORT OF |
| ) | DEFENDANT'S MOTIONS IN LIMINE AND |
| JOSE ELIAS CAMACHO-MELENDEZ, ) | OTHER TRIAL MOTIONS. |
| Defendant. ) | |

**I.**

**THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B) BECAUSE THE GOVERNMENT HAS PROVIDED NO NOTICE**

Federal Rules of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Under Rule 609, evidence of prior convictions are usually admissible only under certain circumstances and in the discretion of the court as well. Here, Mr. Camacho-Melendez timely requested notice of proposed Rule 404(b) and Rule 609 evidence in his discovery requests to the government. The government has given no notice of the intent to introduce 404(b) or 609 evidence to date with the exception of a vague reference to its discovery obligations to produce "tecs" if it intends to enter "tecs" into evidence under 404(b). [Gov. Motions pg. 10]. The "tecs" issue is addressed in another motion. This court gave the government a deadline of May 5, 2008, in order to produce any 404(b) evidence so the defense

1 would have the opportunity to respond. As of this date the defense has received nothing. As such, any
2 unnoticed evidence should be excluded from the trial based on a notice failure.

3       The government carries the burden of showing how any other acts evidence is relevant to one or more
4 issues in the case; thus, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence
5 may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.
6 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added);
7 accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). It is not sufficient to state merely that the
8 other act will be offered for one of the enumerated purposes. Instead, the government must state precisely
9 how the fact of consequence may be inferred from the other acts evidence. Because the government has
10 failed to articulate any precise 404(b) evidence it intends to introduce, nor any evidentiary hypothesis by
11 which a fact of consequence will be shown by this evidence, any and all other acts evidence must be excluded
12 under Rules 401 and 404(b).

13       Finally, prior to any admission of 404(b) evidence, the court must consider whether the evidence
14 would be more prejudicial than probative. In this case, any such evidence would be unduly prejudicial.
15 Therefore, the Court must exclude any 404(b) evidence under Rule 403.

16 **II.**

17 **MOTION FOR GRAND JURY TRANSCRIPTS**

18       The Court should make Grand Jury transcripts available when the defense can show a particularized
19 need. The particularized need is present in this case. The government must produce a transcript of a witness'
20 testimony before the Grand Jury following the direct examination of the witness at trial. 18 U.S.C. § 3500;
21 Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. P. 26.2(f)(3). The defense requests that the
22 government make such transcripts available in advance of trial to facilitate the orderly presentation of
23 evidence and to remove any need for a recess in the proceedings for defense counsel to examine the statement
24 pursuant to Fed. R. Crim. P. 26.2(d).

25 //
26 //
27 //
28 //

### III.

### MR. CAMACHO-MELENDEZ'S COUNSEL SHOULD HAVE THE OPPORTUNITY TO VOIR DIRE THE JURY

Pursuant to Fed. R. Crim. P. 24(a), to provide effective assistance of counsel and to exercise Mr. Camacho-Melendez's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury. Defense counsel is aware that it is the court's practice to conduct the voir dire itself, however, this case is different than the usual drug importation case. This case involves the smuggling of illegal aliens. These types of cases carry with it higher levels of biases, prejudices, and possible challenges for cause. Attorney conducted voir dire can help flush out some of these concerns. At times it is less intimidating to confess a bias or prejudice to an attorney asking questions, rather than a district court judge. As such, the defense is requesting an opportunity to conduct voir dire.

### IV.

### INTRODUCTION OF "MUG SHOTS" ARE HIGHLY PREJUDICIAL WITHOUT ADDING ANY PROBATIVE VALUE TO THIS TRIAL, THUS MERITING EXCLUSION UNDER FRE 403

There were "mug shot"-style pictures of Mr. Camacho-Melendez and the two material witnesses taken while he was in custody. These pictures have no place at this trial. This is not an identity case: Mr. Camacho-Melendez does not dispute that he is the individual arrested. Additionally, Mr. Camacho-Melendez does not contest there were two female material witnesses found within the truck. Accordingly, these pictures have no probative value. In contrast, however, their appearance automatically puts one in mind of a criminal, and is not unlike forcing a defendant to wear jail-issued clothing while in trial. Furthermore, the material witness photographs are highly prejudicial because it would invoke undue, irrelevant sympathy because of their appearance. Under FRE 403, these pictures are highly prejudicial and devoid of probative value. They should be excluded from trial as a result.

