KAREN P. HEWITT
United States Attorney
LAWRENCE A. CASPER
Assistant U.S. Attorney
California State Bar No. 235110
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7455/(619) 235-2757 (Fax)
Email: Lawrence.Casper@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal Case No. 08CR0724-WQH |
| Plaintiff, | ) |
| | ) IN LIMINE DATE:    May 19,2008 |
| | ) TIME:                      2:00 p.m. |
| v. | ) TRIAL DATE:       May 20, 2008 |
| | ) TIME:                      9:00 a.m. |
| | ) |
| JOSE ELIAS CAMACHO-MELENDEZ, | ) UNITED STATES' RESPONSE IN OPPOSITION |
| | ) TO DEFENDANT'S MOTIONS IN LIMINE TO: |
| Defendant. | ) (A)    PRECLUDE EVIDENCE UNDER 404(B); |
| | ) (B)    ORDER PRODUCTION OF GRAND |
| | )          JURY TRANSCRIPTS; |
| | ) (C)    GRANT   ATTORNEY CONDUCTED |
| | )          VOIR DIRE; |
| | ) (D)    EXCLUDE  EVIDENCE  OF  "MUG |
| | )          SHOT" PHOTOS; |
| | ) (E)    EXCLUDE   PROPOSED   EXPERT |
| | )          TESTIMONY WITHOUT NOTICE; |
| | ) (F)    ORDER PRODUCTION OF TECS; |
| | ) (G)    EXCLUDE TECS FROM TRIAL; |
| | ) (H)    PRECLUDE   TESTIMONY   BY |
| | )          MATERIAL WITNESS; and |
| | ) (I)    EXCLUDE EVIDENCE OF MATERIAL |
| | )          WITNESS CONDITION |
| | ) |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

KAREN P. HEWITT, United States Attorney, and LAWRENCE A. CASPER, Assistant United States

Attorney, and hereby files its Motions in Limine.  These Motions are based upon the files and records

of the case together with the attached statement of facts and memorandum of points and authorities.

1

**I**

2

**STATEMENT OF THE CASE**

3      A federal grand jury on March 12, 2008 handed up a four-count Indictment charging Defendant

4   Jose Elias Camacho-Melendez with: (1) two counts of bringing in illegal aliens for financial gain in

5   violation of 8 U.S.C. § 1324(a)(2)(B)(ii); and (2) two counts of bringing in illegal aliens without

6   presentation in violation of 8 U.S.C. § 1324(a)(2)(B)(iii).  On March 13, 2008 Defendant entered a not

7   guilty plea before the Magistrate Judge.

8      On April 1, 2008, Defendant filed motions to: (1) compel discovery; (2) preserve evidence; (3)

9   dismiss indictment due to improper grand jury instructions; and (4) leave to file further motions.  On

10  April 7, 2008, the United States responded to each of the above-described motions and filed its motion

11  for reciprocal discovery.  On April 21, 2008, the Court granted the United States' motion for reciprocal

12  discovery and granted Defendant's motion to preserve evidence.  The Court deferred ruling on the

13  Defendant's other motions and set a hearing on motions in limine for May 19, 2008.

14

**II**

15

**STATEMENT OF FACTS**

16  **A.    Primary Inspection**

17      On February 27, 2008, at approximately 4:20 a.m., a 1987 white Ford F-250 pickup truck bearing

18  Baja, California, Mexico license plate (BL16919) approached primary lane 6 at the Calexico, California

19  West Port of Entry.  Defendant Jose Elias Camacho-Melendez (Defendant) was the driver and sole

20  visible occupant of the vehicle.  Customs and Border Protection Officer Fonseca, the primary officer,

21  was handed the Defendant's border crossing card (DSP-150) and was given a negative customs

22  declaration by him.  CBPO Fonseca questioned Defendant regarding his destination and ownership of

23  the vehicle.  Defendant claimed he was going to Las Palmas, a swap meet in Calexico, California to buy

24  washers and claimed that the truck belonged to his company.

25      Defendant claimed that he had worked for the company for a few months and had crossed before.

26  CBPO Fonseca told Defendant that he would need to pay a user fee of $10.75. Defendant mentioned that

27  he had previously attempted to buy a one-time decal sticker at the Calexico East Port of Entry so that

28  he would not have to pay each time he crossed into the United States but that no one at Calexico East

1    could help him.  CBPO Fonseca referred the vehicle to the secondary lot for further inspection and for

2    the user fee.

