KAREN P. HEWITT
United States Attorney
LAWRENCE A. CASPER
CAROLINE HAN
Assistant U.S. Attorneys
California State Bar Nos. 235110/250301
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-7455/(619) 235-2757 (Fax)
Lawrence.Casper@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | ) | Criminal Case No. 08cr0724-WQH |
|---|---|---|
| Plaintiff, | ) | **GOVERNMENTS' TRIAL MEMORANDUM** |
| v. | ) | |
| | ) | Date:       May 20, 2008 |
| JOSE ELIAS CAMACHO-MELENDEZ, | ) | Time:       9:00 a.m. |
| | ) | Courtroom: 4 (Fourth Floor) |
| Defendant. | ) | Judge:      Hon. William Q. Hayes |
| | ) | |
| | ) | |
| | ) | |

COMES NOW Plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

KAREN P. HEWITT, United States Attorney, and LAWRENCE A. CASPER and CAROLINE HAN,

Assistant United States Attorneys, and hereby files its Trial Memorandum.

//

//

//

//

//

//

//

//

//

# I.

## STATEMENT OF THE CASE

### A.    CHARGES & INDICTMENT

A federal grand jury on March 12, 2008 handed up a four-count Indictment charging Defendant Jose Elias Camacho-Melendez with: (1) two counts of bringing in illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii); and (2) two counts of bringing in illegal aliens without presentation in violation of 8 U.S.C. § 1324(a)(2)(B)(iii).  On March 13, 2008 Defendant entered a not guilty plea before the Magistrate Judge.

On April 1, 2008, Defendant filed motions to: (1) compel discovery; (2) preserve evidence; (3) dismiss indictment due to improper grand jury instructions; and (4) leave to file further motions.  On April 7, 2008, the United States responded to each of the above-described motions and filed its motion for reciprocal discovery.  On April 21, 2008, the Court granted the United States' motion for reciprocal discovery and granted Defendant's motion to preserve evidence.  The Court deferred ruling on the Defendant's other motions and set a hearing on motions in limine for May 19, 2008.

### B.    TRIAL STATUS

Trial is scheduled for May 20, 2008 at 9:00 a.m., before the Honorable William Q. Hayes.  The Government anticipates that its case-in-chief will take 1 day.

### C.    STATUS OF DEFENDANT

Defendant has been in custody since the date of his arrest.

### D.    STATUS OF COUNSEL

Defendant is represented by Kasha Pollreisz, Esq., Federal Defenders of San Diego, Inc. (appointed counsel).

### E.    INTERPRETER

The Government will need a Spanish language interpreter for two of its witnesses.  Defendant is also expected to require an interpreter.

### F.    JURY WAIVER

Defendant has not waived trial by jury.

G.    **PRETRIAL MOTIONS**

On May 5, 2008, the United States filed motions in limine to: (1) admit evidence that may be considered Rule 404(b); (2) preclude expert testimony by the defense; (3) exclude all witnesses except the case agent; (4) prohibit reference to Defendant's health, age, finances, education and potential punishment; (5) preclude self-serving hearsay; (6) limit character evidence; and (7) preclude evidence of duress and necessity. The Court has set a hearing on motions in limine for May 19, 2008 at 2:00 p.m.

H.    **STIPULATIONS**

The parties have not agreed to any stipulations.

I.    **DISCOVERY**

To date the United States has produced 232 pages of discovery to the Defendant. The Government has complied, and will continue to comply, with its discovery obligations. Defendant has recently provided some photographs as reciprocal discovery.

**II**

**STATEMENT OF FACTS**

A.    **Primary Inspection**

On February 27, 2008, at approximately 4:20 a.m., a 1987 white Ford F-250 pickup truck bearing Baja, California, Mexico license plate (BL16919) approached primary lane 6 at the Calexico, California West Port of Entry. Defendant Jose Elias Camacho-Melendez (Defendant) was the driver and sole visible occupant of the vehicle. Customs and Border Protection Officer Fonseca, the primary officer, was handed the Defendant's border crossing card (DSP-150) and was given a negative customs declaration by him. CBPO Fonseca questioned Defendant regarding his destination and ownership of the vehicle. Defendant claimed he was going to Las Palmas, a swap meet in Calexico, California to buy washers and that the truck belonged to his company.