### V.

### ALL EXPERT WITNESSES OFFERED WITHOUT APPROPRIATE NOTICE TO MR. CAMACHO-MELENDEZ VIOLATES FEDERAL RULES OF CRIMINAL PROCEDURE 16(A)(1)(E) AND MUST BE EXCLUDED.

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to

use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications."  The obligation to provide this material is ongoing, continuing prior to and during trial. Fed. R. Crim. P. 16(c).  When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is a proper remedy.  Fed. R. Crim. P. 16(d)(2).  See also Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the defense is <u>entitled</u> to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis provided).

     Early in this case Mr. Camacho-Melendez filed pretrial motions requesting notice of any expert witnesses that the government intends to call at trial, including rebuttal.  Thus far, the government has given notice of expert testimony.  If the government seeks to offer any other expert testimony without 1) timely notifying Mr. Camacho-Melendez of the expert and his or her qualifications; 2) providing a summary of the expected testimony; and 3) providing a summary of the bases of the expert's opinion, this Court should exclude such witnesses from testifying at trial.  Mr. Camacho-Melendez respectfully requests that this Court grant a motion in limine accordingly, to give effect to the discovery requirements of Rule 16, and to afford the accused the opportunity to prepare his defense in this case.

## VI.

### THIS COURT SHOULD ORDER PRODUCTION OF ANY TECS OR OTHER COMPUTER-GENERATED HITS RELATED TO MR. CAMACHO-MELENDEZ OR THE TRUCK THAT CONTAINED THE ALIENS

     Mr. Camacho-Melendez requests the Court to order the government to produce any "TECS" or other computer-generated hits related to him or the truck that he was driving when he was arrested.  Furthermore, Mr. Camacho-Melendez requests "tecs" on individuals passing through the port of entry lane that Mr. Camacho-Melendez passed through on the day he was arrested.  Specifically the first seven cars and drivers in front of Mr. Camacho-Melendez and the first seven cars and drivers behind Mr. Camacho-Melendez.

     It may be part of Mr. Camacho-Melendez's defense that the truck he was driving on the day he was arrested had been out of his control for sometime since he has always maintained that this was the "company's truck".  Furthermore, it may be that Mr. Camacho-Melendez argues that someone else is

responsible for putting the aliens into the truck. In closing arguments, the government always argues, "Why would someone entrust an unknowing courier? Why would someone let go of a merchandise worth so much money?" However, this argument fails if the individuals who are responsible are following Mr. Camacho-Melendez to keep watch over their "merchandise." As such the information sought is potentially exculpatory. Mr. Camacho-Melendez is willing to give the court an *ex parte* proffer to the court in order for the court to better understand the relevance. Furthermore, any information that other persons had driven the truck across the border or that the truck was under investigation could tend to exculpate Mr. Camacho-Melendez by strengthening a theory that another person with access to the truck was responsible for hiding aliens there.

## VII.

### THE TECS INFORMATION IS INADMISSIBLE AS IT IS BOTH IRRELEVANT & UNRELIABLE

In this case, the government produced evidence of "TECS" indicating that Mr. Camacho-Melendez has crossed through the port of entry on other occasions. Furthermore, it is common practice of the government to enter tecs of the license plate of the vehicle. Both of which should be excluded. As of this date, the government has not indicated how this would be relevant, or under what theory the tecs qualify as 404(b) evidence. As such, the issue is not resolved as to the admissibility of the TECS evidence as substantive evidence of guilt in this case.

The defense objects to admission of the TECS information in any format as inadmissible Rule 404(b) and without evidentiary basis for admission. Not only is it irrelevant, it is overly prejudicial under Rule 403 and it should be excluded.