3         **B.    <u>Secondary Inspection</u>**

4         At secondary, the vehicle was inspected by CBPO Justin VanArsdall; he observed the vehicle

5    enter the secondary lot and examined the referral slip on the vehicle.  CBPO VanArsdall obtained a

6    negative customs declaration from Defendant.  Defendant told CBPO VanArsdall that he was going to

7    buy washers and that the vehicle belonged to the company for which he worked.  CBPO VanArsdall

8    asked the Defendant to open the hood.  Defendant unlatched the hood release from inside the cab.

9    Immediately upon unlatching the hood and before it was actually opened by the CBPO, Defendant

10   proceeded southbound toward the vehicle secondary lobby area where the cashiers office – the location

11   to pay the user fee – is located.  While Defendant was proceeding in that direction, CBPO VanArsdall

12   opened the hood of the vehicle and immediately noticed two bodies inside of the engine compartment.

13   CBPO VanArsdall immediately pursued the Defendant and caught up with him in the vehicle secondary

14   lobby just inside the doors.  CBPO VanArsdall conducted an immediate patdown of Defendant and

15   escorted him into the vehicle secondary office.  CBPO VanArsdall completed a pat down of Defendant

16   in a private cell which was witnessed by CBPO Supervisor Olivas; that pat down was negative.

17        CBPO VanArsdall returned to the vehicle and CBP Canine Officer Brent Pyburn, who had

18   approached the vehicle with his canine after CBPO VanArsdall had pursued the Defendant into the

19   vehicle secondary lobby but before VanArsdall returned, informed VanArsdall that his narcotics detector

20   dog had alerted to the vehicle.  Two females, who were subsequently determined to be undocumented

21   aliens, were seen inside the engine compartment lying on top of the fender wells.  The female on the

22   driver's side had nothing separating her from the engine.  The female on the passenger side of the engine

23   compartment had a small piece of plywood between her and the engine.

24        CBP Canine Officer Pyburn and CBPO VanArsdall removed a female later identified as Audelia

25   Torres Gutierrez from the passenger side of the engine compartment.  Upon removing her, CBPO

26   VanArsdall asked her if she was alright in both Spanish and English; she just stared blankly back at him.

27   She was unable to stand on her own and was perspiring heavily.  The shoes that she was wearing were

28   smoking from the heels and appeared to be melted and burning as were the leather uppers of her shoes.

Canine Officer Pyburn removed her shoes and she was carried to the vehicle secondary office where she was given some water.  The female on the driver's side of the passenger compartment, who was later identified as Angelica Reyes Valenzuela, was also removed.  She was cramped into an extremely tight fetal position and had her head between the master brake cylinder and the inner fender, with her feet against the radiator.  She had no shoes on her feet but instead had only socks.  She had to be assisted from her position as well.

Defendant was subsequently read his <u>Miranda</u> rights and invoked.  Defendant had $41 dollars in U.S. currency and no Mexican currency in his possession upon arrest.

**C.    Defendant's Criminal Record**

At this time, the Government is not aware of any criminal convictions or arrests of Defendant.

**D.    Statements of Material Witnesses**

Each of the two aliens smuggled in the engine compartment provided a statement admitting to being a Mexican citizen with no legal right to enter or remain in the United States.  Each admitted to being smuggled for financial gain.  Neither was able to identify the Defendant through a photo line up.

**E.    Criminal History of Defendant**

The Defendant has no known criminal convictions.

### III

### ARGUMENT

**A.    THE COURT SHOULD ADMIT EVIDENCE THAT DEFENDANT CONTENDS IS 404(B)**

Although the United States' motions <u>in</u> <u>limine</u> addressed, in detailed fashion, the pertinent evidence that Defendant now contends is 404(B), the United States briefly sets forth below the factual circumstances surrounding this evidence, the notice given by the United States, and the relevant materials that were provided to the Defendant in discovery in this case.  Defendant's motion <u>in</u> <u>limine</u> mischaracterizes the factual context or else, due to the timing of the filings in this case, the Defendant had not yet reviewed the materials forwarded by the United States on May 5, 2008 when his motions <u>in</u> <u>limine</u> were filed.