Defendant claimed that he had worked for the company for a few months and had crossed before. CBPO Fonseca told Defendant that he would need to pay a user fee of $10.75 for the purpose of entering the United States to purchase goods. Defendant mentioned that he had previously attempted to buy a one-time decal sticker at the Calexico East Port of Entry so that he would not have to pay each time he

1  crossed but that no one there could help him.  CBPO Fonseca referred the vehicle to the secondary lot

2  for further inspection and for the user fee.

3       **B.    <u>Secondary Inspection</u>**

4       At secondary, the vehicle was inspected by CBPO Justin VanArsdall; he observed the vehicle

5  enter the secondary lot and examined the referral slip on the vehicle.  CBPO VanArsdall obtained a

6  negative customs declaration from Defendant.  Defendant told CBPO VanArsdall that he was going to

7  buy washers and that the vehicle belonged to the company for which he worked.  CBPO VanArsdall

8  asked the Defendant to open the hood.  Defendant unlatched the hood release from inside the cab.

9  Immediately upon unlatching the hood and before it was actually opened, Defendant proceeded

10 southbound toward the vehicle secondary lobby area where the cashier's office – the location to pay the

11 user fee – is located.  While Defendant was proceeding in that direction, CBPO VanArsdall opened the

12 hood of the vehicle and immediately noticed two bodies inside the engine compartment.  CBPO

13 VanArsdall chased after and caught up with the Defendant in the vehicle secondary lobby just inside

14 the doors.  CBPO VanArsdall conducted an immediate patdown of Defendant and escorted him into the

15 vehicle secondary office.  CBPO VanArsdall completed a patdown of Defendant in a private cell which

16 was witnessed by CBPO Supervisor Olivas; that patdown was negative.

17      CBPO VanArsdall returned to the vehicle and CBP Canine Officer Brent Pyburn, who had

18 approached the vehicle with his canine after CBPO VanArsdall had pursued the Defendant into the

19 vehicle secondary lobby but before VanArsdall returned, informed VanArsdall that his human/narcotics

20 detector dog had alerted to the vehicle.  Two females, who were subsequently determined to be

21 undocumented aliens, were seen inside the engine compartment lying on top of the fender wells.  The

22 female on the driver's side had nothing separating her from the engine.  The female on the passenger

23 side of the engine compartment had a small piece of plywood between her and the engine.

24      CBP Canine Officer Pyburn and CBPO VanArsdall removed a female, later identified as Audelia

25 Torres Gutierrez from the passenger side of the engine compartment.  Upon removing her, CBPO

26 VanArsdall asked her if she was all right in both Spanish and English; she just stared blankly back at

27 him.  She was unable to stand on her own and was perspiring heavily.  The shoes that she was wearing

28 were smoking from the heels and appeared to be melted and burning as were the leather uppers of her

shoes.  Canine Officer Pyburn removed her shoes and she was carried to the vehicle secondary office where she was given some water.  The female on the driver's side of the passenger compartment, who was later identified as Angelica Reyes Valenzuela, was also removed.  She was cramped into an extremely tight fetal position and had her head between the master brake cylinder and the inner fender, with her feet against the radiator.  She had no shoes on her feet but instead had only socks.  She had to be assisted from her position as well.

Defendant was subsequently read his <u>Miranda</u> rights and invoked.  Defendant had $41 dollars in U.S. currency and no Mexican currency in his possession upon arrest.

**C.**     **Statements of Material Witnesses**

Each of the two aliens smuggled in the engine compartment provided a statement admitting to being a Mexican citizen with no legal right to enter or remain in the United States.  Each admitted to being smuggled for financial gain.  Neither was able to identify the Defendant through a photo line up.

**D.**     **Defendant's Criminal Record**

At this time, the Government is not aware of any criminal convictions or arrests of Defendant.