**A.   The TECS Information Is Inadmissible.**

The TECS information shows various dates of border crossings by the license plate attached to the truck. There is no evidence that Mr. Camacho-Melendez was involved in any ongoing smuggling activities which would make this evidence relevant. This evidence is inadmissible in the government's case-in-chief. If something in the defense renders it relevant, it may become an issue for rebuttal.[1] However, Mr. Camacho-

---

[1] For example, if the defendant testifies and denies crossing the border, it may be admissible in some format. However, if the defendant admits *Vega*, 188 F.3d at 1153 ("Although not necessary for our resolution of this appeal, we agree with Vega that the prosecution's two witnesses were improper rebuttal

Melendez has always maintained that he was driving the "company truck". As such, there is nothing to impeach.

In order to admit this evidence, the government would have to lay the proper foundation under Federal Rule of Criminal Procedure 16, Federal Rules of Evidence 404(b), 702, the hearsay rules and the Confrontation Clause of the Sixth Amendment. The defense position is that in either case-in-chief or in rebuttal, it is inadmissible because: 1) it is improperly noticed Rule 404(b) evidence; 2) it is undisclosed expert testimony; and 3) there is no hearsay exception which should be available to the government: it cannot rely upon Federal Rule of Evidence 803(6). See United States v. Orozco, 590 F.2d 789, 793 (9th Cir. 1979) (TECS are not admissible under rule 803(6)). In order to admit these documents under Rule 803(8), which the Orozco case permits under some circumstances[2]; the foundational requirements of Orozco, which includes a reliability inquiry, must be satisfied. Id. at 792.

**B.     The Government has Failed to Give Proper Rule 404(b) Notice.**

This Circuit clearly recognizes that prior border crossings are considered prior act evidence and subject to Rule 404(b) analysis. United States v. Vega, 188 F.3d 1150, 1153 (9th Cir. 1999) ("evidence of

---

witnesses because there was nothing to rebut. The district court committed error in admitting their testimony and corresponding documentary evidence").

[2] The defense contends that Orozco is wrong and this Court should not follow it. Even the panel decision recognizes that it conflicts with the plain language of Rule 803(6), see id. 590 F.2d at 792 ("noting that Rule 803(8) provides that is scope "exclud[es], however in criminal cases matters observed by police officers and other law enforcement personnel . . . ." and noting that "the customs inspector is one of the 'law enforcement personnel' included in rule 803(8)"). Government reports, which these are, are inadmissible under the public records exception. Fed. R. Evid. 803(8)(c), Advisory Comm. Note ("they are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case"); see also United States v. Oates, 560 F.2d 45 (2d Cir. 1977) (cited in the FRE commentary expressly discusses the Rules 803(6) and 803(8) interplay and finds government reports inadmissible under both).

In addition, the inadmissibility of these documents under Rule 803(8)(c) cannot be cured by offering them pursuant to Fed. R. Evid. 803(6). Rule 803(6) does not, by its terms, "apply to [investigations made pursuant to authority granted by law and the] findings of agencies and offices of the executive branch," United States v. Jones, 29 F.3d 1549 (11th Cir. 1994); as does Rule 803(8)(c). It is "inappropriate" to rely upon the business records exception when the language of Rule 803(8)(c) is clearly applicable. United States v. Sims, 617 F.2d 1371, 1377 (9th Cir. 1980); Alexander, The Hearsay Exception for Public Records in Federal Criminal Trials, 47 Alb. L. Rev. 699, 716-17 (1983).

1  Vega's prior border crossings and bank deposits is "other acts" evidence subject to the provisions of Rule
2  404(b)"). The Court noted that "[a]s an initial matter, we note that this rule applies to all "other acts," not
3  just bad acts. Thus, despite the fact that there is nothing intrinsically improper about Vega's prior border
4  crossings . . . they are nonetheless subject to 404(b). " Id.   Since the prosecutor has not properly indicated
5  that he intends on introducing any Rule 404(b) evidence, he should be bound by his lack of notice. If he now
6  wishes to introduce this as some sort of Rule 404(b) in his case, he must establish the link to Mr. Camacho-
7  Melendez and the relevance to his theory of prosecution as well as satisfy the strictures of Rule 404(b).   He
8  has provided no indication that either exists.