On May 5, 2008 – consistent with this Court's instructions during the April 21, 2008 hearing

1   – the United States provided written notice both by letter (see Appendix 1, Letter from AUSA

2   Lawrence A. Casper to Kasha Pollreisz, Esq., Federal Defenders of San Diego, Inc., dated May 5,

3   2008) and in the United States' motions in limine (at pages 4-13) of evidence that the United States

4   believed might arguably be considered Rule 404(B) evidence.  On the same day, counsel for the United

5   States turned over 39 pages of Treasury Enforcement Communication Systems (TECS) discovery to

6   the Defendant (Discovery at pages 179-218).  The United States specifically informed the Defense that,

7   "although the Government does not necessarily believe that TECS data constitutes "other act" evidence

8   under Federal Rule of Evidence 404(B), in an abundance of caution, this letter will serve as notice that

9   the Government, at trial, may introduce testimony and other evidence regarding TECS data."  See

10  Appendix 1.  Moreover, the United States informed the Defendant that "this evidence relates to

11  Defendant's crossing history at the United States-Mexico border as well as the crossing history of

12  vehicles driven and/or registered to Defendant."  See Appendix 1.  In addition, in its motion in limine,

13  the United States advised that, "the fact that the Defendant crossed from Mexico into the United States

14  in the same vehicle at issue in this case two days earlier as well as his other recent crossings in this or

15  other vehicles may be offered as evidence that is 'inextricably intertwined'" with this case.

16          The United States also advised that, although it did not believe that she was an expert witness

17  under Federal Rule of Evidence 16(a)(1)(G),  Customs and Border Protection Officer Diana Contreras

18  might provide evidence/testimony regarding TECS data at trial.  The letter sent by counsel for the

19  United States specifically advised the Defendant that Officer Contreras would testify "regarding the

20  maintenance and generation of TECS data and will explain the TECS data pertinent to this case."  See

21  Appendix 1.

22          As detailed in the United States' motion in limine (at pages 4-13), irrespective of whether this

23  TECS evidence is considered to be "inextricably intertwined" or considered under Rule 404(B), it

24  should, nevertheless, be admitted.

25

26  **B.     DEFENDANT'S REQUEST FOR GRAND JURY TRANSCRIPTS SHOULD BE
        DENIED**

27          Defendant requests that the United States turn over grand jury transcripts in advance of trial.

28  The United States will comply with 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2.

The United States does not intend to call any witness that testified before the grand jury in its case-in-chief. Thus, this request appears to be moot. Defendant has made no showing of "particularized need" for grand jury transcripts in this case and thus the veil of secrecy surrounding grand jury proceedings should not be pierced.

"A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists . . . which outweighs the policy of secrecy." In re Grand Jury Proceedings, 62 F.3d 1175, 1178 (9th Cir. 1995) (citation omitted). The typical "particularized needs" include impeachment, refreshing the recollection of, or testing the credibility of witnesses who testify at trial. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 n.12 (1979). A district court does not abuse its discretion in refusing to order the disclosure of grand jury transcripts for a witness who does not testify at trial. United States v. Daras, 462 F.2d 1361, 1362 (9th Cir. 1972) (per curiam). In fact, the Ninth Circuit has specifically found that a defendant's request for grand jury transcripts in order to "determine whether the testimony of law enforcement officers [who testified before the grand jury] improperly summarized the testimony of other agents" does not constitute a particularized need. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986). The United States will, however, comply with its Jencks Act obligations. Defendant's motion for grand jury transcripts should be denied.

## C.    THE GOVERNMENT DOES NOT OPPOSE ATTORNEY CONDUCTED VOIR-DIRE

The United States has no objection to properly limited attorney-conducted voir-dire, provided it is afforded the same amount of time provided to Defendant.

## D.    THE GOVERNMENT DOES NOT INTEND TO INTRODUCE THE PHOTOGRAPHS OF DEFENDANT TAKEN ON THE DAY OF HER ARREST UNLESS THEY BECOME RELEVANT

Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence.

Fed. R. Evid. 401. Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402. At the moment, it is unclear why Defendant's photograph would be relevant. However, if

it becomes relevant, the United States should be permitted to introduce it (i.e., to establish his identity).

As to the material witnesses, however, their photographs taken on the day of this smuggling venture are, of course, highly relevant and not unduly prejudicial; accordingly, the United States should be permitted to use those photographs during trial. In fact, the placement of the material witnesses within the vehicle and their physical condition is significant given that Defendant is expected to contend that he had no knowledge of the material witnesses in the hood of the vehicle in which he was the driver and sole visible occupant at the time of the crossing. Nor is the substantial probative value of those photographs outweighed by the danger of unfair prejudice in this case. The material witness photographs should be admitted.