### III

### LEGAL ISSUES

**A.**     **Elements of the Charged Offenses**

1.     Essential Elements of Title 8, United States Code, Section 1324(a)(2)(B)(ii)(Bringing in for Financial Gain)

Defendant is charged in Count 1 with bringing in illegal aliens for financial gain.  The essential elements of a violation of 8 U.S.C. Section 1324(a)(2)(B)(ii) are:

a.     Defendant brought, or attempted to bring, a person to the United States who was not a citizen of the United States;

b.     That person had not received prior official authorization to come to, enter, or reside in the United States;

c.     Defendant knew, or was in reckless disregard of the fact, that the person had not received prior official authorization to come to, enter, or reside in the United States; and

d.     Defendant acted for the purpose of commercial advantage or private financial gain and with the intent to violate the immigration laws of the United States.

08CR0724-WQH

2.      Essential Elements of Title 8, United States Code, Section 1324(a)(2)(B)(iii)(Bringing in Without Presentation)

Defendant is charged in Count 2 with bringing in illegal aliens without presentation. The essential elements of a violation of 8 U.S.C. Section 1324(a)(2)(b)(iii) are:

a.      Defendant brought or attempted to bring a person to the United States;

b.      The person was not a citizen of the United States and had not received prior authorization to come to, enter, or reside in the United States;

c.      Defendant knew or acted in reckless disregard of the fact that the person had not received prior official authorization to come to, enter, or reside in the United States when the Defendant brought in, or attempted to bring, the person into the United States;

d.      Defendant failed to bring and present the person immediately upon arrival to an appropriate immigration officer at a designated port of entry; and

e.      Defendant acted with the intention of violating the immigration laws of the United States.

**B.      Co-Conspirator Statements Concerning Smuggling And Transportation Arrangements Are Admissible Under Rule 801(d)(2)(e)**

The Government submits that each of the material witnesses should be permitted to testify regarding her arrangements to be smuggled into the United States and then transported to her ultimate destination. To the extent theses arrangements and details include statements from Defendant's accomplices or the Defendant himself in the smuggling venture, the Court should admit those statements under the co-conspirator exclusion to the rule precluding hearsay.

An out of court statement offered for the truth of the matter asserted is normally considered hearsay under Rule 801(c). However, under Rule 801(d)(2)(E), statements made by a coconspirator of a party during the course and in furtherance of a conspiracy are non-hearsay. Such statements are not hearsay and were deemed non-testimonial by the Supreme Court in Crawford v. Washington, 541 U.S. 36, 55 (2004). The Crawford decision specifically identifies co-conspirator statements as non-testimonial, citing its prior decision in United States v. Bourjaily, 483 U.S. 171 (1987), in which the Supreme Court held that even though the defendant had no opportunity to cross examine the declarant at the time that he made the statements and the declarant was unavailable to testify at trial, the admission of the declarant's statements against the defendant did not violate the Confrontation Clause. Crawford,

08CR0724-WQH

1    541 U.S. at 56. The Supreme Court approved its prior holding regarding co-conspirator statements,

2    citing Bourjaily as an example of an earlier case that was consistent with the principal that the

3    Confrontation Clause permits the admission of non-testimonial statements in the absence of a prior

4    opportunity for cross examination. Crawford, 541 U.S. at 57. Several Circuits have allowed such co-

5    conspirator statements post-Crawford. See United States v. Cianci, 378 F.3d 71, 101-2 (1st Cir. 2004);

6    United States v. Sagat, 377 F.3d 223, 229 (2nd Cir. 2004); United States v. Mickelson, 378 F.3d 810,

7    819-20 (8th Cir. 2004).

8        Co-conspirator statements are admissible under Rule 801(d)(2)(E) if the Government

9    demonstrates that (1) a conspiracy existed, (2) the defendant and the declarant were members of the

10   conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy.

11   United States v. Bourjaily, 483 U.S. 171 (1987); United States v. Peralta, 941 F.2d 1003, 1007 (9th Cir.

12   1991), cert. denied, 503 U.S. 940 (1992). The existence of a conspiracy and defendant's involvement

13   in the conspiracy are questions of fact that must be resolved by the Court by a preponderance of the

14   evidence. Fed. R. Evid. 104; Bourjaily, supra, at 175. "Furtherance of a conspiracy" is to be interpreted

15   broadly. United States v. Manfre, 368 F.3d 832, 838 (8th Cir. 2004).