**C.     The TECS Testimony is Undisclosed Expert Testimony.**

The tecs reports would have to be entered into evidence by some witness.  Simply because the proposed witness is not rendering any "opinions" does not remove this testimony from the realm of "expert testimony." In fact, the law provides to the contrary. According to Federal Rule of Criminal Procedure 702, the assumption that "experts testify only in the form of opinions . . . . is logically unfounded." Fed. R. Crim. P. 702 advisory committee's note. Rule 702 similarly provides that the expert testimony can be based on "specialized knowledge," and cases indicate that the amendments to Rules 701 and 702 were made so as to prevent litigants from avoiding the expert witness disclosure requirements by labeling individuals as fact or laywitnesses and not soliciting "opinion" testimony. In re Matter of the Complaint Illusions Holdings, Inc., 189 F.R.D. 316 (S.D.N.Y.1999). The Complaint Illusions case involved a negligence claim surrounding a scuba diving accident. Defendants listed two witnesses who knew nothing about the facts and circumstances of the case but purported to know much about scuba diving. Plaintiff argued that their testimony was expert testimony and sought to exclude it. Even though it was factually based and the witnesses would merely describe things related to scuba diving, the court held that it was expert testimony because it was based upon the specialized knowledge related to scuba diving, testified to by individuals, who otherwise had no connection to the case. Id.; see also Giles v. Rhodes, 2000 WL 1425046 (S.D.N.Y., Sep 27, 2000) (NO. 94 CIV. 6385 (CSH)) (even though witness was not to give any opinions whatsoever, testimony was based on specialized knowledge and not on any personal involvement in the case, thus was inadmissible as

1 undisclosed).³

It is anticipated that this proposed testimony will be based upon the expert's "specialized knowledge," received by virtue of his position as a Customs Agent, the fact that he received training as a customs inspector on how to use the TECS system, that such training was multi-month formal training, including "on-the-job training." See United States v. Oceguerra, 01 Cr 2388-(BTM) at RTIII: 314-315. It is not uncommon that the proposed TECS expert witness has no personal involvement with or knowledge of the facts of this particular case.

All of these facts clearly establish that this is heretofore undisclosed expert testimony, prejudicial to the defense, the reliability of which has never been properly litigated and the defense apparently will not be permitted a pre-trial opportunity to voir dire and seek to exclude or controvert the expert's opinion, pursuant to Federal Rule of Criminal Procedure 16 and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

**D.     No Hearsay Exception Permits This Testimony In Light Of Its Unreliability.**

In Orozco, this Circuit expressly conditioned its admission of the TECS documents on the testimony of the TECS custodian that when an individual inputs the data, the machine has a mechanism permitting any mistakes to be viewed and corrected. See Orozco, 590 F.2d at 792. Here, the TECS is facially invalid, thus, this correction process could not have occurred. The undersigned has located transcripts where government witnesses have indicated unreliability in the TECS information. Under Orozco, the TECS is not admissible "if the sources of information or other circumstances indicate lack of trustworthiness." 590 F.2d at 794. The TECS itself and the previous testimony indicate such a lack of trustworthiness.

**VIII.**

**THIS COURT SHOULD PRECLUDE TESTIMONY BY THE MATERIAL WITNESSES REGARDING PURPORTED FINANCIAL ARRANGEMENTS**

**A.     The Material Witnesses Lack Personal Knowledge of the Purported Financial Arrangements for Their Smuggling.**

At least one material witnesses, if not both, lacks personal knowledge of the financial arrangements (if any) made in connection with their trip to the United States. Because they lack personal knowledge, their

---

3     There are no cases directly addressing whether or not testimony about the TECS system in general and as applied, is that for an expert or a laywitness -- in no case it appears that this issue was litigated.

testimony is inadmissible.  See Fed. R. Evid. 602, 701, 702.  Mr. Camacho-Melendez objects to their testimony on this basis.

To the extent the government attempts to have the material witnesses testify as to what they were told about the financial arrangements (if any) made for their journey, the government is seeking to introduce hearsay.  The only relevance the statements would have is substantive.  They are relevant only as they tend to prove the financial gain allegations in the Indictment.  As such, the government would be offering the statements for their truth; that someone received a financial gain to facilitate their journey.  See Fed. R. Evid. 801.  As such, they are subject to the general prohibition against hearsay evidence.  See Fed. R. Evid. 802.