### E.    THE UNITED STATES WILL PROVIDE APPROPRIATE NOTICE TO DEFENDANT OF ITS EXPERT WITNESSES

As detailed above, the United States has already provided notice of testimony regarding TECS although not believed to qualify as expert testimony under Rule 16(a)(1)(G); that notice informed Defendant of the individual through him such TECS would be brought into evidence and the nature of that evidence which is contained within materials already provided to Defendant in discovery. Moreover, the United States has, by letter, also given notice that it intends to call an automotive mechanic to testify regarding the modifications made to the vehicle in this case to create the compartments in which the material witnesses were located under the hood, the impact those modifications had on the operation of the vehicle, and how certain of those modifications would have manifested themselves to a driver or occupant of the vehicle. See Letter dated May 12, 2008 (Appendix 2, hereto).

Accordingly, there is no basis upon which to preclude the testimony of these witnesses.

### F.    THE COURT SHOULD DENY DEFENDANT'S MOTION TO ORDER PRODUCTION OF ANY TECS OR OTHER COMPUTER-GENERATED HITS RELATED TO DEFENDANT OR THE TRUCK THAT HE WAS DRIVING ON THE DAY OF HIS ARREST

To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984); United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984). A defendant must make a specific request for an item and articulate

1    how it is helpful to the defense.  See, United States v. Olano, 62 F.3d 1180, 1203 (9th Cir. 1995).

2    Defendant must show "more than that the [item] bears some abstract logical relationship to the issues

3    in the case. . . There must be some indication that the pretrial disclosure of the [item] would . . .enable[]

4    the defendant significantly to alter the quantum of proof in his favor."  United States v. Ross, 511 F.2d

5    757, 762-63 (5th Cir. 1975).

6         Preliminarily, the United States notes that it has already produced the TECS crossings

7    concerning the vehicle used by the Defendant to cross on the day of his arrest.  Defendant, however,

8    without anything more than a claim that this information somehow bears an abstract relationship to the

9    issues in this case, now seeks to require the United States to produce TECS records relating to "the first

10   seven cars and drivers in front of Mr. Camacho-Melendez and the first seven cars and drivers behind

11   Mr. Camacho-Melendez" on the date of his arrest.  Defendant's speculation that somehow this

12   information might be helpful to his defense is nothing more than a fishing expedition.  The mere fact

13   that defendant may be able to craft a more consistent story given access to possible impeachment

14   evidence does not make the documents themselves relevant or material.  United States v. Gonzalez-

15   Rincon, 36 F.3d 859, 865 (9th Cir. 1994); see United States v. Gleason, 616 F.2d 2, 25 (2d Cir. 1979)

16   (The Government is not obligated by Rule 16(a) to anticipate every possible defense, assume what the

17   defendant's trial testimony . . . will be, and then furnish him with otherwise irrelevant material that

18   might conflict with his testimony.").  Nor does Rule 16 require the Government to disclose rebuttal

19   evidence intended for use against a line of defense at trial.  See United States v. Delia, 944 F.2d 1010,

20   1017-18 (2d Cir. 1991)(government is not required to disclose rebuttal evidence which it intends to use

21   against a proposed line of defense).  Defendant has not made any showing that other TECS records will

22   be material to his defense.  Accordingly, Defendant's motion for these TECS records should be denied.

23

24        **G.    TECS EVIDENCE SHOULD BE PERMITTED AT TRIAL**

25        As detailed in Section III A above and at pages 4-13 of the United States' motions in limine,

26   TECS evidence should be permitted at trial.  To the extent Defendant contends that TECS is somehow

27   unreliable, such evidence goes to the weight and not the admissibility of the evidence.  Defendant may

28   certainly endeavor to cross-examine the United States' witness concerning any claimed reliability

issues; accordingly, his claims regarding lack of reliability certainly should not foreclose the United States' ability to admit TECS evidence.

### H. CO-CONSPIRATOR STATEMENTS CONCERNING SMUGGLING AND TRANSPORTATION ARRANGEMENTS ARE ADMISSIBLE UNDER RULE 801(d)(2)(E)

Each of the material witnesses should be permitted to testify regarding her arrangements to be smuggled into the United States and then transported to her ultimate destination. To the extent theses arrangements and details include statements from Defendant's accomplices or the Defendant himself in the smuggling venture, the Court should admit those statements under the co-conspirator exclusion to the rule precluding hearsay.