16       The Government is not required to charge the defendant with conspiracy, United States v.

17   Layton, 855 F.2d 1388 (1988), or charge the declarant as a co-defendant in any conspiracy in order to

18   admit co-conspirator statements. United States v. Jones, 542 F.2d 186 (4th Cir. 1976). Further, upon

19   joining the conspiracy, earlier statements made by co-conspirators after inception of the conspiracy

20   become admissible against the defendant. United States v LeRoux, 738 F.2d 943, 949-950 (8th Cir.

21   1984). In United States v. United States Gypsum Co., 333 U.S. 364, 393 (1948), the Supreme Court

22   held that "the declarations and acts of various members, even though made prior to the adherence of

23   some to the conspiracy become admissible against all as declarations or acts of coconspirators in aid of

24   the conspiracy." In other words, a defendant who joined the conspiracy at a later date, took the

25   conspiracy as he found it. United States v. Hickey, 360 F.2d 127, 140 (7th Cir. 1966).

26       The Court may consider the content of the statements in determining whether the co-conspirator

27   statement is admissible. Bourjaily, 483 U.S. at 180. Further, once the Court has ruled that the statement

28   meets the evidentiary requirements for admission under 801(d)(2)(E), the Court need not make an

1  additional inquiry as to whether the declarant is unavailable or whether there is any independent indicia

2  of reliability. Id. at 182-184.

3          1.    Conspiracies Existed

4      In this case, the conspiracies consist of the efforts made by known and unknown persons,

5  including Defendant, the material witnesses, and any paying family member(s), to smuggle the material

6  witness into the United States and transport them to their destination within the United States. The

7  evidence of this conspiracy stems not only from the testimony of the material witnesses but the fact of

8  Defendant's arrest and the lack of documentation of the material witnesses.

9          2.    Defendant and the Declarants Were Members of the Conspiracy

10      The Government anticipates that the testimony of the material witnesses at trial will demonstrate

11  that each made the smuggling arrangements, including agreeing on a monetary amount. As such,

12  Defendant, each of the material witnesses, and the individuals they came into contact with during the

13  course of the offense were part of the conspiracy.

14
15          3.    Co-conspirator Statements Were Made During the Course of, and
               in Furtherance of, the Conspiracy

16      The co-conspirator statements that the Government contends are non-hearsay involve the

17  smuggling arrangements made on behalf of the material witnesses, including the financial arrangements

18  and any statements concerning their transportation from Mexico into the United States. The

19  Government asserts that no smuggling venture would have occurred at all if not for the anticipated

20  payments. Thus, the financial arrangements were an integral component of the smuggling conspiracy

21  and such statements were made in furtherance of the smuggling venture.

22      Moreover, even if the Court concluded that Defendant may have joined the conspiracy after the

23  material witnesses or their family members made the arrangements for the alien smuggling and

24  transportation, the statements are still admissible against Camacho-Melendez because the conspiracy

25  already existed when the statements were made. See United States Gypsum Co., 333 U.S. at 393;

26  LeRoux, 738 F.2d at 949-950; Hickey, 360 F.2d at 140.

27      As such, all statements regarding the financial arrangements and initial planning of the

28  smuggling venture made on behalf of the material witness should be admissible against Defendant.

1        4.        The Court May Conditionally Admit Co-Conspirator Statements

2        Defendant may contend that this Court may not admit any statements until the Government lays

3   the proper foundation for the above-referenced elements.  This position lacks merit.  The district court

4   may, if needed, conditionally admit co-conspirator statements subject to a motion to strike if the

5   Government fails to establish the requisite foundation.  United States v. Reed, 726 F.2d 570, 580 (9th

6   Cir. 1984); United States v. Loya, 807 F.2d 1483, 1490(9 th Cir. 1987).

7        **C.    Expert Testimony**

8        The United States has disclosed its intention to call William Simmons as an expert in the area

9   of automotive mechanics and, out of an abundance of caution, the United States has given notice that

10  it may call a Customs and Border Protection Officer to testify regarding Defendant's crossings of the

11  same vehicle at issue in this case as well as his other crossing history at the United States - Mexico

12  border and the crossing history of vehicles driven and/or registered to Defendant.