In order to admit other people's statements regarding the financial arrangements, the government bears the burden of demonstrating an exception to the hearsay rule.  See e.g., United States v. Paguio, 114 F.3d 928, 932 (9th Cir. 1997) (proponent bears burden of demonstrating exception for statements against interest).   Furthermore, their admission would also violate Mr. Camacho-Melendez's constitutional rights.  Not only would their admission violate Crawford v. Washington, 541 U.S.36, 124 S. Ct. 1354 (2004), their admission would violate the Supreme Court's pre- Crawford confrontation clause jurisprudence.  As the Nazemian court noted in a pre-Crawford case, a "hearsay statement is admissible without violating the confrontation clause *only if* the declarant is unavailable and if the statements bear adequate 'indicia of reliability.'"  948 F.2d at 533 (emphasis added).  And as noted above, the government has failed to demonstrate any circumstances under which other people's statements were made, let alone "circumstances which indicate the trustworthiness of the statement[s]."  Nazemian, 948 F.2d at 530.  At least one, if not both, material witnesses lack personal knowledge of the financial arrangements to have them brought to the United States.  As such, the court must preclude all hearsay statements regarding the financial arrangements for the two material witnesses to be brought to the United States.

### IX.

**PURSUANT TO UNITED STATES V. GONZALEZ-FLOREZ, THIS COURT SHOULD EXCLUDE EVIDENCE ABOUT THE DETAILS OF THE MATERIAL WITNESSES' PHYSICAL OR MEDICAL CONDITIONS**

**A.   Introduction.**

At secondary inspection Mr. Camacho-Melendez was asked again where he was going and if the vehicle belonged to him.  Mr. Camacho-Melendez once again explained that he was going to buy washers

1  and the pick up truck belonged to the company he worked for. The officer asked Mr. Camacho-Melendez
2  to open the hood. Mr. Camacho-Melendez unlatched the hood release from inside the vehicle and proceeded
3  to the secondary lobby to pay for the user fees.

4  The officer opened the hood to the truck and noticed two bodies inside of the engine compartment.
5  The officer closed the hood immediately and ran to the vehicle secondary lobby to stop Mr. Camacho-
6  Melendez. The officer caught up with Mr. Camacho-Melendez just inside the lobby doors. The officer
7  pushed Mr. Camacho-Melendez against the wall and conducted a patdown. The officer placed Mr. Camacho
8  in an "escort hold" and brought him to a holding cell.

9  After returning to the pick up truck, the officer had a canine search the vehicle. The canine alerted
10 to the vehicle. The hood was raised and two female undocumented aliens were seen inside the engine
11 compartment lying on the top of the fender wells of the truck. The officers removed the aliens from the truck.
12 The officers asked one alien, Audelia Torres Guiterrez, if she was alright in both English and Spanish.
13 Ms. Torres just looked back at him and said nothing. The shoes Ms. Torres was wearing was smoking from
14 the heels. She was carried into the office and given water.

15 Material Witness, Angelica Reyes-Valenzuela was taken to El Centro Regional Medical Center by
16 ambulance doe to burns on her right foot. She was medically cleared with a diagnosis of second degree burns
17 to her right foot. Several photographs and reports depict her burns and the condition that she was in at the
18 time she was removed from the truck.

19 Material witness, Audelia Torres-Gutierrez, was also taken to the hospital. She was diagnosed with
20 first and second degree burns and then released. There are several medical records, photos, and reports
21 depicting the physical condition of Ms. Torres-Gutierrez.