An out of court statement offered for the truth of the matter asserted is normally considered hearsay under Rule 801(c). However, under Rule 801(d)(2)(E), statements made by a coconspirator of a party during the course and in furtherance of a conspiracy are non-hearsay. Such statements are not hearsay and were deemed non-testimonial by the Supreme Court in Crawford v. Washington, 541 U.S. 36, 55 (2004). The Crawford decision specifically identifies co-conspirator statements as non-testimonial, citing its prior decision in United States v. Bourjaily, 483 U.S. 171 (1987), in which the Supreme Court held that even though the defendant had no opportunity to cross examine the declarant at the time that he made the statements and the declarant was unavailable to testify at trial, the admission of the declarant's statements against the defendant did not violate the Confrontation Clause. Crawford, 541 U.S. at 56. The Supreme Court approved its prior holding regarding co-conspirator statements, citing Bourjaily as an example of an earlier case that was consistent with the principal that the Confrontation Clause permits the admission of non-testimonial statements in the absence of a prior opportunity for cross examination. Crawford, 541 U.S. at 57. Several Circuits have allowed such co-conspirator statements post-Crawford. See United States v. Cianci, 378 F.3d 71, 101-2 (1st Cir. 2004); United States v. Sagat, 377 F.3d 223, 229 (2nd Cir. 2004); United States v. Mickelson, 378 F.3d 810, 819-20 (8th Cir. 2004).

Co-conspirator statements are admissible under Rule 801(d)(2)(E) if the Government demonstrates that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy. United States v. Bourjaily, 483 U.S. 171 (1987); United States v. Peralta, 941 F.2d 1003, 1007 (9th

08CR0724-WQH

Cir. 1991), <u>cert. denied</u>, 503 U.S. 940 (1992).   The existence of a conspiracy and defendant's involvement in the conspiracy are questions of fact that must be resolved by the Court by a preponderance of the evidence.   Fed. R. Evid. 104; <u>Bourjaily</u>, <u>supra</u>, at 175.   "Furtherance of a conspiracy" is to be interpreted broadly.   <u>United States v. Manfre</u>, 368 F.3d 832, 838 (8th Cir. 2004).

The Government is not required to charge the defendant with conspiracy, <u>United States v. Layton</u>, 855 F.2d 1388 (1988), or charge the declarant as a co-defendant in any conspiracy in order to admit co-conspirator statements. <u>United States v. Jones</u>, 542 F.2d 186 (4th Cir. 1976).   Further, upon joining the conspiracy, earlier statements made by co-conspirators after inception of the conspiracy become admissible against the defendant.   <u>United States v LeRoux</u>, 738 F.2d 943, 949-950 (8th Cir. 1984).   In <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 393 (1948), the Supreme Court held that "the declarations and acts of various members, even though made prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of coconspirators in aid of the conspiracy."   In other words, a defendant who joined the conspiracy at a later date, took the conspiracy as he found it.   <u>United States v. Hickey</u>, 360 F.2d 127, 140 (7th Cir. 1966).

The Court may consider the content of the statements in determining whether the co-conspirator statement is admissible.   <u>Bourjaily</u>, 483 U.S. at 180.   Further, once the Court has ruled that the statement meets the evidentiary requirements for admission under 801(d)(2)(E), the Court need not make an additional inquiry as to whether the declarant is unavailable or whether there is any independent indicia of reliability.   <u>Id.</u> at 182-184.

### 1.   Conspiracies Existed

In this case, the conspiracies consist of the efforts made by known and unknown persons, including Defendant, the material witnesses, and any paying family member(s), to smuggle the material witness into the United States and transport them to their destination within the United States.   The evidence of this conspiracy stems not only from the testimony of the material witnesses but the fact of Defendant's arrest and the lack of documentation of the material witnesses.

### 2.   Defendant and the Declarants Were Members of the Conspiracy

The Government anticipates that the testimony of the material witnesses at trial will demonstrate that each made the smuggling arrangements, including agreeing on a monetary amount.

1   As such, Defendant, each of the material witnesses, and the individuals they came into contact with

2   during the course of the offense were part of the conspiracy.

3           3.      Co-conspirator Statements Were Made During the Course of, and
                    in Furtherance of, the Conspiracy

4

5           The co-conspirator statements that the Government contends are non-hearsay involve the

6   smuggling arrangements made on behalf of the material witnesses, including the financial arrangements

7   and any statements concerning their transportation from Mexico into the United States.    The

8   Government asserts that no smuggling venture would have occurred at all if not for the anticipated

9   payments.  Thus, the financial arrangements were an integral component of the smuggling conspiracy

10  and such statements were made in furtherance of the smuggling venture.