13       **D.    The Court Should Preclude Self-Serving Hearsay Testimony**

14       The Defendant may attempt to prove his own statements through the testimony of another

15  witness.  Such efforts would be impermissible because those statements are hearsay.  The Defendant

16  cannot rely on Federal Rule of Evidence 801(d)(2) because he is the proponent of the evidence and

17  because the evidence is not being offered against him.  Rather, he is seeking to have his own self-serving

18  hearsay statements brought before the jury without the benefit of cross examination of himself by the

19  Government.  See United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) Under Rule 801(d)(2),

20  a statement of a party is not hearsay only when it is being offered against the party, and not when it is

21  being offered on a declarant's behalf.

22       Nor can the Defendant rely on Rule 801(d)(1)(B), which provides for an exception to the hearsay

23  rule for a statement offered to rebut a charge of recent fabrication, since such a statement is not

24  admissible unless the defendant has already testified and has been impeached.  United States v. Navarro-

25  Vareles, 551 F.2d 1331, 1334 (9th Cir. 1976), cert. denied, 429 1045 91977).

26       The only exception to the hearsay rule that could possibly permit a defendant to offer his own

27  out-of-court statements at trial would be Rule 803(3), which excludes from the definition of hearsay a

28  statement of the declarant's "then existing state of mind, emotion, sensation, or physical condition (such

as intent, plan, motive, design, mental feeling, pain and bodily health) <u>but not including a statement of memory or belief to prove the fact remembered or believed.</u>  A person's belief may not be proved by previous out-of-court statements." <u>See</u> <u>United States v. Cohen</u>, 631 F.2d 522 (5th Cir. 1980) (emphasis added).

The inadmissibility of the defendant's beliefs sought to be introduced on his behalf through other witnesses is clearly prohibited by <u>United States v. Emmert</u>, 829 F.2d 805 (9th Cir. 1987).  In <u>Emmert</u>, the Ninth Circuit affirmed District Judge Brewster's exclusion of testimony by a witness that the defendant told the witness that the defendant was afraid of government agents.  The court, citing <u>Cohen</u> with approval, emphasized that if the reservation in the test of Rule 803(3) [excluding evidence of a statement of belief to prove the fact believed] is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition–"I'm scared"–and not belief–"I'm scared because Galkin [the undercover agent] threatened me.

### E.      Evidence of Nervousness Is Admissible Evidence of Defendant's Guilty State of Mind

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew illegal aliens were concealed in the vehicle. Fed. R. Evid. 701; <u>United States v. Hursh</u>, 217 F.3d 761, 768 (9th Cir. 2000) (jury may consider defendant's nervousness during questioning at a port of entry); <u>United States v. Fuentes-Cariaga</u>, 209 F.3d 1140, 1144 (9th Cir. 2000) (it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico Port of Entry); <u>United States v. Barbosa</u>, 906 F.2d 1366, 1368 (9th Cir. 1990) (jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport inspection); <u>United States v. Lui</u>, 941 F.2d 844, 848 (9th Cir. 1991) (jury could consider guilty knowledge from a defendant's acting disinterested during airport inspection); <u>United States v. Mastberg</u>, 503 F.2d 465, 470 (9th Cir. 1974) ("under the modern, and probably majority, view, a lay witness may state his opinion that a person appeared nervous").   If the testimony regarding "a combination of circumstances and appearances which cannot be adequately described and presented with the force and clearness as they appeared to the witness, the witness may state his impressions and opinions based on what he observed."

1    United States v. Yazzie, 976 F.2d 1252, 1255 (9th Cir. 1992) (quoting United States v. Skeet, 665 F.2d

2    983, 985 (9th Cir. 1982).

3         Here, Government officers and agents may properly testify to Defendant's behavior, demeanor,

4    and physical appearance, as they have personal knowledge based upon their observations of Defendant.

5    The Government witnesses should be allowed to testify regarding Defendant's demeanor and

6    appearance during their encounters with Defendant.