22 **B.     Argument.**

23 In United States v. Gonzalez-Flores, 418 F.3d 1019 (9th Cir. Aug. 12, 2005), the Court considered
24 whether it was error to admit testimony about the heat stroke suffered by two material witnesses. Id. at 1097-
25 99. The Court held that admission of this evidence violated Fed. R. Evid. 403 and should have been
26 excluded. As is obvious, the defendant in Gonzalez-Flores had been charged with bringing in illegal aliens
27 in violation of 8 U.S.C. § 1324(a)(1)(A)(I). Id. at 1095. During trial, a Border Patrol agent described finding
28 two of the female aliens, who needed "immediate medical care, advanced medical care." Id. at 1097. The

agent explained to the jury that he believed the cause of the medical distress to be "[h]eat exhaustion turning into heatstroke." Id. (alteration in original). He further disclosed to the jury that on the flight to the hospital one of the girls stopped breathing, which required resuscitation by rescue breathing. Id.

The district court denied the defendant's motion for a judgment of acquittal and for a mistrial, which followed the close of the government's case. Id. at 1097. The defendant argued that admission of this evidence regarding the two girls' heat stroke violated Fed. R. Evid. 402, 403 or both. Id. The court denied both motions and, as to the mistrial motion, explained that the testimony in question "helps to explain the circumstances of the other testimony of why [the defendant] left to find water and to determine whether he was in fact assisting in bringing people into the United States" and "was so prejudicial." Id. The defendant appealed after being convicted. Id.

The Court, however, concluded differently and held that "the evidence should have been excluded under Rule 403, which prohibits evidence whose 'probative value is substantially outweighed by the danger of unfair prejudice.'" Id. at 1098. It explained that the probative value of evidence against a defendant is low where the evidence does not go to an element of the charge. Id. The Court examined the applicable jury instruction (Ninth Circuit Model Criminal Jury Instruction 9.1 (2003)) and noted that the girls' heat stroke did not affect the probability of any of the instruction's elements:

> The heat stroke is a mere detail in the story of the offense. The district court specifically ruled that the indictment's reference to the girls' injuries was surplusage because it was an issue relevant to sentencing rather than an element of the offense. We agree. Because testimony about the girls' heat stroke does not go to any of the elements of the crime with which Gonzalez was charged, we must consider its probative value low.
>
> ***
>
> Though the prosecution did not devote a great deal of time to the girls' heat stroke, the testimony presented certainly could have prejudiced Gonzalez unfairly. The border agent's description of the young age and dire condition of the two girls--both of whom needed to be flown to a hospital and one of whom required resuscitation by rescue breathing--very well could have triggered an emotional response from the jury members, who were likely to be sympathetic to the girls and consequently want to punish the man who caused their heat stroke by bringing them into the desert with insufficient water.

Id. at 1098. The Court held that a "modest likelihood of unfair prejudice" existed and that the evidence about the two girls' heat stroke had "an undue tendency to suggest decision on an improper basis. Id. at 1099 (citing Old Chief v. United States, 519 U.S. 172, 180 (1997)). Accordingly, admission of such evidence was error because the likelihood of unfair prejudice was high enough to outweigh the minimal probative value under

Rule 403. See Gonzalez-Flores, 418 F.3d at 1099.

For these same reasons set forth in Gonzalez-Flores, this Court should conclude that evidence of the material witnesses' physical and medical conditions has a tendency to suggest decision on an improper basis. If anything, the facts of the instant case militate more strongly for exclusion than those confronted by the Ninth Circuit as evidence of one material witness's burns and the photographs that depict the burns, will "trigger[] an emotional response from the jury members, who [are] likely to be sympathetic to the girls and consequently want to punish [Mr. Camacho-Melendez]." Id. at 1098. A very real and serious emotional distinction exists between heat exhaustion/heatstroke and being physically burned by a truck engine. The latter of such conditions would like garner much greater sympathy from a jury. Furthermore, as in Gonzalez-Flores, this evidence does not affect the probability of any of the elements of the charged offenses under § 1324. This Court should, therefore, exclude such evidence pursuant to Fed. R. Evid. 401, and 403.

## CONCLUSION

For the foregoing reasons, Mr. Camacho-Melendez respectfully requests that this Court grant these motions in limine, as well as these other motions for trial.

Respectfully submitted,

s/ *Kasha K. Pollreisz*

DATED: May 5, 2008

KASHA K. POLLREISZ
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Camacho-Melendez
kasha_pollreisz@fd.org