11          Moreover, even if the Court concluded that Defendant may have joined the conspiracy after the

12  material witnesses or their family members made the arrangements for the alien smuggling and

13  transportation, the statements are still admissible against Camacho-Melendez because the conspiracy

14  already existed when the statements were made.  See United States Gypsum Co., 333 U.S. at 393;

15  LeRoux, 738 F.2d at 949-950; Hickey, 360 F.2d at 140.

16          As such, all statements regarding the financial arrangements and initial planning of the

17  smuggling venture made on behalf of the material witness should be admissible against Defendant.

18          4.      The Court May Conditionally Admit Co-Conspirator Statements

19          Defendant may contend that this Court may not admit any statements until the Government lays

20  the proper foundation for the above-referenced elements.  This position lacks merit.  The district court

21  may, if needed, conditionally admit co-conspirator statements subject to a motion to strike if the

22  Government fails to establish the requisite foundation.  United States v. Reed, 726 F.2d 570, 580 (9th

23  Cir. 1984); United States v. Loya, 807 F.2d 1483, 1490(9 th Cir. 1987).

24  **I.      THE MATERIAL WITNESSES PHYSICAL LOCATION AND CONDITION IS
             RELEVANT TO THE DEFENDANT'S KNOWLEDGE IN THIS CASE**

25

26          Although the United States does not intend to dwell upon the physical condition of the material

27  witnesses in this case, their location beneath the hood of the Ford F-250 vehicle at issue in this case,

28  their proximity to the engine, and physical condition is certainly relevant to the issue of whether the

    Defendant in this case had the requisite knowledge of their presence in this alien smuggling case.

1    Accordingly, the Defendant's reliance on United States v. Gonzalez-Flores, 418 F.3d 1093 (9th Cir.

2    2005), is misplaced as that case is factually distinguished.

3        In Gonzalez-Flores, the defendant "led a group of nearly two dozen people. . . through the

4    desert and across the border" and, "at some point during the trek, the group ran out of water[.]" Id. at

5    1096. Two teenage girls were in particularly bad shape upon discovery. When found by border patrol,

6    both were suffering from "severe heat exhaustion and respiratory problems and were airlifted to a

7    hospital." Id. During trial, a border patrol agent described finding the two girls who needed immediate

8    and advanced medical care and the agent characterized the cause of the distress as "heat exhaustion

9    turning into heatstroke" and testified that during the flight to the hospital one girl stopped breathing

10   and required resuscitation. Although the district court admitted the testimony, the Ninth Circuit held

11   that, "[b]ecause testimony about the girls' heat stroke does not go to any of the elements of the crime

12   with which [defendant] was charged," the Ninth Circuit found that, "we must consider its probative

13   value low." Id. at 1098.

14        The facts of this case – which involve the Defendant's efforts to smuggle the aliens into the

15   United States hidden in his vehicle –  are plainly distinguished.  The United States anticipates that

16   evidence and/or testimony regarding the material witnesses' condition will only be used for purposes

17   of laying the factual foundation that may be used to contend that the knowledge element for both counts

18   of the indictment in this case have been met, rather than to trigger an emotional response with the jury.

19   See, e.g., United States v. Perry, 857 F.2d 1346, 1351 (9th Cir. 1988)(admission of testimony used only

20   to prove an element of the offense was not plain error).  Accordingly, such limited references are

21   relevant and not unduly prejudicial  and such evidence should be permitted in this case.

22

23

24

25

26

27

28

08CR0724-WQH

IV

CONCLUSION

For the above stated reasons, the United States respectfully requests that Defendant's motions in limine be denied except where unopposed.

DATED: May 12, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ Lawrence A. Casper
LAWRENCE A. CASPER
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Lawrence.Casper@usdoj.gov

08CR0724-WQH

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JOSE ELIAS CAMACHO-MELENDEZ,<br><br>　　　　　　Defendant. | ) Criminal Case No. No. 08CR0724-WQH<br>)<br>)<br>) **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>)<br>) |

IT IS HEREBY CERTIFIED THAT:

I, LAWRENCE A. CASPER, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kasha Pollreisz, Esq., Federal Defenders of San Diego, Inc.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 12, 2008.

　　　　　s/Lawrence A. Casper
　　　　　LAWRENCE A. CASPER