7    **IV**

8    **WITNESSES**

9         The Government reserves the right to change the order of, substitute, or add or omit one or more

10    witnesses.  Presently, the Government may call the following witnesses during its case-in-chief:

11         1.    Veronica Fonseca, Customs and Border Protection

12         2.    Justin VanArsdall, Customs and Border Protection

13         3.    Brent Pyburn, Customs and Border Protection

14         4.    James Dingley, Customs and Border Protection

15         5.    Diana Contreras, Customs and Border Protection

16         6.    Julio Osuna, Customs and Border Protection

17         7.    Angelica Reyes Valencia

18         8.    Audelia Torres Gutierrez

19         9.    William Simmons

20         10.    Paul Lewenthal, Immigration and Customs Enforcement

21         11.    Claudia Rios, Customs and Border Protection

22    **V**

23    **EXHIBIT LIST**

24         The Government will provide an exhibit list on the morning of trial.  The United States intends

25    to offer into evidence some or all of the following exhibits:

26         1.    Photographs of Vehicle

27         2.    Photographs of compartment

28         3.    Photographs of Material Witnesses when found in Vehicle

08CR0724-WQH

4.      Photographs of Calexico West Port of Entry

5.      Defendant's Border Crossing Card (B-1/B-2 Visa)

6.      Referral Slip

7.      Vehicle Registration Documents

8.      Shoes worn by material witness

The Government will make its exhibits available to the Defendant for examination in advance of trial. The Government further requests a reasonable opportunity to examine Defendant's exhibits before trial.

## VI

## PROPOSED VOIR DIRE

1.      The Court will instruct you about the law. Will you follow the law as given by the Court and disregard any idea or notion you have about what the law is or should be?

2.      The United States will be calling witnesses who are employed by United States Customs and Border Protection, Immigration and Customs Enforcement or other branches of the Department of Homeland Security. Does anyone have family members or close friends who work, or have worked, for any of those agencies (or their predecessor agencies: the U.S. Customs Service and Immigration and Naturalization Service)? Would that prevent you from being fair and impartial?

3.      Has anyone had an unpleasant or negative experience with any law enforcement personnel? If so, please describe. Would that cause you to be biased against law enforcement?

4.      Has anyone ever had any disputes with any agency of the United States Government? If so, please describe.

5.      Have you or any relatives or close friends ever been accused of, or charged with, a crime involving alien smuggling?

6.      Has anyone had any training in the law? If so, please explain.

7.      Will you be able to put aside any feelings of sympathy or pity for the defendant, if you have any, when deciding this case?

8.    Does everybody understand that the defendant is entitled to a fair trial? Does everybody understand that the United States is also entitled to a fair trial?

9.    Does anyone have any moral or religious reservations that might prevent you from standing in judgment of another human being?

10.    The defendant in this case is charged with smuggling  human beings into the United States for financial gain. Does anybody have strong feelings or opinions about United States Immigration laws that would prevent you from viewing the evidence impartially?

11.    As you may know, some states, California among them, have had referendums regarding illegal aliens. Regardless of your position on the legalization or criminalization of immigration, if you become a juror in this federal trial, will you be able to follow the federal law of the United States as it presently stands and as the judge instructs you regarding the criminal smuggling of human beings?

12.    Has anyone been a member of an organization involved in advocating for immigration legalization? Explain.

13.    Does anyone feel strongly about the United States' immigration policies? Explain.

14.    The United States will call many law enforcement personnel as witnesses.  Would that prevent you from being fair and impartial?

15.    Do any of you feel that it should not be a crime to enter  - or assist someone else to enter - the United States illegally?

16.    When crossing the border from Mexico into the United States, have border inspectors ever found some other person hiding in a vehicle you were driving?

17.    Have you ever had a particularly pleasant or particularly unpleasant experience while crossing the border into the United States at the Calexico West or at another port of entry into the United States?  Please describe that experience.  Would that experience have bearing on your ability to be fair and impartial? Please explain.

08CR0724-WQH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII

## JURY INSTRUCTIONS

The Government will submit proposed jury instructions under separate cover.

Dated: May 19, 2008                                Respectfully submitted,


KAREN P. HEWITT
United States Attorney

*/s/Lawrence A. Casper*
_____
LAWRENCE A. CASPER
CAROLINE HAN
Assistant United States Attorneys
Attorneys for Plaintiff
United States of America
Email:   Lawrence.Casper@usdoj.gov
         Caroline.Han@usdoj.gov

14                                          08CR0724-WQH